## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**                                        Case No. 24-
       Plaintiff,                              Hon.

**v**

**COUNTY OF WAYNE**, a municipal corporation,
**ALISHA BELL**, in her individual capacity as the duly
elected Chairperson/Chairwoman of the Wayne County Board of Commissioners,
**MARTHA G. SCOTT**, in her individual capacity as
a duly elected member of the Wayne County Board of Commissioners,
**TIMOTHY JOHNSON**, in his individual and official capacities as principal,
agent, employee, and owner of Gaukler Pointe Communications, LLC,
**GAUKLER POINTE COMMUNICATIONS, LLC**,
a Michigan Limited Liability Company,
**DONN FRESARD**, an individual, and
**CLARK HILL, PLC**,
       Defendants.
_____/

ROBERT DAVIS, *pro se*
Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118
Davisrobert854@gmail.com
_____/

| |
|---|
| **There is no other cause of action between the same or similar parties arising out of the same transactions or occurrences as alleged in this complaint pending in the United States District Court for the Eastern District of Michigan.** |

## COMPLAINT AND JURY DEMAND

**NOW COMES**, Plaintiff, ROBERT DAVIS ("Plaintiff" or "Plaintiff Davis"), in his own proper person and complaint, and for his Complaint and Jury Demand ("Complaint"), states the following:

## I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq.*

## II.    JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

3. This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et.seq.*

4. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391 because Plaintiff is a resident of the Eastern District of Michigan, and the actions giving rise to the claims pled and alleged in this Complaint all occurred within the Eastern District of Michigan.

## III.    PARTIES

5. Plaintiff, Robert Davis **("Plaintiff" or "Plaintiff Davis")**, is a resident and registered voter of the City of Highland Park, County of Wayne, State of Michigan.  Plaintiff is a resident and registered voter of Wayne County Commission District #3.

6. Defendant, County of Wayne ("**Defendant Wayne County**"), is a chartered county governed by a county charter.

7. Defendant, Alisha Bell ("**Defendant Bell**" or "**Defendant Chair Bell**"), is the duly elected Chairperson/Chairwoman of the Wayne County Board of Commissioners.

8. Defendant, Martha G. Scott ("**Defendant Commissioner Scott**"), is a duly elected member of the Wayne County Board of Commissioners for District #3, which includes the entire cities of Highland Park, Hamtramck, and portions of the city of Detroit.

9. Defendant, Gaukler Pointe Communications, LLC ("**Defendant Gaukler**"), is a limited liability company registered with the State of Michigan, whose stated purpose is to operate as a public relations, consulting, and marketing communications firm.

10. Defendant, Timothy Johnson ("**Defendant Johnson**"), is the principal, agent and sole owner of Defendant Gaukler Pointe Communications, LLC., who serves as the Director of Administration for the Wayne County Board of Commissioners as an independent contractor through Defendant Gaukler. **(See Defendant Gaukler Pointe Communications, LLC's Independent Contractor Agreement attached**).

11. Since December 2014, Defendant Johnson, as the principal, employee, agent, and owner of Defendant Gaukler Pointe Communications, LLC, has served as

an independent contractor of the Defendant Wayne County and the Wayne County Board of Commissioners.

12. In accordance with Defendant Gaukler's independent contractor agreement with the Defendant Wayne County and the Wayne County Board of Commissioners, Defendant Johnson, as the principal, agent, owner, and employee of Defendant Gaukler Pointe Communications, LLC, serves as the Director of Administration for the Wayne County Board of Commissioners. **(See Defendant Gaukler Pointe Communications, LLC's Independent Contractor Agreement attached**).

13. Pursuant to Defendant Gaukler's independent contractor agreement with the Defendant Wayne County and the Wayne County Board of Commissioners, Defendants Gaukler's and Johnson's "[g]eneral duties include the administration, supervision, coordination, and management of all functions of the Wayne County Commission, except for the mandated Auditor General function, under the guidance and supervision of the Wayne County Commission Chairperson.  Areas of responsibility include finance, budget, payroll, personnel, procurement, contract management, information technology, special projects, government relations, and other work duties assigned by the Commission Chairperson.  Work assignments flow from directives issued by the Wayne County Commission through its Chairperson. The Contractor is expected to keep abreast of problems and shall inform the Commission through its Chairperson of such problems, offering possible

solutions for correcting or alleviating them." (**See Defendant Gaukler Pointe Communications, LLC's Independent Contractor Agreement attached**).

14. Defendant, Donn Fresard ("**Defendant Fresard**"), is a resident and registered voter of the city of Grosse Pointe, Michigan, County of Wayne, State of Michigan. Defendant Fresard is the husband of the current Chief Judge of the Third (Wayne County) Circuit Court, Judge Patricia Fresard. Defendant Fresard is also currently employed by the County of Macomb as the Chief Assistant Prosecuting Attorney for the Macomb County Prosecutor's Office.

15. Defendant, Clark Hill, PLC ("**Defendant Clark Hill**"), is an international law firm with offices located in Detroit and Lansing, Michigan.

16. **All exhibits and documents referenced an/or cited in this complaint will be filed separately as a separate "Index of Exhibits".**

17. That an actual controversy exists between the parties named herein.


## IV.    CAUSES OF ACTION


### COUNT I
**42 U.S.C. §1983-First Amendment Retaliation Claim- Defendants Wayne County, Chair Bell, Commissioner Scott, Johnson, and Gaukler Retaliated Against Plaintiff For Filing Meritorious State-Court Lawsuits That Sought To Have Certain Incumbent Judges of The Third Circuit Court Removed From the November 2022 General Election Ballot**.

18. Plaintiff incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

19. Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Chair Bell in her individual capacity as the duly elected Chairperson/Chairwoman of the Wayne County Board of Commissioners.

20. Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Commissioner Scott in her individual capacity as the duly elected member of the Wayne County Board of Commissioners for District #3.

21. This claim, as pled and alleged in this Count, is brought against Defendant Wayne County under 42 U.S.C. §1983 because Plaintiff's injuries were caused as a result of the Defendant Wayne County's official policy, practice, and/or custom that allows an elected member of the Wayne County Board of Commissioners to unilaterally terminate and/or not renew an employee's employment agreement for any reason, including in retaliation for an employee exercising their First Amendment rights as a private citizen.

22. Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Johnson in both his official and individual capacities as the principal, agent, owner, and employee of the Defendant Gaukler.

23. Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Gaukler as an independent contractor for the Defendant Wayne County and Wayne County Board of Commissioners.

24. Defendant Gaukler is an independent contractor of the Defendant Wayne County and Wayne County Board of Commissioners and pursuant to Defendant Gaukler's independent contractor agreement, Defendant Johnson, as the principal, agent, owner, and employee of Defendant Gaukler Pointe Communications, LLC, serves as the Director of Administration for the Wayne County Board of Commissioners.  (**See Defendant Gaukler Pointe Communications, LLC's Independent Contractor Agreement attached**).

25. Pursuant to Defendant Gaukler's independent contractor agreement with the Defendant Wayne County and the Wayne County Board of Commissioners, Defendants Gaukler's and Johnson's "[g]eneral duties include the administration, supervision, coordination, and management of all functions of the Wayne County Commission, except for the mandated Auditor General function, under the guidance and supervision of the Wayne County Commission Chairperson. Areas of responsibility include finance, budget, payroll, personnel, procurement, contract management, information technology, special projects, government relations, and other work duties assigned by the Commission Chairperson.  Work assignments flow from directives issued by the Wayne County Commission through its Chairperson. The Contractor is expected to keep abreast of problems and shall inform the Commission through its Chairperson of such problems, offering possible solutions for correcting or alleviating them."" (**See Defendant Gaukler**

**Pointe Communications, LLC's Independent Contractor Agreement attached**).

26. Pursuant to Defendant Gaukler's independent contractor agreement, both Defendant Gaukler and Defendant Johnson have a sufficiently close nexus between the Defendant Wayne County, Wayne County Board of Commissioners and Defendant Chair Bell such that Defendant Gaukler's and Defendant Johnson's conduct may be fairly attributed to the Defendant Wayne County, Wayne County Board of Commissioners and Defendant Chair Bell.

27. In November 2020, Defendant Commissioner Scott agreed to hire Plaintiff to serve as a legislative aide in her office.

28. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had final decision-making authority with respect to the hiring, firing, renewal, and nonrenewal of employment agreements for individuals hired on her staff, including Plaintiff.

29. However, upon alerting and informing the Defendant Chair Bell that Plaintiff will be hired as a legislative aide commencing January 1, 2021, Defendant Commissioner Scott was confronted with resistance and hostility from Defendant Chair Bell, as well as hostility from Defendants Johnson and Gaukler.

30. Defendant Commissioner Scott advised Plaintiff in November 2020 that Defendant Chair Bell, as well as Defendants Johnson and Gaukler, did not want her to hire the Plaintiff as her legislative aide due to Plaintiff's political activism and election-related lawsuits Plaintiff had filed in the past against Detroit Mayor Mike Duggan, Wayne County Clerk Cathy Garrett, and Wayne County Prosecutor Kym Worthy.

31. In late November 2020 or early December 2020, Ross Jones, a reporter with WXYZ Channel 7, contacted Plaintiff and Defendant Commissioner Scott concerning Defendant Commissioner Scott's decision to hire Plaintiff as a legislative aide.

32. On or about December 7, 2020, WXYZ Channel 7 reporter, Ross Jones, aired a negative television news story concerning Defendant Commissioner Scott's decision to offer Plaintiff a position as a legislative aide in her office, commencing January 1, 2021.[1]

33. Ross Jones' news story contained negative comments from now-retired Wayne County Commissioner Ray Basham and attempted to cast a negative light on Plaintiff due to his federal felony convictions from 2014.

34. Defendant Commissioner Scott advised and expressed to Plaintiff that she believed Defendants Chair Bell, Johnson, and Gaukler, and nonparty Alan Helmkamp were the cause and the masterminds behind Channel 7 reporter

---

[1] See December 2020 WXYZ Channel 7 News Story:
https://www.wxyz.com/news/local-news/investigations/robert-davis-convicted-of-embezzling-from-students-offered-wayne-county-job

Ross Jones doing the negative story about Defendant Commissioner Scott offering Plaintiff a job on her staff as a legislative aide.

35. In December 2020, after receiving calls from community leaders and constituents offering their support in favor of the Plaintiff, Defendant Commissioner Scott advised Plaintiff that despite the push back, criticism, and threats she had received from Defendant Chair Bell and Defendants Johnson and Gaukler, she was going to honor her word and promise to the Plaintiff and proceed with employing Plaintiff as a legislative aide, commencing January 1, 2021.

36. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had the final decision-making authority with respect to the hiring, firing, renewal, and nonrenewal of employment agreements for individuals hired on her staff, including setting the salary and the granting of other fringe benefits to the Plaintiff.

37. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had the final decision-making authority on whether to hire Plaintiff as a legislative aide on her staff commencing January 1, 2021.

38. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had the final decision-making authority to determine the salary, fringe benefits, job duties, and work hours for the Plaintiff while serving a legislative aide in Defendant Commissioner Scott's office.

39. In December 2020, Defendant Commissioner Scott directed Plaintiff to meet with Cynthia Douglas at the Guardian Building to sign his employment contract, as well as paperwork for health insurance, dental insurance, vision insurance, 401k pension benefits, and parking arrangements as negotiated and approved by Defendant Commissioner Scott.

40. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott was a necessary and required signatory on Plaintiff's employment agreement. (**See Plaintiff's Employment Agreement attached**).

41. In accordance with the employment agreement executed by the Plaintiff and Defendant Commissioner Scott, on January 1, 2021, Plaintiff began his employment as a legislative aide in Defendant Commissioner Scott's office.

42. As a contracted legislative aide, Plaintiff was an employee of the Defendant Wayne County.

43. As a legislative aide, Plaintiff's duties included legal research on issues appearing before the Wayne County Board of Commissioners, drafting memoriam resolutions, attending community meetings, assisting Defendant Commissioner Scott with political fundraisers, attending community and social events with Defendant Commissioner Scott, preparing mailings and newsletters, attending committee and full board meetings of the Wayne County Board of Commissioners, answering constituent phone calls, meeting with constituents, and any other general assignments assigned by Defendant Commissioner Scott. (**See Plaintiff's Employment Agreement attached**).

44. In addition to the aforementioned official job duties, Defendant Commissioner Scott **demanded and required** that Plaintiff be responsible for timely filing all of her candidate committee's campaign finance statements and reports with the Wayne County Clerk that were required to be filed under the Michigan Campaign Finance Act (MCFA), which were **NOT** reflected in Plaintiff's written employment agreement.

45. During his employment, Plaintiff interacted regularly with Defendants Chair Bell, Johnson, and Gaukler.

46. Since December 2020, Defendants Chair Bell, Johnson, and Gaukler were knowledgeable and aware of Plaintiff's contractual and/or business relationship with Defendants Commissioner Scott and Wayne County.

47. Notably, however, Plaintiff's official job duties as a legislative aide for Defendant Commissioner Scott did **not** include filing lawsuits against public officials, governmental entities, governmental departments, boards, and/or agencies, and/or political candidates, including judicial candidates. (**See Plaintiff's Employment Agreement attached**).

48. Plaintiff's official job duties as a legislative aide for Defendant Commissioner Scott did **not** include filing lawsuits challenging the eligibility of candidates, including judicial candidates, to appear on any election ballot. (**See Plaintiff's Employment Agreement attached**).

49. Plaintiff's official job duties as a legislative aide for Defendant Commissioner Scott did **not** include filing requests under Michigan's Freedom of Information Act (FOIA) for public documents that are in the possession of governmental entities and/or public bodies. (**See Plaintiff's Employment Agreement attached**).

50. In December 2021, Defendant Commissioner Scott **renewed** Plaintiff's employment agreement to serve as a legislative aide through December 31, 2022. (**See Plaintiff's Renewed Employment Agreement for 2022 year attached**).

51. Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as authorized and/or enacted by the Wayne County Board of Commissioners, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had the final decision-

making authority to renew Plaintiff's employment agreement for the year 2022.

52. In April 2022, while on his own personal time and not during working hours, and acting as a private citizen, Plaintiff sent a FOIA request to the Michigan Secretary of State respectfully requesting copies of the affidavits of identity filed by all incumbent and non-incumbent judicial candidates for the Third Circuit Court (Wayne County) and 36th District Court (Detroit) to qualify to appear on the ballot for the August 2022 primary election and November 8, 2022 general election.

53. In April 2022, while on his own personal time and not during working hours, and acting as a private citizen, Plaintiff sent a FOIA request to the Highland Park City Clerk requesting copies of all of the affidavits of identity filed by all candidates seeking to qualify to appear on the ballot as a candidate for any and all city offices that were to be voted upon at the August 2022 primary and November 2022 general elections.

54. In April 2022, while on his own personal time and not during working hours, and acting as a private citizen, Plaintiff sent a FOIA request to the Wayne County Clerk requesting copies of all of the affidavits of identity filed by all candidates that filed to qualify to appear on the August 2022 primary election for the office of Wayne County Commissioner, District #3.

**Plaintiff's Lawsuit To Have Candidates For Wayne County Commission District #3 Removed From August 2022 Primary Election Ballot**

55. As noted, Defendant Commissioner Scott is the duly elected Wayne County Commissioner for District #3, which includes the entire cities of Highland Park, Hamtramck, and portions of the city of Detroit.

56. In April 2022, Defendant Commissioner Scott timely filed to qualify for re-election to the Wayne County Board of Commissioners in accordance with Michigan Election Law.

57. In April 2022, Plaintiff, as a private citizen and registered voter of the city of Highland Park, and while on his own personal time, filed a lawsuit in the Third (Wayne County) Circuit Court against the Wayne County Clerk and Wayne County Election Commission challenging the eligibility of certain candidates who filed facially defective affidavits of identity to qualify as candidates for Wayne County Commissioner, District #3. (**See Order entered in *Davis v Garrett*, et.al., Wayne County Case No. 22-005176-AW attached**).

58. In May 2022, then Wayne County Circuit Court Chief Judge Tim Kenny entered an order in the case of *Davis v Garrett, et.al.,* Case No. 22-005176-AW, granting Plaintiff the requested relief and ordered that the three candidates be removed from the ballot as candidates for Wayne County Commission, District #3 because they filed facially defective affidavits of identity in violation of Mich.Comp.Laws §168.558 of Michigan Election Law.

(**See Order entered in *Davis v Garrett, et.al.,* Wayne County Case No. 22-005176-AW attached**).

59. Defendant Commissioner Scott was ecstatic that Plaintiff was successful in getting three candidates removed from her race and expressed her gratitude to the Plaintiff for his efforts as a private citizen and registered voter of the city of Highland Park.

**Plaintiff's Lawsuit To Have City of Highland Park Mayoral and City Council Candidates Removed From August 2022 Primary Election Ballot**

60. In April 2022, Plaintiff, as a private citizen and registered voter of the city of Highland Park, and while on his own personal time, filed a separate lawsuit in Wayne County Circuit Court against the Highland Park City Clerk and Highland Park Election Commission challenging the eligibility of a candidate for city council and a candidate for mayor to appear on the city of Highland Park's August 2022 primary election ballot due to deficiencies on their affidavits of identity. See *Davis v Green, et.al.,* Wayne County Case No. 22-005386-AW; *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 2, 2022 (Docket No. 361544) (**opinion attached**).

61. In early February 2022, Defendant Commissioner Scott had advised Plaintiff that she was supporting Highland Park resident, Glenda McDonald ("Ms. McDonald"), for the office of Mayor of Highland Park and that she would appreciate it if Plaintiff would also support Ms. McDonald.

62. Although Plaintiff did not particularly like, respect or care for Ms. McDonald because of past political grievances, Plaintiff adhered to Defendant Commissioner Scott's wishes and agreed to support Ms. McDonald's candidacy for Mayor of Highland Park, as a duly registered voter of the city of Highland Park.

63. In late May 2022, then Wayne County Circuit Court Chief Judge Tim Kenny issued an order granting in part and denying in part Plaintiff the relief he had requested in the case against the Highland Park election officials.

64. Specifically, then Chief Judge Tim Kenny denied Plaintiff's request to have city of Highland Park Mayoral candidate Carlton Clyburn removed from the August 2022 city primary election ballot, but granted Plaintiff's request to have Highland Park City Council candidate Rodney Patrick removed from the August 2022 primary election ballot. See *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 2, 2022 (Docket No. 361544) (**opinion attached**).

65. Not deterred, Plaintiff, as a private citizen and as a registered voter of the city of Highland Park, and while on his own personal time, filed an emergency appeal challenging Chief Judge Tim Kenny's ruling in the Highland Park election case. See *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 2, 2022 (Docket No. 361544) (**opinion attached**).

66. On June 2, 2022, the Michigan Court of Appeals issued an unpublished *per curiam* opinion **unanimously** reversing Chief Judge Tim Kenny's ruling in Plaintiff's lawsuit against the Highland Park election officials and further ordered the removal of Carlton Clyburn, who was Defendant Commissioner Scott's endorsed candidate's main opponent, from the August 2022 primary election ballot as a candidate for Mayor of Highland Park. See *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 2, 2022 (Docket No. 361544) (**opinion attached**).

67. Specifically, the Michigan Court of Appeals' held in *Davis v Highland Park City Clerk* that a ***nonpartisan*** candidate's failure and omission to indicate "No Party Affiliation" on line 4 of the affidavit of identity as required under Mich.Comp.Laws §168.558(2) of Michigan Election Law imposed a clear legal duty on the filing official not to certify said candidate's name to appear on the ballot as required under Mich.Comp.Laws §168.558(4) of Michigan Election Law. See *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Michigan Court of Appeals, issued June 2, 2022 (Docket No. 361544) (**opinion attached**).

68. The Michigan Supreme Court would later affirm the Court of Appeals' ruling in *Davis v Highland Park City Clerk, supra*, by declining to address two separate appeals seeking to reverse the Court of Appeals' June 2, 2022

ruling/judgment. (**See Michigan Supreme Court Orders issued in *Davis v Highland Park City Clerk* attached**)

69. Defendant Commissioner Scott expressed to Plaintiff her gratitude and further expressed to the Plaintiff that she was truly thrilled and thankful that Plaintiff's lawsuit, as a private citizen, to have Highland Park mayoral candidate Carlton Clyburn removed from the city of Highland Park's August 2022 primary election ballot was successful because it directly benefited Defendant Commissioner Scott's endorsed candidate—Ms. McDonald.

70. As a result of Plaintiff's lawsuit that resulted in Highland Park Mayoral candidate Carlton Clyburn being removed from the city of Highland Park's August 2022 primary election ballot as a candidate for Mayor, Ms. McDonald, Defendant Commissioner Scott's preferred endorsed candidate, was the **ONLY** candidate whose name appeared on the ballot for the office of Mayor of Highland Park in the November 8, 2022 general election.[2]

---

[2] See October 15, 2022 Michigan Chronicle article: "Highland Park's Mayoral Race Rooted in Confusion Sparked by Court Rulings"
https://michiganchronicle.com/2022/10/15/highland-parks-mayoral-race-rooted-in-confusion-sparked-by-court-rulings/

See September 20, 2022 Detroit News article:
https://www.detroitnews.com/restricted/?return=https%3A%2F%2Fwww.detroitnews.com%2Fstory%2Fnews%2Flocal%2Fwayne-county%2F2022%2F09%2F20%2Fconfusing-form-highland-park-nine-candidates-off-ballot%2F10424993002%2F

71. As a result of being the only candidate on the ballot in the November 8, 2022 general election, Ms. McDonald, Defendant Commissioner Scott's endorsed candidate, easily won election to the office of Mayor of Highland Park.

72. Many residents of Highland Park, including Defendant Commissioner Scott, credited Plaintiff's lawsuit, which resulted in Ms. McDonald's main opponent being removed from the ballot (Carlton Clyburn), as the reason for Ms. McDonald's election victory.

**Plaintiff's Third Circuit Court and Michigan Court of Claims Lawsuits To Get Incumbent Third Circuit Judges Fresard, Ramsey, Gibson, Sullivan, and Slavens Removed From The November 8, 2022 General Election Ballot**.

73. The Court of Appeals' holding in *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544) directly affected and impacted "nonpartisan" candidates, which included incumbent and non-incumbent judicial candidates.

74. Based on the Court of Appeals' holding in *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), Plaintiff knew that there were several incumbent Wayne County Circuit Court Judges that could also be removed from the November 8, 2022 general election ballot because their affidavits of identity also contained the same fatal error and omission as Highland Park Mayoral candidate Carlton Clyburn's affidavit of identity contained.

75. Based on the documents Plaintiff received from the Secretary of State in response to his April 2022 FOIA requests, Plaintiff knew that several

incumbent and non-incumbent judicial candidates for the Third Circuit Court (Wayne County) and 36th District Court (Detroit) filed facially defective affidavits of identity in violation of Mich.Comp.Laws §168.558 of Michigan Election Law.

76. In fact, two judicial candidates for 36th District Court (Detroit) nonincumbent position and Third (Wayne County) Circuit Court nonincumbent position, were removed from the November 8, 2022 general election ballot per the Court of Appeals' holding in *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544).

77. Accordingly, on July 27, 2022, Plaintiff, as a private citizen and as a registered voter of the city of Highland Park and while on his own personal time, filed a lawsuit in the Wayne County Circuit Court against the Wayne County Election Commission, and incumbent Third Circuit Court Judges Patricia Fresard ("Judge Fresard") and Kelly Ann Ramsey ("Judge Ramsey"), in their individual capacities as judicial candidates, seeking to have them removed from the November 8, 2022 general election ballot as candidates for the incumbent judgeship positions for the Third Circuit Court because they filed facially defective affidavits of identity in violation of Mich.Comp.Laws §168.558 of Michigan Election Law. See *Davis v Wayne County Election Commission, et.al.*, Case No. 22-008866-AW (**Third Circuit Judge Qiana Lillard's opinion attached**); see also *Davis v Wayne County Election*

*Commission*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 363604) (**opinion attached**).

78. Plaintiff's Wayne County Circuit Court lawsuit properly pled and alleged that Third Circuit Court Judges Patricia Fresard ("Judge Fresard") and Kellyn Ann Ramsey ("Judge Ramsey") should not have been certified as candidates to appear on the November 8, 2022 general election ballot because their affidavits of identity were facially defective because they failed to indicate "No Party Affiliation" on their respective affidavits of identity as required under Mich.Comp.Laws §168.558(2) of Michigan Election Law. See *Davis v Wayne County Election Commission, et.al.*, Case No. 22-008866-AW (**Third Circuit Judge Qiana Lillard's opinion attached**); see also *Davis v Wayne County Election Commission*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 363604) (**opinion attached**)

79. Plaintiff did **not** inform Defendant Commissioner Scott that he had filed a lawsuit seeking to have incumbent Third Circuit Court Judges Fresard and Ramsey removed from the November 8, 2022 general election ballot because Plaintiff filed this lawsuit as a private citizen and it was **unrelated** to his job duties as a legislative aide.

80. At the time Plaintiff filed this meritorious lawsuit, Defendant Commissioner Scott was **not** aware and had no knowledge that Plaintiff had filed the civil action in Wayne County Circuit Court seeking to have incumbent Third

Circuit Court Judges Fresard and Ramsey removed from the November 8, 2022 general election ballot.

81. Plaintiff emailed courtesy copies of the filed lawsuit to incumbent Third Circuit Judges Fresard and Ramsey, as well as to Judge Fresard's husband, Defendant Donn Fresard.

82. However, within a few hours after Plaintiff filed his lawsuit against Judges Fresard and Ramsey in the Third Circuit Court, Plaintiff began receiving a flurry of phone calls from prominent criminal and civil attorneys requesting and demanding Plaintiff to dismiss his lawsuit against Judges Fresard and Ramsey.

83. In the evening of July 27, 2022, Plaintiff received a phone call from a prominent criminal defense attorney, whose initials are "W.O.C.", who at the time was present and attending a birthday party fundraiser for Pete Lucido, candidate for Macomb County Prosecutor.

84. During the July 27, 2022 phone call with the prominent criminal defense attorney, whose initials are "W.O.C.", Plaintiff was asked by the prominent criminal defense attorney to dismiss his lawsuit against Judges Fresard and Ramsey.

85. During the July 27, 2022 phone call with the prominent criminal defense attorney, whose initials are "W.O.C.", Plaintiff was advised by the prominent criminal defense attorney that the prominent criminal defense attorney was standing with Defendant Donn Fresard and Judge Fresard at Pete Lucido's

birthday party fundraiser and that Defendant Donn Fresard and his wife, Judge Fresard, requested the prominent criminal defense attorney to call Plaintiff to request Plaintiff to dismiss his lawsuit against Judges Fresard and Ramsey.

86. During the July 27, 2022 phone call, the prominent criminal defense attorney, whose initials are "W.O.C.", advised Plaintiff that Defendant Donn Fresard and his wife, Judge Fresard, had informed him that they would do everything in their power to get Plaintiff fired from his job with Defendant Commissioner Scott and sanctioned by the Court if Plaintiff did not agree to dismiss his lawsuit.

87. During the July 27, 2022 phone call, the prominent criminal defense attorney, whose initials are "W.O.C.", also advised Plaintiff that Defendant Donn Fresard and his wife, Judge Fresard, had informed him that they had some powerful friends who work for the Wayne County Board of Commissioners that would ensure Plaintiff would be terminated if Plaintiff did not dismiss his lawsuit against Judges Fresard and Ramsey.

88. Plaintiff advised the prominent criminal defense attorney, whose initials are "W.O.C.", that he would rather discuss the matter with him in person the next day.

89. Accordingly, on July 28, 2022, Plaintiff met with the prominent criminal defense attorney, whose initials are "W.O.C.", at the Fishbones restaurant located in Greektown in downtown Detroit, to discuss the possibility of

Plaintiff dismissing his lawsuit to have Judges Fresard and Ramsey removed from the November 8, 2022 general election ballot.

90. During the meeting at Fishbones, the prominent criminal defense attorney, whose initials are "W.O.C.", renewed his request for Plaintiff to dismiss his lawsuit against Judges Fresard and Ramsey.

91. During the meeting at Fishbones, the prominent criminal defense attorney, whose initials are "W.O.C.", again reiterated to Plaintiff that Defendant Donn Fresard and his wife, Judge Fresard, expressed to him that they were going to do everything in their power to have Plaintiff fired from his job with Defendant Commissioner Scott and sanctioned by the Court if Plaintiff did not agree to dismiss his lawsuit against Judge Fresard and Ramsey.

92. During the meeting at Fishbones with the prominent criminal defense attorney, whose initials are "W.O.C.", Plaintiff expressed his discomfort with Defendant Donn Fresard's and his wife, Judge Fresard's, threats and demands and advised the prominent criminal defense attorney that Plaintiff would think about his request and get back with him.

93. Plaintiff also received phone calls from other prominent civil and criminal attorneys requesting that Plaintiff dismiss his lawsuit against Judges Fresard and Ramsey.

94. About a week or so after filing his lawsuit against Judges Fresard and Ramsey in the Wayne County Circuit Court, Plaintiff received an angry and irate phone call from Defendant Commissioner Scott.

95. During this phone call, Defendant Commissioner Scott asked Plaintiff if he had filed a lawsuit in the Wayne County Circuit Court seeking to have Judges Fresard and Ramsey removed from the ballot.

96. Plaintiff responded to Defendant Commissioner Scott's questions and advised Defendant Commissioner Scott that he had in fact filed a lawsuit, as a private citizen, seeking to have Judges Fresard and Ramsey removed from the ballot and that the legal reasoning was the same as those argued in the Highland Park election case and Plaintiff further advised Defendant Commissioner Scott that the incumbent Judges Fresard and Ramsey had submitted facially defective affidavits of identity in violation of Mich.Comp.Laws §168.558 of Michigan Election Law.

97. Plaintiff then proceeded to ask Defendant Commissioner Scott how she knew or found out that Plaintiff had filed a lawsuit in the Third Circuit Court to have Judges Fresard and Ramsey removed from the November 8, 2022 general election ballot, considering Plaintiff had not informed or advised Defendant Commissioner Scott that he was filing a lawsuit to have the incumbent judges removed from the November 8, 2022 general election ballot.

98. Defendant Commissioner Scott then angrily replied that she had received phone calls from Defendants Johnson, Gaukler, and nonparty Alan Helmkamp, who serves as assistant counsel for the Wayne County Board of Commissioners, on behalf of the Defendant Chair Bell, informing and

advising her that Plaintiff filed a lawsuit in Third Circuit Court seeking to have Judges Fresard and Ramsey removed from the November 8, 2022 general election ballot.

99. Defendant Commissioner Scott would **not** have known about Plaintiff's lawsuit had Defendants Johnson and Gaukler, and nonparty Alan Helmkamp not informed and advised her that Plaintiff had in fact filed the lawsuit in Wayne County Circuit Court against Judges Fresard and Ramsey.

100.    Plaintiff did **not** publicize the filing of this lawsuit in the media.  The only individuals that were aware of Plaintiff's lawsuit being filed in the Third Circuit Court were former Chief Judge Timothy Kenny, Defendant Donn Fresard, Third Circuit Court General Counsel Richard Lynch, Judges Fresard and Ramsey, and their respective legal counsel.

101.    Defendant Commissioner Scott then angrily demanded and advised Plaintiff that if Plaintiff did not drop and/or dismiss his lawsuit against Judges Fresard and Ramsey that Plaintiff could no longer work for her and that Plaintiff would be terminated from his employment.

102.    Plaintiff then advised Defendant Commissioner Scott that Plaintiff could not simply dismiss his lawsuit against Judges Fresard and Ramsey and that it was a process that would take time. Plaintiff did not commit to dismissing his lawsuit against Judges Fresard and Ramsey.

103.    Defendant Commissioner Scott then angrily advised the Plaintiff that the Defendants Johnson, Gaukler, and Chair Bell and nonparty Alan

Helmkamp did not want Plaintiff to continue to work for the Defendant

Wayne County nor the Wayne County Commission, and that Defendants

Johnson and Gaukler and nonparty Alan Helmkamp had expressed to

Defendant Commissioner Scott that Defendant Chair Bell wanted Plaintiff

gone and/or terminated from his position as legislative aide to Defendant

Commissioner Scott immediately.

104.     At the conclusion of the phone call with Defendant Commissioner

Scott, Plaintiff did not commit to dismissing his lawsuit against Judges

Fresard and Ramsey.

105.     A few minutes after Plaintiff concluded his phone call with Defendant

Commissioner Scott, Plaintiff then received a phone call on his cell phone

from Defendant Commissioner Scott's daughter, Debra.

106.     During the phone call with Defendant Commissioner Scott's daughter,

Debra, Plaintiff was advised that Defendant Commissioner Scott was under

tremendous pressure from Defendants Johnson and Chair Bell, as well as

assistant counsel for the Wayne County Board of Commissioners, nonparty

Alan Helmkamp, to terminate Plaintiff from his employment due to Plaintiff

filing the lawsuit to have the incumbent judges removed from the November

8, 2022 general election ballot.

107.     During this phone conversation, Defendant Commissioner Scott's

daughter, Debra, further reminded Plaintiff that the Defendants Johnson

and Chair Bell, as well as assistant counsel for the Wayne County Board of

Commissioners, nonparty Alan Helmkamp, did not want Defendant Commissioner Scott to hire Plaintiff initially and further advised that it was in Plaintiff's best interest to dismiss his lawsuit against Judges Fresard and Ramsey as Defendant Commissioner Scott had demanded if Plaintiff wanted to keep his job.

108.    At the conclusion of his phone call with Defendant Commissioner Scott's daughter, Debra, Plaintiff did not commit to dismissing his lawsuit against Judges Fresard and Ramsey.

109.    A few days later, Plaintiff was summoned to meet with a prominent civil attorney, whose initials are "M.F.", at Bar 7 restaurant in Southfield.

110.    During this meeting at Bar 7 with the prominent civil attorney, whose initials are "M.F.", Plaintiff was again asked to dismiss his lawsuit against Judges Fresard and Ramsey.

111.    During the meeting at Bar 7, the prominent civil attorney, whose initials are "M.F.", advised Plaintiff that Defendant Donn Fresard and his wife, Judge Fresard, were committed to using every favor they had to get Plaintiff fired from his job with Defendant Commissioner Scott and sanctioned by the Court if Plaintiff did not dismiss his lawsuit against Judges Fresard and Ramsey.

112.    At the conclusion of the meeting at Bar 7 with the prominent civil attorney, whose initials are "M.F.", Plaintiff did not commit to dismissing his lawsuit against Judges Fresard and Ramsey.

113.     On July 29, 2022, Plaintiff filed an emergency motion to disqualify

then Wayne County Circuit Chief Judge Timothy Kenny ("Chief Judge

Kenny") from presiding over Plaintiff's case against Judges Fresard and

Ramsey.

114.     On August 5, 2022, Chief Judge Kenny held a hearing on Plaintiff's

motion for disqualification and at that hearing, Chief Judge Kenny was

visibly upset, angry, and irritated with the Plaintiff.

115.     At the conclusion of the August 5, 2022 hearing, Chief Judge Kenny

denied Plaintiff's motion for disqualification and referred Plaintiff's motion

for disqualification to the State Court Administrative Office ("SCAO") to be

assigned to a different judge to decide the merits of Plaintiff's disqualification

motion *de novo*.

116.     After numerous Judges of the Third Circuit Court disqualified

themselves, *sua sponte*, from deciding Plaintiff's motion for disqualification,

SCAO eventually assigned Plaintiff's motion to Macomb County Circuit Chief

Judge James Biernat.

117.     However, because time was of the essence, while Plaintiff's motion for

disqualification was pending in the Third Circuit Court, on August 16, 2022,

Plaintiff, as a private citizen, filed a **separate lawsuit** in the Michigan

Court of Claims against the Michigan Secretary of State seeking the issuance

of a writ of mandamus compelling the Secretary of State to decertify

incumbent Third Circuit Judges Fresard, Ramsey, Sheila Gibson Manning

("Judge Gibson"), Brian Sullivan ("Judge Sullivan"), and Mark Slavens ("Judge Slavens") from appearing on the November 8, 2022 general election ballots as candidates. See *Davis v Jocelyn Benson*, Court of Claims No. 22-000125-MM (**opinion attached**); see also *Davis v Secretary of State*, ___Mich.App.___; ___NW2d___ (issued April 20, 2023) (Docket No. 362841) (**opinion attached**).

118.     Plaintiff, again, did **not** inform Defendant Commissioner Scott that he filed a new lawsuit in the Michigan Court of Claims against the Michigan Secretary of State, which sought to have multiple incumbent judges decertified and removed from the November 8, 2022 general election ballot because Plaintiff filed this lawsuit as a private citizen and the filing of this new lawsuit was **unrelated** to his job duties.

119.     At the time Plaintiff filed his new lawsuit in the Michigan Court of Claims, Defendant Commissioner Scott was **not** aware and had no knowledge of the fact that Plaintiff, as a private citizen, had filed a new lawsuit in the Michigan Court of Claims against the Michigan Secretary of State, which sought to have multiple incumbent judges decertified and removed from the November 8, 2022 general election ballot.

120.     However, about a week or so after Plaintiff filed his new lawsuit in the Michigan Court of Claims against the Secretary of State, Plaintiff again received an angry and irate phone call from Defendant Commissioner Scott, who informed and advised Plaintiff that she had received another phone call

from Defendants Johnson, Chair Bell, and assistant counsel for the Wayne County Board of Commissioners, nonparty Alan Helmkamp, informing her that no only Plaintiff had **not** dismissed his Wayne County Circuit Court lawsuit against Judges Fresard and Ramsey, but they further advised and informed Defendant Commissioner Scott that Plaintiff had filed a **new** lawsuit against the Secretary of State in the Michigan Court of Claims seeking similar relief against additional incumbent judges to have them removed from the November 8, 2022 general election ballot.

121.     During this phone call, Defendant Commissioner Scott **again** threatened to terminate Plaintiff's employment if he did not dismiss **all** lawsuits that sought to remove the incumbent judges of the Third Circuit Court from the November 8, 2022 general election ballot.

122.     During this phone call, Defendant Commissioner Scott again angrily expressed to Plaintiff that she was frustrated and tired of getting phone calls from Defendants Johnson, Gaukler, and Chair Bell, as well as from nonparty Alan Helmkamp, demanding that she terminate Plaintiff's employment due to Plaintiff filing the meritorious lawsuits to have certain incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

123.     At the conclusion of this phone conversation, Plaintiff, again, did not commit to dismissing either of his two lawsuits that sought to have multiple

incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

124.    Defendant Commissioner Scott would **not** have known that Plaintiff had filed a separate lawsuit in the Court of Claims against the Secretary of State had Defendants Johnson, Gaukler, Chair Bell, and nonparty Alan Helmkamp not informed Defendant Commissioner Scott of Plaintiff's meritorious filings made as a private citizen.

125.    Plaintiff did not publicize the filing of this new lawsuit in the media. The only individuals that were aware of this new lawsuit were Defendant Donn Fresard, Judges Fresard, Ramsey, Gibson, Sullivan, and Slavens, and their respective legal counsel.

126.    While Plaintiff's Third Circuit Court and Michigan Court of Claims lawsuits were pending, on August 30, 2022, Macomb County Circuit Chief Judge James Biernat issued an order granting Plaintiff's motion to disqualify then Third Circuit Court Chief Judge Kenny from presiding over Plaintiff's Third Circuit Court case and further ordered then Chief Judge Kenny removed from Plaintiff's Third Circuit Court case against Judges Fresard and Ramsey. (**See Macomb County Circuit Chief Judge Biernat's Opinion and Order Disqualifying Chief Judge Kenny attached**).

127.    After numerous delays, and disqualifications, on September 13, 2022, Plaintiff's Third Circuit Court case against Judges Fresard and Ramsey was finally reassigned to Wayne County Circuit Court Judge Qiana Lillard, who

finally adjudicated and closed Plaintiff's meritorious lawsuit against Judges

Fresard and Ramsey on October 28, 2022, which Plaintiff immediately

appealed to the Michigan Court of Appeals. See *Davis v Wayne County*

*Election Commission*, unpublished per curiam opinion of the Court of

Appeals, issued July 20, 2023 (Docket No.363604) (**opinion attached**).

128.    Plaintiff's meritorious lawsuit filed in the Michigan Court of Claims

against the Michigan Secretary of State was adjudicated on September 2,

2022 and promptly and timely appealed to the Michigan Court of Appeals.

See *Davis v Jocelyn Benson*, Court of Claims No. 22-000125-MM (**opinion**

**attached**); see also *Davis v Secretary of State*, ___Mich.App.___; ___NW2d___

(issued April 20, 2023) (Docket No. 362841) (**opinion attached**).

129.    Both of Plaintiff's lawsuits filed in the Third Circuit Court and

Michigan Court of Claims, which sought to have certain incumbent judges of

the Third Circuit Court removed from the November 8, 2022 general election

ballot, were deemed meritorious and **not** frivolous by the trial and appellate

courts.

130.    The filing of the meritorious lawsuits by the Plaintiff was protected

activity under the First Amendment of the United States Constitution.

131.    Plaintiff was speaking as a private "citizen" and **not** as an employee of

the Defendant Wayne County when Plaintiff filed the two separate

meritorious lawsuits in Third Circuit Court and the Michigan Court of

Claims seeking to have multiple incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

132.     Plaintiff's two separate lawsuits filed in the Third Circuit Court and the Michigan Court of Claims, which sought the removal of multiple incumbent judges of Third Circuit Court from the November 8, 2022 general election ballot, addressed matters of public concern because both lawsuits properly pled and alleged that certain incumbent judicial candidates violated Mich.Comp. Laws §168.558 of Michigan Election Law by submitting facially defective affidavits of identity.

133.     During the months of August, September, October, and November 2022, Defendant Commissioner Scott was visibly disgruntled and upset with Plaintiff for not dismissing his lawsuits that sought to have multiple incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

134.     Defendant Commissioner Scott became distant and did not speak regularly with Plaintiff as she previously had done.

135.     During the months of August, September, October, and November 2022, Plaintiff witnessed Defendant Commissioner Scott meeting secretly with Defendants Johnson, Gaukler, and Chair Bell, nonparty Alan Helmkamp, as well as with Commission Counsel Felicia Johnson, Cynthia Douglas, and Wayne County Commissioner Irma Clark-Coleman.

136.     Staff employed by other Wayne County Board of Commissioners privately advised Plaintiff that Defendant Commissioner Scott was discussing terminating Plaintiff because Plaintiff did not dismiss his lawsuits that sought to have incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

137.     In fact, in August and September 2022, Plaintiff was advised by a high-ranking Wayne County elected official, whose initials are "E.S.", that Defendant Commissioner Scott had personally informed him that Defendants Johnson, Chair Bell and Donn Fresard, as well as nonparty Alan Helmkamp, were applying pressure on her to terminate Plaintiff because Plaintiff did not dismiss his lawsuits that sought to have the incumbent judges removed from the November 8, 2022 general election ballot.

138.     In August and September 2022, this same high-ranking Wayne County elected official, whose initials are "E.S.", also advised Plaintiff that Defendant Donn Fresard had lobbied and requested Defendants Johnson and Chair Bell, as well as nonparty Alan Helmkamp, to apply pressure on Defendant Commissioner Scott to terminate Plaintiff because Plaintiff did not dismiss his lawsuits that sought to have Defendant Donn Fresard's wife, Judge Fresard, and Judges Ramsey and Gibson removed from the November 8, 2022 general election ballot.

139.     In fact, in either September or October 2022, Defendant Donn Fresard personally appeared at a full board meeting of the Wayne County Board of

Commissioners, which was held at the Guardian Building in Detroit, in which Plaintiff personally observed Defendant Donn Fresard speaking with Defendants Johnson, Gaukler, Chair Bell, and nonparty Alan Helmkamp.

140.    It did not appear that Defendant Donn Fresard was on official business on behalf of the Macomb County Prosecutor's office when he personally appeared at the Wayne County Board of Commissioners full board meeting in either September or October 2022 because he did not address the Wayne County Board of Commissioners in his official capacity as a representative from the Macomb County Prosecutor's Office nor was there anything on the meeting agenda pertaining to the Macomb County Prosecutor's Office.

141.    Additionally, in September 2022, a well-known business owner and political contributor, whose initials are "R.O.", privately informed Plaintiff that Defendant Commissioner Scott had personally told him that she was either going to terminate and/or **not renew** Plaintiff's employment agreement for the year 2023 because Plaintiff refused to dismiss his lawsuits that sought to have multiple incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot.

142.    Mysteriously, in September 2022, requests under Michigan's Freedom of Information Act (FOIA) began to be submitted to the Defendant Wayne County and Wayne County Board of Commissioners seeking Plaintiff's employment and personnel records.

143.     Mysteriously, in September 2022, attorneys from the Defendant Clark

Hill law firm submitted a FOIA request to the Defendants Wayne County

and Johnson, as well as to the Wayne County Board of Commissioners,

requesting documents pertaining to Plaintiff's employment agreement,

personnel file and work activity.

144.     Additionally, in September 2022, Ross Jones, a reporter with WXYZ

Channel 7 news, also submitted a similar FOIA request to the Defendant

Wayne County and Wayne County Board of Commissioners requesting

documents pertaining to Plaintiff's employment agreement, personnel file

and work activity.

145.     Upon being made aware of these FOIA requests, in September 2022,

Defendant Commissioner Scott met privately with Plaintiff and informed

Plaintiff that she was advised that Defendants Johnson, Gaulker, and Chair

Bell, and nonparty Alan Helmkamp, had teamed up and conspired with

lawyers from Defendant Clark Hill and Ross Jones from Channel 7 to try to

get information pertaining to Plaintiff's employment and work activity in

retaliation for Plaintiff filing the lawsuits to have the incumbent judges and

non-incumbent judicial candidates removed from the ballot.

146.     During this private September 2022 meeting, Defendant

Commissioner Scott further advised Plaintiff that she could not handle or

withstand the pressure that was being applied by Defendants Johnson,

Gaulker, and Chair Bell, as well as nonparty Alan Helmkamp, on behalf of

the Defendant Fresard and the incumbent judges to terminate Plaintiff from his employment.

147.     In an obvious effort to apply additional pressure on Defendant Commissioner Scott to terminate Plaintiff from his employment, and to further intimidate and harass the Plaintiff, in October, November and December 2022, attorneys and/or representatives from the Defendant Clark Hill law firm submitted additional FOIA requests to the Defendants Wayne County and Johnson, as well as to the Wayne County Board of Commissioners seeking documents pertaining to Plaintiff's employment and work schedule and work activities.

148.     In September and/or October 2022, an elected Judge of the Third Circuit Court met privately with the Plaintiff and advised Plaintiff of a scurrilous email that Defendant Donn Fresard had authored and sent to many judges and lawyers seeking to raise funds for his wife, Judge Fresard, as well as Judges Ramsey and Gibson to assist them in their legal fights against Plaintiff.

149.     During this private meeting with Plaintiff, the elected Judge of the Third Circuit Court informed Plaintiff that Defendant Donn Fresard's email had contained some defaming comments about Plaintiff and that Defendant Donn Fresard was soliciting campaign donations for a group Defendant Donn Fresard had formed and organized called "Back The Bench", which was organized to raise funds to pay for legal costs Defendant Donn Fresard's wife,

Judge Fresard, and Judges Ramsey and Gibson had incurred as a result of Plaintiff's meritorious lawsuits to have them removed from the November 8, 2022 general election ballot.

150.     During this private meeting with the Plaintiff, the elected Judge of the Third Circuit Court also informed Plaintiff that Defendant Donn Fresard had organized a fundraiser for his wife, Judge Fresard, and Judges Ramsey and Gibson through the group Defendant Donn Fresard formed--"Back The Bench".

151.     The elected Judge of the Third Circuit Court further advised the Plaintiff that this fundraiser was going to be held on October 27, 2022 at the Atheneum Suite Hotel in Greektown.

152.      Campaign finance records on file with the Michigan Secretary of State show that nonparty Alan Helmkamp contributed $150 for the October 27, 2022 fundraiser held by Defendant Donn Fresard at the Atheneum Suites Hotel.

153.     Campaign finance records show that the proceeds from the October 27, 2022 fundraiser at the Atheneum Hotel were split evenly three ways amongst the candidate committees for Judges Fresard, Ramsey and Gibson.

154.     Campaign finance records on file with the Michigan Secretary of State also show that nonparty Alan Helmkamp contributed $350 directly to Judge Fresard's candidate committee on November 7, 2022.

155.    Campaign finance records on file with the Michigan Secretary of State show that all of the funds raised by Judges Fresard, Ramsey, and Gibson during the fundraisers held on October 27, 2022 and November 7, 2022 were used to pay their respective attorney fees and costs incurred as a result of Plaintiff's meritorious lawsuits he filed in the Wayne County Circuit Court and Court of Claims to have them removed from the November 8, 2023 general election ballot.

156.    Nonparty Alan Helmkamp's campaign contributions in October and November 2022 to Judges Fresard, Ramsey and Gibson clearly show and prove his support, loyalty and commitment to keeping Judges Fresard, Ramsey and Gibson on the Third Circuit Court bench, as well as Alan Helmkamp's commitment to assisting Judges Fresard, Gibson and Manning with defeating Plaintiff's lawsuits that sought to have them removed from the November 8, 2022 general election ballot.

157.    During the months of August, September, October, and November 2022, Plaintiff was under immense pressure and stress, which resulted in Plaintiff being rushed to the emergency room for high blood pressure.

158.    Plaintiff has never experienced high blood pressure before and has never been prescribed medication to treat high blood pressure prior to this ordeal.

159.     On December 13, 2022, Defendant Commissioner Scott summoned Plaintiff to her office at the Guardian Building where Cynthia Douglas, who serves on the executive staff of Defendant Chair Bell, was also present.

160.     At this meeting held on December 13, 2022, without providing a reason, Defendant Commissioner Scott advised Plaintiff that she was **not renewing** his employment agreement for the year 2023 and directed Plaintiff to immediately surrender his work I.D. and keys to the office to Cynthia Douglas.

161.     Defendant Commissioner Scott further advised Plaintiff that he would be paid through December 31, 2022, and thanked Plaintiff for his service.

162.     Plaintiff hugged and thanked Defendant Commissioner Scott for the opportunity and Cynthia Douglas then proceeded to escort Plaintiff out of the office and out of the Guardian Building.

163.     Pursuant to the official policies, customs, and practices of the Defendant Wayne County, as an elected member of the Wayne County Board of Commissioners, Defendant Commissioner Scott had final decision-making authority **not to renew** Plaintiff's employment agreement for the year 2023.

164.     Pursuant to the official policies, customs, and practices of the Defendant Wayne County, the Defendant Commissioner Scott, as an elected member of the Wayne County Board of Commissioners, had the unilateral authority **not to renew** Plaintiff's employment agreement for 2023.

165.     A few weeks later, Plaintiff privately asked Defendant Commissioner Scott why she decided not to renew Plaintiff's employment agreement for the year 2023 and Defendant Commissioner Scott responded and advised Plaintiff that it was due to the fact that Plaintiff did not dismiss his lawsuits against Judges Fresard and Ramsey as she had demanded, and that Defendants Johnson and Chair Bell, as well as nonparty Alan Helmkamp, on behalf of Defendant Chair Bell, were applying too much pressure on her to terminate Plaintiff from his employment as a result of the lawsuits Plaintiff filed to have the incumbent judges and non-incumbent judicial candidates removed from the November 8, 2022 general election ballot.

166.     But for Defendants Johnson's, Gaukler's, Chair Bell's, and Donn Fresard's, malicious and unlawful actions of pressuring and demanding Defendant Commissioner Scott to terminate Plaintiff from his employment, Plaintiff would have had his employment agreement renewed by Defendant Commissioner Scott for the year 2023.

167.     Defendants Johnson, Gaukler, Chair Bell and Donn Fresard took adverse actions against Plaintiff in retaliation against the Plaintiff for filing the meritorious lawsuits to have certain incumbent judges of the Third Circuit Court removed from the November 8, 2022 general election ballot by pressuring and demanding Defendant Commissioner Scott to terminate Plaintiff's employment and/or not renew Plaintiff's employment agreement for the year 2023.

168.    In June 2023, Defendant Commissioner Scott had expressed to

Plaintiff that she was looking forward to Plaintiff organizing and planning

new projects for the office beginning in January 2023 and Defendant

Commissioner Scott also praised Plaintiff for spear heading and assisting her

with her fundraiser held in June 2023, which Defendant Commissioner Scott

indicated raised her more money than she had ever previously raised for re-

election to the Wayne County Board of Commissioners.

169.    Defendant Commissioner Scott's nonrenewal of Plaintiff's employment

agreement was an adverse action that has injured and damaged the Plaintiff,

which was in retaliation for Plaintiff exercising his First Amendment rights

by filing meritorious lawsuits, as a private citizen, to have certain incumbent

judges removed from the November 8, 2022 general election ballot.

170.    Plaintiff currently is not employed and since December 2022, Plaintiff

has been unable to find stable full-time employment.

171.    Plaintiff now suffers from anxiety and depression. These medical

conditions were not present prior to Defendant Commissioner Scott deciding

not to renew Plaintiff's employment agreement or prior to Defendants

Johnson, Helmkamp, Gaukler, and Fresard's malicious and unlawful actions.

172.    Defendants Johnson's, Gaukler's, Chair Bell's, and Fresard's, actions of

demanding Defendant Commissioner Scott to terminate Plaintiff from his

employment because Plaintiff refused to dismiss his meritorious lawsuits

that sought to have certain incumbent judges removed from the November 8, 2022 general election ballot were malicious and unlawful.

173.     Defendants Johnson, Gaukler, Chair Bell, and Donn Fresard, and nonparty Alan Helmkamp have stated publicly that they despise, hate, and dislike the Plaintiff.

174.     Retaliating against an individual for exercising his or her First Amendment rights is illegal and unlawful under federal law.

175.     Defendants Johnson's, Gaukler's, Chair Bell's, Commissioner Scott's and Donn Fresard's deliberate and unlawful actions have caused Plaintiff severe injuries, harm, and damages.

**WHEREFORE**, Plaintiff Robert Davis requests and prays that this Honorable Court enters judgment and grants the following relief against the Defendants Johnson, Gaukler, Chair Bell, and Commissioner Scott, as follows:

a. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Plaintiff's civil and constitutional rights were violated as a direct result of the Defendant County of Wayne's official policy, custom, and/or practice that grants and authorizes each of the elected members of the Wayne County Board of Commissioners with the final decision-making authority with respect to the hiring, firing, renewal, and/or nonrenewal of their respect staff members' employment agreements/contracts.

b. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Defendant Alisha Bell, in her individual capacity as the duly elected Chair of the Wayne County Board of Commissioners, retaliated against the Plaintiff for exercising his First Amendment rights.

c. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Defendant Martha G. Scott, in her individual capacity as a duly elected member of the Wayne County Board of Commissioners, retaliated against the Plaintiff for exercising his First Amendment rights.

d. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Defendant Timothy Johnson, in his official and individual capacities as principal, agent, employee, and owner of Gaukler Pointe Communications, LLC, retaliated against the Plaintiff for exercising his First Amendment rights.

e. Issue a declaratory judgment pursuant to 42 U.S.C. 1983 and the Declaratory Judgment Act declaring that Defendant Gaukler Pointe Communications, LLC, retaliated against Plaintiff for exercising his First Amendment rights.

f. Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendant County of Wayne.

g. Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendant Alisha Bell, in her individual capacity as the duly elected Chair of the Wayne County Board of Commissioners, for retaliating against the Plaintiff for exercising his First Amendment rights.

h. Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendant Martha G. Scott, in her individual capacity as am elected member of the Wayne County Board of Commissioners, for retaliating against the Plaintiff for exercising his First Amendment rights.

i. Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendant Timothy Johnson, in his official and individual capacities as principal, agent, employee, and owner of Gaukler Pointe Communications, LLC, for retaliating against the Plaintiff for exercising his First Amendment rights.

j.   Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendant Gaukler Pointe Communications, LLC, for retaliating against the Plaintiff for exercising his First Amendment rights.

k.   Award Plaintiff costs and attorney's fees pursuant to 42 U.S.C. §1988.

l.   Grant any further equitable relief the Court deems appropriate, just, and proper at the time of final judgment.

## COUNT II

**42 U.S.C. §1983-Civil Conspiracy- Defendants Donn Fresard and Clark Hill Conspired With Defendants Tim Johnson and Chair Bell To Retaliate Against Plaintiff For Filing Meritorious State-Court Lawsuits That Sought To Have Certain Incumbent and Non-incumbent Judicial Candidates For The Third Circuit Court Removed From the November 8, 2022 General Election Ballot.**

176.    Plaintiff incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

177.    Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Donn Fresard, a private individual, for conspiring with Defendant Johnson, in his individual and official capacities as the principal, agent, owner, and employee of the Defendant Gaukler; Defendant Chair Bell, in her individual capacity as the duly elected Chair of the Wayne County Commission; and Defendant Clark Hill, a private law firm, to retaliate against the Plaintiff for exercising his First Amendment rights.

178.    Pursuant to 42 U.S.C. §1983, this claim, as pled and alleged in this Count, is brought against Defendant Clark, a private law firm, for conspiring

with Defendant Johnson, in his individual and official capacities as the principal, agent, owner, and employee of the Defendant Gaukler; Defendant Chair Bell, in her individual capacity as the duly elected Chair of the Wayne County Commission; and Defendant Donn Fresard, a private individual, to retaliate against the Plaintiff for exercising his First Amendment rights.

179.    Defendants Chair Bell and Johnson are governmental state actors that were acting under the color of state law for purposes of Plaintiff's civil conspiracy claim brought under 42 U.S.C. §1983 against Defendant Donn Fresard and Defendant Clark Hill.

180.    As noted, Defendant Chair Bell, is the duly elected chair of the Wayne County Board of Commissioners, whose powers and duties are governed by the Wayne County Charter, the Counties Charter Act, and state statutes governing county boards of commissioners.

181.    Defendant Gaukler is an independent contractor of the Defendant Wayne County and Wayne County Board of Commissioners and pursuant to Defendant Gaukler's independent contractor agreement, Defendant Johnson, as the principal, agent, owner, and employee of Defendant Gaukler Pointe Communications, LLC, serves as the Director of Administration for the Wayne County Board of Commissioners.  (**See Defendant Gaukler Pointe Communications, LLC's Independent Contractor Agreement attached**).

182.     Pursuant to Defendant Gaukler's independent contractor agreement
with the Defendant Wayne County and the Wayne County Board of
Commissioners, Defendants Gaukler's and Johnson's "[g]eneral duties
include the administration, supervision, coordination, and management of all
functions of the Wayne County Commission, except for the mandated Auditor
General function, under the guidance and supervision of the Wayne County
Commission Chairperson. Areas of responsibility include finance, budget,
payroll, personnel, procurement, contract management, information
technology, special projects, government relations, and other work duties
assigned by the Commission Chairperson.  Work assignments flow from
directives issued by the Wayne County Commission through its Chairperson.
The Contractor is expected to keep abreast of problems and shall inform the
Commission through its Chairperson of such problems, offering possible
solutions for correcting or alleviating them." (**See Defendant Gaukler
Pointe Communications, LLC's Independent Contractor Agreement
attached**).

183.     Pursuant to Defendant Gaukler's independent contractor agreement,
both Defendants Gaukler and Johnson have a sufficiently close nexus
between the Defendant Wayne County, Wayne County Board of
Commissioners and Defendant Chair Bell such that Defendants Gaukler's
and Johnson's conduct may be fairly attributed to the Defendant Wayne
County, Wayne County Board of Commissioners and Defendant Chair Bell.

184.     Defendant Donn Fresard conspired with Defendants Chair Bell and
Johnson to get Plaintiff terminated from his employment and/or secure the
nonrenewal of Plaintiff's employment agreement with Defendant
Commissioner Scott in retaliation against the Plaintiff for filing meritorious
lawsuits that sought to have Defendant Donn Fresard's wife, Judge Fresard,
and other incumbent judges of the Third Circuit Court, removed from the
November 8, 2022 general election ballot as judicial candidates.

185.     A single plan existed between Defendants Donn Fresard, Chair Bell,
Johnson, and Clark Hill in that they would individually and/or jointly harass,
intimidate, apply pressure on and demand that Defendant Commissioner
Scott terminate Plaintiff's employment and/or secure the nonrenewal of
Plaintiff's employment agreement.

186.     Defendant Donn Fresard met and/or spoke privately with Defendants
Chair Bell, Johnson and representatives and/or attorneys from Defendant
Clark Hill and requested that each of them begin applying the necessary
pressure on Defendant Commissioner Scott to fire Plaintiff and/or secure the
nonrenewal of Plaintiff's employment agreement in retaliation for Plaintiff
filing the meritorious lawsuits to have Defendant Donn Fresard's wife, Judge
Fresard, and other incumbent judges of the Third Circuit Court removed
from the November 2022 general election ballot and for Plaintiff's refusal to
dismiss his meritorious lawsuits.

187.     Part of Defendants Donn Fresard, Chair Bell and Johnson's plan was to get outside parties, which included Defendant Clark Hill, to begin submitting FOIA requests to the Defendant Wayne County and Wayne County Board of Commissioners for Plaintiff's employment agreement, personnel file, time sheets and work activity.

188.     Having outside persons and entities, including members of the media, community activists, and Defendant Clark Hill, to submit FOIA requests pertaining to Plaintiff's employment was intended to add additional pressure on and to intimidate Defendant Commissioner Scott to either terminate Plaintiff's employment agreement and/or secure the nonrenewal of Plaintiff's employment agreement for the year 2023.

189.     Having outside persons and entities, including members of the media, community activists, and Defendant Clark Hill to submit FOIA requests pertaining to Plaintiff's employment was also intended to harass and intimidate Plaintiff in retaliation for Plaintiff filing the meritorious lawsuits to have the incumbent and non-incumbent judicial candidates removed from the November 8, 2022 general election ballot.

190.     Defendants Chair Bell, Johnson, and Clark Hill agreed with Defendant Donn Fresard's requests to apply pressure on Defendant Commissioner Scott to either terminate Plaintiff's employment and/or secure the nonrenewal of Plaintiff's employment agreement.

191.     In response to Defendant Donn Fresard's requests, Defendants Chair
Bell and Johnson each began pressuring and demanding Defendant
Commissioner Scott to terminate Plaintiff's employment and/or agree not to
renew Plaintiff's employment agreement for the year 2023.

192.     In furtherance of this conspiracy, at the direction and with the
approval of Defendant Chair Bell, Defendant Johnson began calling and
meeting with Defendant Commissioner Scott numerous times to harass,
intimidate and pressure Defendant Commissioner Scott to either terminate
Plaintiff's employment and/or agree not to renew Plaintiff's employment
agreement for the year 2023.

193.     In response to the pressure applied by Defendants Chair Bell and
Johnson, Defendant Commissioner Scott began meeting privately with
Commission Counsel Felicia Johnson and Commissioner Irma Clark Coleman
to discuss any potential legal claims Plaintiff may have if Plaintiff was
terminated and/or if Plaintiff's employment contract was not renewed.

194.     In furtherance of this conspiracy, Defendants Donn Fresard, Johnson,
and Chair Bell, reached out to attorneys and/or representatives employed by
Defendant Clark Hill for them to begin submitting FOIA requests pertaining
to Plaintiff's employment contract, work hours, job duties, and work
activities.

195.     The FOIA requests submitted by Defendant Clark Hill were intended
to intimidate and harass Plaintiff and was intended to also apply additional

pressure on Defendant Commissioner Scott to terminate Plaintiff and/or secure the nonrenewal of Plaintiff's employment agreement for the year 2023.

196.     In furtherance of this conspiracy, in September 2022, at the request and direction of Defendants Fresard, Chair Bell and Johnson, representatives from Defendant Clark began submitting FOIA requests to the Defendant Wayne County and the Wayne County Board of Commissioners requesting Plaintiff's employment agreement, personnel file, time sheets and work activity.

197.     In addition to Defendant Clark Hill's mysterious and suspicious FOIA requests, similar and almost identical FOIA requests were also submitted to the Defendant Wayne County in September 2022 by members of the media, which included George Hunter from the Detroit News and Ross Jones from WXYZ Channel 7 News, requesting Plaintiff's employment agreement, personnel file, time sheets and work activity.

198.     Defendant Clark Hill continued this practice of harassment and intimidation of Plaintiff by submitting additional FOIA requests seeking documents pertaining to Plaintiff's employment and work activity to the Defendants Wayne County and Johnson in October, November and December 2022.

199.     Defendant Clark Hill's sudden interest in records pertaining to Plaintiff's employment with Defendant Commissioner Scott was suspicious considering Defendant Clark Hill did **NOT** represent any of the incumbent

judges Plaintiff sought to have removed from the November 8, 2022 general election ballot and more importantly, at the time Defendant Clark Hill submitted these FOIA requests in September, October, November and December 2022, Defendant Clark Hill did **NOT** represent or was retained by the Defendants Wayne County, Chair Bell or the Wayne County Board of Commissioners to represent them in any litigation.

200.     The FOIA requests the Defendant Clark Hill submitted to the Defendant Wayne County and Defendant Johnson in September, October, November and December 2022 seeking records pertaining to Plaintiff's employment, work schedule and work activity were **NOT** sent as an "agent" and/or "legal representative" for and/or on behalf of the Defendant Wayne County, Wayne County Board of Commissioners, and/or Defendant Chair Bell.

201.     Rather, said FOIA requests submitted by Defendant Clark Hill to the Defendant Wayne County and Defendant Johnson in September, October, November and December 2022, which sought records pertaining to Plaintiff's employment and work activity, were sent in an effort to further harass and intimidate Plaintiff and add additional pressure on Plaintiff's boss, Defendant Commissioner Scott, to terminate Plaintiff's employment in retaliation for Plaintiff's meritorious election-related lawsuits and subsequent appeals.

202.     Around the same time, a former client of the Defendant Clark Hill, Michael Griffie, who is an upcoming political star within the democratic party, reached out to the Plaintiff and advised and warned Plaintiff that attorney Chris Trebilcock, who is employed by the Defendant Clark Hill, personally told him that he "despised" and "hated" Plaintiff and that he was going to do whatever he could to get Plaintiff terminated from his employment with Defendant Commissioner Scott.

203.     During this conversation, Michael Griffie further advised Plaintiff that Defendant Clark Hill's employee, attorney Chris Trebilcock, was seeking to get Plaintiff terminated from his employment with Defendant Commissioner Scott because of the meritorious lawsuit and subsequent appeals Plaintiff filed in the election-related litigation pertaining to non-incumbent judicial candidates, Nicholas John Bobak Hathaway and Kiefer Cox, who were represented by Defendant Clark Hill and attorney Chris Trebilcock.

204.     Defendant Clark Hill's employee, attorney Chris Trebilcock's, "dislike" and "hatred" of Plaintiff stemmed from Plaintiff's successful and meritorious lawsuit and subsequent appeals in the matter of *Robert Davis v Wayne County Election Commission, Nicholas John Bobak Hathaway and Kiefer Cox.* See *Davis v Wayne County Election Commission*, unpublished per curiam opinion of the Court of Appeals, issued May 11, 2023 (Docket No. 362547) (**opinion attached**).

205.    In April/May 2022, Plaintiff filed a lawsuit in the Third Circuit Court
against non-incumbent judicial candidates Nicholas John Bobak Hathaway
and Kiefer Cox, who were both represented by Defendant Clark Hill and
attorney Chris Trebilcock, seeking to have them removed from the November
8, 2022 general election ballot as judicial candidates for the non-incumbent
positions for the Third Circuit Court. See *Davis v Wayne County Election
Commission*, unpublished per curiam opinion of the Court of Appeals, issued
May 11, 2023 (Docket No. 362547) (**opinion attached**).

206.    In the meritorious lawsuit Plaintiff brought against Defendant Clark
Hill's clients, Nicholas John Bobak Hathaway and Kiefer Cox, Plaintiff
sought to have them removed from the November 8, 2022 general election
ballot as judicial candidates for the nonincumbent positions for the Third
Circuit Court for their purported violations of Michigan Election Law due to
their affidavits of identity being facially defective. See *Davis v Wayne County
Election Commission*, unpublished per curiam opinion of the Court of
Appeals, issued May 11, 2023 (Docket No. 362547) (**opinion attached**).

207.    Although the Michigan Court of Appeals ultimately did not agree with
Plaintiff's position and interpretation of Michigan Election Law that would
have ultimately resulted in nonincumbent judicial candidates Nicholas John
Bobak Hathaway and Kiefer Cox being removed from the November 8, 2022
general election ballot, the Michigan Court of Appeals did agree with the
Plaintiff that his lawsuit was **meritorious** and **NOT** frivolous as the Third

Circuit Court **erroneously** concluded on two (2) separate occasions. See *Davis v Wayne County Election Commission*, unpublished per curiam opinion of the Court of Appeals, issued May 11, 2023 (Docket No. 362547) (**opinion attached**).

208.     Recognizing the merit of Plaintiff's lawsuit, the Michigan Court of Appeals not only **VACATED** and **REVERSED** the erroneous decisions of the Third Circuit Court, but the Michigan Court of Appeals also awarded Plaintiff court costs, which were paid by Defendant Clark Hill and their clients, Nicholas John Bobak Hathaway and Kiefer Cox. (**See Michigan Court of Appeals' Award of Costs to Plaintiff and Receipt of Payment of Costs attached**).

209.     The strong animus Defendant Clark Hill's employee, attorney Chris Trebilcock, has towards Plaintiff was fully displayed during the litigation and subsequent appeals involving non-incumbent judicial candidates Nicholas John Bobak Hathaway and Kiefer Cox.

210.     While Plaintiff's meritorious appeal in the Cox/Hathaway election-related matter was pending in the Michigan Court of Appeals, Defendant Clark Hill, through its employee, Chris Trebilcock, unlawfully garnished Plaintiff's wages from the Defendant Wayne County and sought to unlawfully seize personal assets of the Plaintiff.

211.     Defendant Clark Hill's active and direct participation in the conspiracy and plan to retaliate against Plaintiff for exercising his First Amendment

rights was in retaliation for Plaintiff initiating meritorious litigation and successfully appealing the adverse rulings in the election-related cases involving and pertaining to Defendant Clark Hill's non-incumbent judicial clients, Nicholas John Bobak Hathaway and Kiefer Cox. See *Davis v Wayne County Election Commission*, unpublished per curiam opinion of the Court of Appeals, issued May 11, 2023 (Docket No. 362547) (**opinion attached**).

212.    Defendants Donn Fresard's, Clark Hill's, Chair Bell's, and Johnson's plan ultimately worked because on December 13, 2022, Plaintiff was informed by Defendant Commissioner Scott that his employment agreement would **not** be renewed for the year 2023 and Plaintiff was immediately released of his duties.

**WHEREFORE**, Plaintiff Robert Davis requests and prays that this Honorable Court enters judgment and grants the following relief against the Defendants Donn Fresard, Clark Hill, Chair Bell and Johnson as follows:

a. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Defendant Donn Fresard, a private individual/actor, conspired with Defendants Alisha Bell, in her individual capacity as the duly elected Chair of the Wayne County Board of Commissioners; Timothy Johnson, in his official and individual capacities as principal, agent, employee and owner of Defendant Gaukler Pointe Communications; and Defendant Clark Hill, a private entity, to retaliate against Plaintiff for exercising his First Amendment rights.

b. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 and the Declaratory Judgment Act declaring that Defendant Clark Hill, a private entity, conspired with Defendants Alisha Bell, in her individual capacity as the duly elected Chair of the Wayne County Board of Commissioners; Timothy Johnson, in his official and individual

capacities as principal, agent, employee and owner of Defendant Gaukler Pointe Communications; and Defendant Donn Fresard, a private individual/actor, to retaliate against Plaintiff for exercising his First Amendment rights.

c. Issue a declaratory judgment pursuant to 42 U.S.C. 1983 and the Declaratory Judgment Act declaring that Defendants Donn Fresard, Clark Hill, Alisha Bell, and Timothy Johnson conspired to retaliate against Plaintiff for exercising his First Amendment rights.

d. Pursuant to 42 U.S.C. §1983, award Plaintiff damages, including but not limited to monetary damages, punitive damages, and compensatory damages, in excess of $1 million against the Defendants Donn Fresard, Clark Hill, Alisha Bell, and Timothy Johnson, severally, for conspiring to retaliate against Plaintiff for exercising his First Amendment rights.

e. Award Plaintiff costs and attorney's fees pursuant to 42 U.S.C. §1988.

f. Grant any further equitable relief the Court deems appropriate, just, and proper at the time of final judgment.

Dated:  January 25, 2024        Respectfully submitted,
                                /s/ROBERT DAVIS
                                **ROBERT DAVIS, *Pro Se***
                                Plaintiff
                                180 Eason
                                Highland Park, MI 48203
                                (313) 523-7118
                                Davisrobert854@gmail.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ROBERT DAVIS,**                                            Case No. 24-
              Plaintiff,                                     Hon.

**v**

**COUNTY OF WAYNE**, a municipal corporation,
**ALISHA BELL**, in her individual capacity as the duly
elected Chairperson/Chairwoman of the Wayne County Board of Commissioners,
**MARTHA G. SCOTT**, in her individual capacity as
a duly elected member of the Wayne County Board of Commissioners,
**TIMOTHY JOHNSON**, in his individual and official capacities as principal,
agent, employee, and owner of Gaukler Pointe Communications, LLC,
**GAUKLER POINTE COMMUNICATIONS, LLC**,
a Michigan Limited Liability Company,
**DONN FRESARD**, an individual, and
**CLARK HILL, PLC**,
              Defendants.
_____/

ROBERT DAVIS, *pro se*
Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118
Davisrobert854@gmail.com
_____/

## DEMAND FOR JURY TRIAL

        **NOW COMES**, Plaintiff, ROBERT DAVIS ("Plaintiff" or "Plaintiff Davis"), in

his own proper person and complaint, and pursuant to Fed.R.Civ.P. 38, hereby

demands a jury trial on all the issues so triable by a jury as pled in Plaintiff's

complaint.

Dated:        January 25, 2024         Respectfully submitted,
                                       /s/ROBERT DAVIS
                                       **ROBERT DAVIS, *Pro Se***
                                       Plaintiff
                                       180 Eason
                                       Highland Park, MI 48203
                                       (313) 523-7118
                                       Davisrobert854@gmail.com