**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Kiefer Cox <kieferjosephcoxforjudge@gmail.com> |
| **Sent:** | Monday, May 2, 2022 9:09 PM |
| **To:** | Michael Cox; Kevin Cox |
| **Subject:** | Fwd: ATTN: Lydia - Affidavit of Identity Question |

---------- Forwarded message ---------
From: **Lovegrove, Amy (MDOS)** <lovegrovea1@michigan.gov>
Date: Mon, Apr 4, 2022 at 11:32 AM
Subject: RE: ATTN: Lydia - Affidavit of Identity Question
To: kieferjosephcoxforjudge@gmail.com <kieferjosephcoxforjudge@gmail.com>
Cc: SOS, Disclosure <Disclosure@michigan.gov>, SOS, Elections <Elections@michigan.gov>

Please see my answers below.

Sincerely,

**Amy Lovegrove**, Manager

Disclosure & Compliance Section

Filings, Disclosure & Compliance Division

Bureau of Elections

www.Michigan.gov/campaignfinance

Follow us on Twitter @MICHCFR

The Bureau of Elections provides general information regarding compliance matters, not legal, accounting, or other professional advice regarding any specific situation. The best course of action is to contact your own attorney, accountant or other professional for guidance.

Email communications between the Bureau of Elections and outside individuals are considered a part of the public record and can be requested under FOIA. Emails are reviewed for content and may be placed on the Bureau of Election's website as a public record.

---

**From:** SOS, Disclosure <Disclosure@michigan.gov>
**Sent:** Monday, April 4, 2022 10:49 AM
**To:** Lovegrove, Amy (MDOS) <lovegrovea1@michigan.gov>
**Subject:** FW: ATTN: Lydia - Affidavit of Identity Question

---

**From:** SOS, Elections <Elections@michigan.gov>
**Sent:** Monday, April 4, 2022 9:53 AM
**To:** SOS, Disclosure <Disclosure@michigan.gov>
**Subject:** FW: ATTN: Lydia - Affidavit of Identity Question

---

**From:** Kiefer Cox < >
**Sent:** Sunday, April 3, 2022 4:29 PM
**To:** SOS, Elections < >
**Subject:** ATTN: Lydia - Affidavit of Identity Question

**CAUTION: This is an External email. Please send suspicious emails to abuse@michigan.gov**

Good afternoon Lydia,

I am a candidate for the 3rd Circuit Court non-incumbent judge position in this year's election. My Candidate Committee ID is 520274.

I am in the process of filling out my Affidavit of Identity for this position and I have the following questions for you:

1. In Section 5 (Statements and Attestation), it asks whether my Candidate Committee or myself have filed and paid all statements, reports, late filing fees, and fines as of this date. Can you please confirm that neither my Candidate Committee, nor myself, have any outstanding statements, reports, late filing fees or fines as of today? **There are no filings or late fees outstanding for the committee named above. Is this your only committee?**

2. In Section 3 (Office Sought/Ballot Information), it asks for "Office Name" and "Jurisdiction". What is the proper "Office Name" and "Jurisdiction" for the 3rd Circuit Court Judge Regular Term Non-Incumbent Position? **You will only indicate Circuit Court 3rd Circuit on that line. This is not a jurisdictional office, therefore jurisdiction is not required. You will then fill out the appropriate radio buttons for the type of term and whether it is incumbent/non-incumbent/new judgeship.**

Thank you,

CTE Kiefer Joseph Cox for Judge

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Michael Cox |
| **Sent:** | Thursday, November 3, 2022 9:08 AM |
| **To:** | DONN FRESARD |
| **Cc:** | Michael Cox |
| **Subject:** | RE: Back the Bench |

Donn:

I missed last week so I sent $1500 this am. I was uncertain what you were looking for. If there is any other way to help, let me know.

Mike

---

**From:** DONN FRESARD
**Sent:** Thursday, October 20, 2022 9:35 AM
**To:** Michael Cox
**Subject:** Fwd: Back the Bench

Mike-

Thanks for reading out, I was tired last night this is a lot of work.
Can I put you on the host committee?



**FIGHT** unwarranted attacks on the judiciary.
**DEFEND** judges' right to serve community.

Hon. P. Fresard  Hon. K.A. Ramsey  Hon. S. Gibson-Manning

LISTED IN FORMATION:
**HOST COMMITTEE**

Jon Marko
Tim Brady
Ben Jeffers
Mickey McCullough
Mark Haider
Ben Gonek
Paul J. Millenbach
Art O'Reilly
Leonard Mungo
Todd Perkins
Todd Flood
Dan Mercier
Vincent Haisha
Tom Roeder
Mike Crow
Geoffrey Fieger
Lita Popke
Sue Stanczyk
F. Brett Baccari
Bill Colovos
Thomas G. McNeill

PARTIAL LIST OF EXPECTED
**JUDICIAL ATTENDEES**

Hon. David Allen
Hon. Chandra Baker
Hon. Miriam Bazzi
Hon. Annette Berry
Hon. Karen Braxton
Hon. Eric Cholak
Hon. James Chylinski
Hon. Kevin Cox
Hon. Mellisa Cox
Hon. Paul Cusack
Hon. Susan Dabaja
Hon. Christopher Dingell
Hon. Prentis Edwards
Hon. Wanda Evans
Hon. Edward Ewell
Hon. Helal Farhat
Hon. Alexis Glendening
Hon. David Groner
Hon. Bridget Hathaway
Hon. Thomas Hathaway
Hon. Muriel Hughes
Hon. Susan Hubbard
Hon. Donald Knapp
Hon. Cylenthia Miller
Hon. Leslie Kim Smith
Hon. Martha Snow
Hon. Brian Sullivan
Hon. Frank Szymanski
Hon. Carla Testani
Hon. Regina Thomas
Hon. Margaret Van Houten
Hon. Darnella Williams

This is a joint fundraiser. All donations will be promptly divided one third each to CTE Patricia Fresard, CTE Kelly Ann Ramsey, and CTE Sheila Gibson-Manning. Each are running for re-election to the non-partisan seat of Wayne Co. Circuit Court.

**Tickets are $100.** The maximum allowable individual contribution is $21,300 ($7,100 per candidate). Contributions will only be split three ways.

**CONTRIBUTE BY CHECK:** Checks may be payable to "Back the Bench" and mailed to:

Back the Bench
27735 Jefferson
St. Clair Shores, MI 48081

**CONTRIBUTE ONLINE:** To contribute online, visit https://www.paypal.me/backthebench

**October 27 2022**

5:30 to 7:30 p.m.
Atheneum Hotel, Greektown
The Hermes Room, ground floor

**CONTRIBUTE ONLINE:**
https://www.paypal.me/backthebench

For questions, contact:
Donn Fresard
dfresard2@comcast.net
586-242-2860

This flyer and all other expenses related to fundraising for the three committees to elect will be paid for by the three committees in equal shares.

In Spring of 2022, the statewide bench up for re-election filed their Affidavits of Identity and Incumbency. They carefully studied the forms and instructions, and sought guidance and approval from the Elections Division of the Secretary of State when filing.

The submitted forms were approved and accepted.

Unknown to the judges, the Legislature amended the relevant statute in December of 2021, but the forms, and the attendant instructions remained the same. The Secretary of State staff were not trained in the changes.

The usual serial litigator/embezzler/convicted felon/law school dropout/Wayne County Commission employee, who will not be named here, filed actions in the Circuit Court and in the Court of Claims, alleging that the mere disclosure in the forms that one is running for re election as a Wayne County Circuit Court Judge does not satisfy the added statutory requirement of "an affirmative declaration of non partisan affiliation."

In a prior ruling, a Court of Claims judge ruled essentially that "the form, while convenient, does not satisfy the statutory requirement."

Third Circuit incumbents narrowly and expensively survived the bizarre Court of Claims action only on laches, but are still litigating in Wayne Circuit against similarly absurd claims. The most recent filings seek to have the Election Commission instruct the populace to not vote for certain judges and to instruct the populace they can write in an as yet unnamed candidate.

The convict insisted that the Court not defend the judges, because he had named them individually as candidates, filing a Campaign Finance complaint on the issue.

Should these judges have researched the statutory basis for the forms and instructions and discovered the amendment? Is this where we are?

Litigation has, or is being had in the Court of Claims, Court of Appeals, Supreme Court, Wayne County, Macomb County, and whoever handles Campaign Finance, grievances are filed in the JTC and AGC.

All this takes money to defend. The law school dropout suffers no professional responsibility for misconduct. As a full time employee of the Wayne County Commission, he has plenty of time to draft and file pleadings electronically.

The fees are expected to exceed $70,000.00. Legal fees for defending election law complaints are an allowable campaign expenditure.

Please take a look and see if you can help. I can send some pleadings if you want to see what's going on, it's absurd.

Thanks,

Donn Fresard

**Melissa Wojnar-Raycraft**

**From:** Kevin Cox <kevincox1959@gmail.com>
**Sent:** Tuesday, November 15, 2022 7:30 PM
**To:** Michael Cox
**Subject:** Fwd: FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

This is the email I referred to in the earlier email

---------- Forwarded message ---------
From: **Cox, Kevin** <Kevin.Cox@3rdcc.org>
Date: Tue, Nov 15, 2022 at 7:04 PM
Subject: FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates
To: Kevin Cox <kevincox1959@gmail.com>

Hon. Kevin J. Cox

Wayne County Circuit Court

Frank Murphy Hall of Justice, Courtroom 502

1441 St. Antoine, Detroit, MI 48226

(313) 224-2391

**From:** Fresard, Patricia
**Sent:** Tuesday, November 15, 2022 6:43 PM
**To:** Cox, Kevin
**Subject:** FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

**From:** Robert Davis [davisrobert854@gmail.com]
**Sent:** Monday, November 14, 2022 4:55 PM
**To:** Sallan, Vincent C.
**Cc:** Publiski, Ryan; Gerald Evelyn; Juan Mateo; Rebecca Camargo; Nkrumah Johnson-Wynn; Sullivan, Brian; Fresard,

Patricia; donn.fresard@gmail.com; Hubbard, Susan; Ramsey, Kelly; Beach, Bryan (AG); Meingast, Heather (AG); James J. Hunter; Donald Campbell; Trebilcock, Christopher M.
**Subject:** Re: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

Mr. Sallan:
You should enhance your reading comprehension skills and stop recycling your tired and frivolous arguments.

Robert Davis

On Mon, Nov 14, 2022, 4:48 PM Sallan, Vincent C. <vsallan@clarkhill.com wrote:

We continue to object to Mr. Davis' continued abuse of the judicial system by pursuing these claims. As recognized in the attached Court of Claims opinion from this afternoon, there is no basis in law or fact for the relief that Mr. Davis seeks. The Court should sanction him accordingly.

**Vincent C. Sallan**

**Clark Hill**

500 Woodward Avenue, Suite 3500, Detroit, MI 48226

+1 313.965.8245 (office) | +1 248.224.2318 (cell) | +1 313.965.8252 (fax)

vsallan@clarkhill.com | www.clarkhill.com

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Monday, November 14, 2022 3:35 PM
**To:** Publiski, Ryan <Ryan.Publiski@3rdcc.org>
**Cc:** Gerald Evelyn <geraldevelyn@yahoo.com>; Juan Mateo <mateoja@aol.com>; Rebecca Camargo <rcamargo@waynecounty.com>; Nkrumah Johnson-Wynn <Njohnson3@waynecounty.com>; Sallan, Vincent C. <vsallan@ClarkHill.com>; brian.sullivan@3rdcc.org; Fresard, Patricia <patricia.fresard@3rdcc.org>; donn.fresard@gmail.com; Hubbard, Susan <Susan.Hubbard@3rdcc.org>; Ramsey, Kelly <kelly.ramsey@3rdcc.org>; Beach, Bryan (AG) <beachb@michigan.gov>; Meingast, Heather (AG) <meingasth@michigan.gov>; James J. Hunter <James.Hunter@ceflawyers.com>; Donald Campbell <Donald.Campbell@ceflawyers.com>
**Subject:** Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

**[External Message]**

---

Mr. Publiski:

I am writing to inform the Court that **tomorrow**, in accordance with MCL 600.4545, I will be formally filing *quo warranto* proceedings to **void** the elections of Judges Patricia Fresard, Kelly Ann Ramsey, Sheila Ann

Gibson, Brian R. Sullivan, and judicial candidates Kiefer Cox and Nicholas John Hathaway. Pursuant to MCL 600.4545(2) and MCR 3.306(B)(2), an emergency *ex parte* application for leave to file a complaint for writ of *quo warranto* w**ill be filed first** for the Court's consideration and review. See *Davis v Chatman*, 292 Mich.App. 603; 808 NW2d 555 (2011).

MCL 600.4545(1) provides:

(1) An action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof.

MCL 600.4545(2) further provides:

(2) Such action shall be brought within 30 days after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, **or by any citizen of the county by special leave of the court or a judge thereof. Such action shall be brought against the municipality wherein such fraud or error is alleged to have been committed. (emphasis supplied).**

It is clear from this Court's October 2022 opinion and the Court of Claims' September 2, 2022 opinion that a clear "error" was committed by the Wayne County Election Commission and the County of Wayne in the November 8, 2022 general election as a result of the foregoing incumbent judicial candidates being allowed to appear on the November 8th general election ballot as judicial candidates when in fact they were **NOT** properly certified by the Secretary of State. Thus, their subsequent elections shall be declared VOID. See Davis v Chatman, 292 Mich.App. 603; 808 NW2d 555 (2011).

Lastly, because the *quo warranto* proceedings arise out of the same transactions and occurrences as pled and alleged in the previous action, *Davis v Wayne County Election Commission, et.al.*, Case No. 22-008866-AW, the soon-to-be filed *quo warranto* action **shall be assigned to Judge Lillard as well**. See MCR 8.111(D)(1).

MCR 8.111(D)(1) provides:
(1) if one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge (emphasis supplied).

"Actions arise from the same transaction or occurrence only if each arises from the identical events leading to the other action." *Nat'l Waterworks, Inc. v Intern. Fidelity & Surety, LTD.*, 275 Mich.App. 256, ___; 739 NW2d 121, 125 (2007); see also Kloian v Schwartz, 272 Mich App 232, 243; 725 NW2d 671 (2006); *Wayne Co Prosecutor v Parole Bd,* 210 Mich App 148, 156; 532 NW2d 899 (1995). Moreover, the Court of Appeals "has stated that an example of actions arising from the same transaction or occurrence would be 'several actions separately brought by various passengers of a train which derailed.'" *Nat'l Waterworks, Inc.*, 275

Mich.App. at ___; 739 NW2d at 125, quoting *Armco Steel Corp. v. Dep't of Treasury,* 111 Mich.App. 426, 437, 315 NW2d 158 (1981), aff'd 419 Mich. 582, 358 N.W.2d 839 (1984).

I will advise the Court once the *ex parte* application for leave to file a complaint for writ of quo warranto has been e-filed.

Respectfully submitted,

Robert Davis

**Melissa Wojnar-Raycraft**

**From:** Kevin Cox <kevincox1959@gmail.com>
**Sent:** Tuesday, November 15, 2022 7:29 PM
**To:** Michael Cox
**Subject:** Fwd: FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan
**Attachments:** 20221111 Opin and Ord.pdf

Hi brother. I spoke w Judge Fresard regarding the current state of affairs, and whether the Court was going to hire counsel to defend the Judges in a QW proceeding. She sent this recent Order from Judge Swartzle which touches on the issue in part. I am honing to forward a separate email Judge F also sent me regarding Davis intention to file a QW action against several judges including Kiefer. If possible, perhaps we can discuss tomorrow evening, thanks

---------- Forwarded message ---------
From: **Cox, Kevin** <Kevin.Cox@3rdcc.org>
Date: Tue, Nov 15, 2022 at 7:04 PM
Subject: FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan
To: Kevin Cox <kevincox1959@gmail.com>

Hon. Kevin J. Cox

Wayne County Circuit Court

Frank Murphy Hall of Justice, Courtroom 502

1441 St. Antoine, Detroit, MI 48226

(313) 224-2391

**From:** Fresard, Patricia
**Sent:** Tuesday, November 15, 2022 6:44 PM
**To:** Cox, Kevin
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

**From:** Lynch, Richard
**Sent:** Monday, November 14, 2022 2:12 PM
**To:** Kenny, Timothy; Fresard, Patricia; Sullivan, Brian
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

Good afternoon Judges,

Please find attached Judge Swartzle's opinion and order that dismisses the two Court of Claims cases. I am just studying it now and will offer updates as it goes forward.

Best regards,

Rich

---

**From:** James J. Hunter [mailto:James.Hunter@Ceflawyers.com]
**Sent:** Monday, November 14, 2022 1:47 PM
**To:** Lynch, Richard
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

4000 Town Center, 9th Floor
Southfield, MI 48075

**James J. Hunter**
Attorney at Law
Office: (248) 663-7716
Cell: (248) 798-8141
Fax: (248) 663-7717
James.Hunter@cefLawyers.com
www.ceflawyers.com | vCard | Bio

---

**From:** COC Clerks Office <CClerksOffice@courts.mi.gov>
**Sent:** Monday, November 14, 2022 1:39 PM
**To:** davisrobert854@gmail.com; Donald Campbell <Donald.Campbell@ceflawyers.com>; James J. Hunter <James.Hunter@Ceflawyers.com>; Beach, Bryan (AG) <beachb@michigan.gov>; meingasth@michigan.gov; grille@michigan.gov
**Subject:** 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

Good Afternoon,

Attached is a recently issued order issued in the above case.

Best Regards,

Court of Claims

This electronic message and all contents contain information from the law firm of Collins Einhorn Farrell PC which may be privileged, confidential or otherwise protected from disclosure. The information is intended to be for the addressee only. If you are not the addressee, any disclosure, copy, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately and destroy the original message and all copies.

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Kevin Cox <kevincox1959@gmail.com> |
| **Sent:** | Sunday, November 13, 2022 3:19 PM |
| **To:** | Michael Cox |
| **Subject:** | Fwd: Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan |
| **Attachments:** | Philip Cavanagh Application Petition for Quo Warranto against Fresard, Ramsey, Gibson Sullivan.pdf; Judge Swartzle September 2 2022 opinion and order denying Davis motion for declaratory judgment and mandamus re Fresard.pdf; June 2 2022 Unpublished Court of Appeals opinion Davis v Brenda Green and HP Election Commission removing Clyburn from the ballot.PDF; September 14 2022 Order Supreme Court Denying Highland Park City Council application for leave to appeal June 2 2022 judgment opinion of Court of Appeals re Clyburn.pdf; Philip Cavanagh Declaration of Intent Write In candidate incumbent positions Third Circuit Court November 8 2022 general election.pdf |

---------- Forwarded message ---------
From: **Kevin Cox** <kevincox1959@gmail.com>
Date: Sun, Nov 13, 2022 at 3:18 PM
Subject: Fwd: Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan
To: Kiefer Cox <kiefer.cox24@gmail.com>

---------- Forwarded message ---------
From: **Patricia Fresard** <patricia.fresard@gmail.com>
Date: Thu, Nov 10, 2022 at 4:11 PM
Subject: Fwd: Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan
To: <kevincox1959@gmail.com>

---------- Forwarded message ---------
From: **Juan Mateo** <mateoja@aol.com>
Date: Thu, Nov 10, 2022 at 1:26 PM
Subject: Fwd: Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan
To: patricia.fresard@gmail.com <patricia.fresard@gmail.com>, sheilanng58@gmail.com <sheilanng58@gmail.com>, ramseykel@aol.com <ramseykel@aol.com>, geraldevelyn@yahoo.com <geraldevelyn@yahoo.com>

Good afternoon;

See Ms. Meingast's email to myself and Mr. Lynch. In a nutshell, Philip Cavanagh intends to file a quo warranto action against the three of you and the Hon. Brian Sullivan. We are still reviewing the documents and discussing potential strategy going forward.

As far as her idea to consolidate the Swartzle appeal with the Lillard appeal we are inclined to agree.

If you wish to discuss this development please let me know. I intend to respond to Ms. Meingast before the end of the day.

Juan A. Mateo, Esq.
300 River Place Dr., Suite 3000
Detroit, MI 48207
(313) 962-3500
mateoja@aol.com
*This message is intended only for the use of the individuals or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this notice is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distributing or copying of this communication is strictly prohibited. If you have received this notice in error, please notify us immediately by telephone and return these papers to us at the address above via electronic mail or first class mail.*

-----Original Message-----
From: Meingast, Heather (AG) <MeingastH@michigan.gov>
To: Juan Mateo <mateoja@aol.com>; Lynch, Richard <Richard.Lynch@3rdcc.org>
Sent: Thu, Nov 10, 2022 12:50 pm
Subject: FW: Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan

Juan and Richard,
As an FYI, see above. We typically deny QW requests pretty fast, but it does depend on how fast we can get sign off.
Also, on the appeal from Judge Swartzle, we just filed a motion yesterday seeking a 28 day extension for our brief, which is supposed to be due tomorrow but really Monday because of the Holiday. I'm wondering about consolidating with the appeal from Judge Lillard.
Heather

**From:** Drew Paterson <aap43@outlook.com>
**Sent:** Thursday, November 10, 2022 12:12 PM
**To:** Booth, Joshua O. (AG) <BoothJ2@michigan.gov>; Meingast, Heather (AG) <MeingastH@michigan.gov>; Teszlewicz, Barbara (AG) <teszlewiczb@michigan.gov>
**Cc:** Robert Davis <davisrobert854@gmail.com>; Fracassi, Adam (MDOS) <FracassiA@michigan.gov>; Brater, Jonathan (MDOS) <BraterJ@michigan.gov>; Beach, Bryan (AG) <BeachB@michigan.gov>
**Subject:** Philip Cavanagh Application/Petition for Quo Warranto Proceedings Against Third Judicial Circuit Court Incumbent Candidates Judges Fresard, Ramsey, Gibson and Sullivan

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

Mr. Booth, Ms. Meingast, and Ms. Teszlewicz:
Attached is Philip Cavanagh's petition/application for the Michigan Attorney General to institute quo warranto proceedings against Third Judicial Circuit Court incumbent judicial candidates: Judges Patricia Fresard, Kelly Ann Ramsey, Brian R. Sullivan, and Shelia Ann Gibson. Also attached are exhibits referenced in Mr. Cavanagh's petition/application.

**Can you please advise as to how soon it will take your office to issue the denial letter so that we can proceed expeditiously**? I will await your response and **please confirm receipt of this email and its attachments with a reply email.**

Drew Paterson

(248) 568-9712

aap43@outlook.com

ANDREW A. PATERSON, Esq.
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712

**November 10, 2022**

Honorable Michigan Attorney General Dana Nessel
P.O. Box 30212
Lansing, MI 48909
Sent via email (Boothj2@michigan.gov; meingasth@michigan.gov; teszlewiczb@michigan.gov)

Re: Application/Petition To Institute Quo Warranto Proceedings Against Third Circuit Court Incumbent Judicial Candidates Patricia Susan Fresard, Kelly Ann Ramsey, Sheila Ann Gibson, and Brian R. Sullivan.

Dear Attorney General Nessel:

Pursuant to Michigan Court Rule ("MCR") 3.306(B)(3), on behalf of my client, Philip Cavanagh ("Mr. Cavanagh"), who was a certified write-in candidate for the 15 incumbent positions for Third Circuit Court in the November 8, 2022 general election, I am submitting this written application/petition respectfully requesting for you, in your official capacity as Michigan Attorney General, to institute *quo warranto* proceedings in a court of competent jurisdiction against Third Circuit Court Judges Patricia Fresard, Kelly Ann Ramsey, Sheila Ann Gibson, and Brian R. Sullivan in accordance with MCR 3.306(B)(1)(b).

According to unofficial results from the Wayne County Clerk, incumbent Third Judicial Circuit Court candidates Judges Patricia Susan Fresard, Kelly Ann Ramsey, Brian R. Sullivan, and Sheila Ann Gibson were re-elected to a six-year terms in the November 8, 2022 general election. As of the date of this written communication/petition, the results from the November 8, 2022 general election are presently being canvassed and reviewed by the Wayne County Board of Canvassers who will then forward their results to the State Board of Canvassers who then have the statutory legal duty to certify votes cast for "**properly**" certified candidates for circuit court. See MCL §§ 168.417 and 168.841.

However, for the reasons stated below, incumbent Third Circuit Court candidates Judges Patricia Susan Fresard, Kelly Ann Ramsey, Shelia Ann Gibson, and Brian R. Sullivan were "**improperly**" certified by the Michigan Secretary of State to appear on the November 8, 2022 general election ballot as candidates for Third Circuit Court because their affidavits of identity were facially defective in violation of MCL 168.558(2) and thus, their subsequent elections shall be declared **VOID**. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of

the Court of Appeals, issued June 2, 2022 (Docket No. 361544), *lv denied* ___Mich. ____ (2022) (issued September 14, 2022, Supreme Court Docket No. 164564); see also *Davis v Benson*, unpublished opinion and order of Court of Claims, issued September 2, 2022 (Docket No. 22-000125-MM) (Judge Swartzle), pp 7-8; *Davis v Chatman*, 292 Mich.App. 603; 808 NW2d 555 (2011).

## LAW AND LEGAL ANALYSIS

It is undisputed that incumbent Third Circuit Court Judges Patricia Susan Fresard, Kelly Ann Ramsey, Sheila Ann Gibson, and Brian R. Sullivan each filed "facially defective affidavits of identity to qualify for the November 8, 2022 general election in violation of MCL 168.558(2), as amended. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), *lv denied* ___Mich. ____ (2022) (issued September 14, 2022, Supreme Court Docket No. 164564); see also *Davis v Benson*, unpublished opinion and order of Court of Claims, issued September 2, 2022 (Docket No. 22-000125-MM) (Judge Swartzle), pp 7-8.

Specifically, each of their affidavits of identity failed to contain the statement: "No Party Affiliation" as required under MCL 168.558(2), as

amended. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), *lv denied* ___Mich. ____ (2022) (issued September 14, 2022, Supreme Court Docket No. 164564); see also *Davis v Benson*, unpublished opinion and order of Court of Claims, issued September 2, 2022 (Docket No. 22-000125-MM) (Judge Swartzle), pp 7-8.

It is important to note that there has already been a judicial determination that incumbent judicial candidates Patricia Fresard, Kelly Ann Ramsey, and Sheila Ann Gibson were "**improperly**" certified by the Secretary of State to appear on the November 8, 2022 general election as candidates for the Third Circuit Court. *Davis v Benson*, unpublished opinion and order of Court of Claims, issued September 2, 2022 (Docket No. 22-000125-MM) (Judge Swartzle), pp 7-8. Thus, it is clear from the undisputed facts and case law that incumbent judicial candidates Patricia Fresard, Kelly Ann Ramsey, Sheila Ann Gibson, and Brian R. Sullivan should **NOT** have been certified to appear on the November 8, 2022 general election as judicial candidates for Third Circuit Court and thus their subsequent elections shall be declared **VOID**. *Id.*; see also *Davis v Highland Park City Clerk*, unpublished per

curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), *lv denied* ___Mich. ____ (2022) (issued September 14, 2022, Supreme Court Docket No. 164564); *Davis v Chatman*, 292 Mich.App. 603; 808 NW2d 555 (2011).

As a "**properly**" certified write-in candidate for the November 8, 2022 general election, who received lawfully cast votes for one of the 15 incumbent positions for Third Circuit Court, Mr. Cavanagh believes he has a legal right to one of the seats that will be unlawfully occupied and/or usurped come January 1, 2023 by the "**improperly**" certified incumbent judicial candidates for Third Circuit Court named above. *Davis v Chatman*, 292 Mich.App. 603; 808 NW2d 555 (2011).

In accordance with MCR 3.306(3)(a), on behalf of my client, Mr. Cavanagh, I hereby offer to provide you and/or your office with a bond and/or any and all other security you may deem necessary to indemnify the state against all costs and expenses of the action. Although I am submitting this written communication requesting that you bring forth a *quo warranto* action in the appropriate court of competent jurisdiction on this matter, the Michigan Court Rules permits me or any other legal

representative of Mr. Cavanagh the opportunity to bring forth an action on our own, on behalf of Mr. Cavanagh, upon your refusal.

Accordingly, I hereby state, on behalf of Mr. Cavanagh, that he prefers to bring this action himself considering the more serious cases your office is inundated with. Mr. Cavanagh believes he and/or his legal representatives can provide this case with the attention it needs. Therefore, **I respectfully request that you provide a written denial as quickly as possible** so that Mr. Cavanagh can petition the appropriate court expeditiously pursuant to MCR 3.306(3)(b).

Dated: November 10, 2022 Respectfully submitted,

/s/ANDREW A. PATERSON
**ANDREW A. PATERSON (P18690)**
Attorney for Philip Cavanagh
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

cc: Philip Cavanagh

# STATE OF MICHIGAN

# COURT OF CLAIMS

ROBERT DAVIS,

Plaintiff,

v

JOCELYN BENSON, in her official capacity as the duly elected Secretary of State,

Defendant.
______________________________/

**OPINION AND ORDER**

Case No. 22-000125-MM

Hon. Brock A. Swartzle

MARK T. SLAVENS, Judge of the Third Judicial Circuit of Michigan,

Plaintiff,

v

JOCELYN BENSON, in her official capacity as Secretary of State,

Defendant.
______________________________/

Case No. 22-000141-MZ

Hon. Brock A. Swartzle

PATRICIA SUSAN FRESARD, SHEILA ANN GIBSON, and KELLY ANN RAMSEY,

Plaintiffs,

v

JOCELYN BENSON, in her official capacity as Secretary of State,

Defendant.
______________________________/

Case No. 22-000143-MZ

Hon. Brock A. Swartzle

These matters relate to Robert Davis's requests for a writ of mandamus and declaratory relief against defendant, Jocelyn Benson, in her official capacity as Secretary of State. Davis seeks to have Mark T. Slavens, Lakena Tennille Crespo, Sheila Ann Gibson, Patricia Susan Fresard, and Kelly Ann Ramsey decertified as candidates for judge of the Third Circuit Court in Wayne County.

Given that this is a time-sensitive matter, this Court issued an order on August 24, 2022, in Docket No. 22-000125-MM requiring defendant to show cause why the Court should not issue a writ of mandamus in Davis's favor. This Court invited the judicial candidates to move to participate as amici curiae. In response, defendant moves for summary disposition, arguing that Davis's claims are barred by laches and fail as a matter of law. The judicial candidates submitted helpful briefs, for which the Court is thankful. The show-cause briefing is complete, and the matter is now ripe for resolution.

In Docket No. 22-000141-MZ, Slavens sues for declaratory and injunctive relief arising out of the same set of facts as Docket No. 22-000125-MM. The Court recently consolidated the two matters. Finally, in Docket No. 22-000143-MZ, Fresard, Gibson, and Ramsey request declaratory and injunctive relief on the same set of factual and legal issues. Their motions to consolidate and for immediate consideration are GRANTED, and the matter is CONSOLIDATED with Docket Nos. 22-000125-MM and 22-000141-MZ.

The Court resolves these matters without a hearing. For the reasons discussed and among other matters resolved, Davis's requests for mandamus and declaratory relief are denied, and defendant's motion for summary disposition is granted.

I. FACTUAL BACKGROUND

Slavens, Fresard, Gibson, and Ramsey are incumbent judicial candidates for the Third Circuit Court in Wayne County. Crespo is a nonincumbent Third Circuit judicial candidate. As candidates for judicial office, Slavens, Crespo, Gibson, Fresard, and Ramsey were required to submit affidavits of identity (AOIs) with the Bureau of Elections, in accordance with MCL 168.558. They each filed an AOI, but Davis argues that the AOIs were fatally defective. The thrust of Davis's claim is that each judicial candidate was required to state that they had "no party affiliation" on their form AOIs. He asserts that each candidate failed to comply with this statutory requirement.

The form AOI contains a blank space for the candidate to fill out, and instructs the candidate as follows: "If running without party affiliation list 'No Party Affiliation.' " For candidates Fresard, Ramsey, Gibson, and Slavens, Davis alleges that they failed to comply with the statutory requirement because they left blank the designated space on the form. Crespo placed the acronym "N/A" in the designated space, which Davis alleges was a deficient statement of "no party affiliation." Fresard, Ramsey, Gibson, and Crespo signed and submitted their AOIs in early 2022. Slavens signed and submitted his AOI on December 14, 2021. Defendant concluded the AOIs met the statutory requirements and accepted the submitted AOIs.

II. LEGAL BACKGROUND

A writ of mandamus is the appropriate remedy for a party seeking to compel action by election officials. See, e.g., *Wolverine Golf Club v Hare*, 24 Mich App 711, 716; 180 NW2d 820 (1970), aff'd 384 Mich 461 (1971).

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific

> duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [*Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (cleaned up).]

As for the requests for declaratory relief, MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

As this Court recently concluded in *Belcoure v Benson*, unpublished order of the Court of Claims, issued August 19, 2022 (Docket No. 22-000117-MB), pp 1-2, while the form affidavit prepared by the Secretary of State might be an efficient way to complete the affidavit, it is the statute that controls. Looking to the statute, MCL 168.558(2) requires that a candidate for elected office submit a timely AOI that includes, among other things, "the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation." While one who reads this clause in isolation might wonder whether it even applies to candidates for judicial office, given that the office is a nonpartisan one, there appears to be little question that the clause does, in fact, apply to judicial candidates because, in the same subsection, the statute refers explicitly to candidates for judicial office. See MCL 168.558(2) ("If the affidavit of identity is for a judicial candidate, the candidate shall include on the affidavit of identity whether the office sought is an incumbent position, a nonincumbent position, or a new judgeship.").

In *Belcoure*, this Court concluded that if our Legislature had intended to exempt judicial candidates from having to make a statement indicating "no party affiliation" on the AOI, then it would have made this clear by, for example, having a separate subsection devoted solely to judicial

candidates. *Belcoure*, unpub order at 2. But, by including in the same subsection a list of general affidavit requirements for all candidates, followed by specific additional requirements for judicial candidates, all the general requirements in the subsection apply to all candidates, judicial and nonjudicial alike. *Id*.

For this reason, this Court concluded that the judicial candidate must make an affirmative statement; mere silence is not sufficient. *Id*. This Court's decision was also consistent with the Court of Appeals' recent holding in *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), pp 3-4, and the Court of Claims' decision in *Reed-Pratt v Benson*, unpublished opinion of the Court of Claims, issued June 1, 2022 (Docket No. 22-000060-MZ), pp 4-6 (their reasoning herein incorporated), which reached the same conclusion on the party-affiliation requirement in MCL 168.558(2).

III. APPLICATION

*Crespo*. With this framework in mind, the Court turns first to Crespo. The Court concludes that Crespo's statement of "N/A" satisfied MCL 168.558(2). The statute does not mandate any specific language when affirming that the candidate lacks a political-party affiliation. Crespo's statement of "N/A" (i.e., "not applicable") was an affirmative statement indicating that she had no party affiliation. The Court, therefore, concludes that Crespo complied with MCL 168.558(2).

*Slavens*. Turning next to Slavens, the Court concludes that the requirement that a judicial candidate provide a statement of "no party affiliation" did not apply to him because he submitted his AOI before the statutory amendment requiring political-party disclosure took effect. At the time Slavens submitted his AOI, on December 14, 2021, MCL 168.558(2), as amended by 2018 PA 650, provided:

> An affidavit of identity must contain the candidate's name and residential address; a statement that the candidate is a citizen of the United States; the title of the office sought; a statement that the candidate meets the constitutional and statutory qualifications for the office sought; other information that may be required to satisfy the officer as to the identity of the candidate; and the manner in which the candidate wishes to have his or her name appear on the ballot. If a candidate is using a name that is not a name that he or she was given at birth, the candidate shall include on the affidavit of identity the candidate's full former name.

See also *Nykoriak v Napoleon*, 334 Mich App 370, 375; 964 NW2d 895 (2020) (interpreting the prior version of MCL 168.558(2)). The statute did not contain the language requiring that the candidate provide a statement of "no party affiliation." The Legislature amended the statute, effective December 27, 2021, to include the following relevant language:

> An affidavit of identity must contain the candidate's name and residential address; a statement that the candidate is a citizen of the United States; the title of the office sought including the jurisdiction, district, circuit, or ward; *the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation*; the term of office; the date of the election in which the candidate wishes to appear on the ballot; a statement that the candidate meets the constitutional and statutory qualifications for the office sought; other information that may be required to satisfy the officer as to the identity of the candidate; and the manner in which the candidate wishes to have his or her name appear on the ballot. [MCL 168.558(2), as amended by 2021 PA 158 (emphasis added).]

Defendant explains that before December 27, 2021, defendant required political-office candidates to disclose their political-party affiliation (or no political-party affiliation) under MCL 168.31(1)(e) (providing that the Secretary of State shall "[p]rescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations"). But defendant did not require judicial candidates to disclose any political-party information because, by law, judicial candidates have no party affiliation. The Court, therefore, concludes that Slavens complied with MCL 168.558(2), as amended by 2018 PA 650, when he submitted his AOI on December 14, 2021, i.e., prior to the effective date of the amendment that added the statutory requirement.

Davis also claims that Slavens failed to submit two copies of his AOI. At all relevant times, MCL 168.558(1) required Slavens to submit two copies of his AOI. Slavens has attached to his amicus curiae brief a contemporaneous e-mail to a Bureau of Elections official referring to the fact that he submitted two copies of his AOI. Plaintiff has not countered this evidence, and has not provided the factual basis for his claim that Slavens provided the Bureau of Elections with one copy of the AOI. Instead, he appears to rely on the fact that defendant's office only provided him with one copy of Slavens's AOI in response to his request for records. But the fact that defendant provided plaintiff with only one copy of Slavens's AOI does not establish (or even suggest) that Slavens filed only one copy. In contrast, Slavens's contemporaneous e-mail states that he submitted two copies. This Court, therefore, declines to grant any relief to Davis on this claim.

*Fresard, Ramsey, and Gibson*. Finally, as for Fresard, Ramsey, and Gibson, these candidates argue that their silence on their AOIs served as an adequate statement of "no party affiliation" under MCL 168.558(2). This Court recently addressed the same issue in *Belcoure.* In that case, another Third Circuit judicial candidate (Rooney Haywood) also left the party-affiliation section on his AOI blank. The Court concluded that Haywood's silent blank did *not* serve as an adequate statement of no party affiliation under MCL 168.558(2). *Id*. at 2. As this Court explained, while silence in some circumstances might serve as an adequate affirmative statement, see, e.g., *People v Alexander*, 188 Mich App 96, 103; 469 NW2d 10 (1991), our Legislature explicitly required an either/or—the affidavit must contain "the candidate's political party *or* a statement indicating no party affiliation if the candidate is running without political party affiliation." MCL 168.558(2) (emphasis added). See also *Belcoure*, unpub order at 2. The lack of a statement is not the practical equivalent of an affirmative statement in this context because a silent blank leaves unanswered the question—is there a political affiliation or not?

Likewise, Fresard, Ramsey, and Gibson filed defective AOIs because they left blank the statement of party affiliation, and the newly amended statute was effective when they filed their AOIs (as opposed to Slavens). As their affidavits were defective, defendant should not have certified the candidates for the upcoming election. But, defendant did certify them, and this Court must determine whether, as a result, Davis is entitled to relief.

In his complaint, Davis seeks the equitable remedy of a writ of mandamus. When a party seeks equitable relief, "[t]he equitable doctrine of laches shall also apply." MCL 600.5815. In defendant's motion and in response to this Court's show-cause order, defendant raises the defense of laches. "If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches." *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013). The doctrine is particularly applicable in election matters. See, e.g., *New Democratic Coalition v Austin*, 41 Mich App 343, 356-357; 200 NW2d 749 (1972); *Purcell v Gonzalez*, 549 US 1, 5-6; 127 US 5; 166 L Ed 2d 1 (2006) (per curiam); *Crookston v Johnson*, 841 F3d 396, 398 (CA 6, 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so."); see also MCL 691.1031 (in actions filed in circuit court, creating a "rebuttable presumption of laches" if an action affecting an election is brought within 28 days of that election).

Where this case materially differs from *Belcoure* is in the application of the doctrine of laches. In *Belcoure*, the plaintiff presented undisputed evidence that he challenged Haywood's candidacy several months earlier than Davis did in this matter. See *Belcoure*, unpublished order at 1. Specifically, in early June 2022, Belcoure's attorney contacted defendant about the

deficiencies in Haywood's AOI. *Id*. at 3. Defendant had been put on timely notice by the plaintiff in that case, so there was not a viable laches defense in *Belcoure*.

This case is different from *Belcoure* precisely because Davis did not act with similar diligence as the plaintiff in that other case. Each candidate here submitted their AOI in late 2021 or early 2022. The last incumbent AOI (Fresard's AOI) was submitted on March 17, 2022. And Crespo (a nonincumbent) submitted her AOI on April 19, 2022. But Davis waited to seek relief in this Court until mid-August 2022—about four months after the last AOI was submitted. Davis did not contact defendant in advance, like Belcoure's attorney did. Davis points out that he filed an earlier action in the Third Circuit Court in late July 2022, but this was still months after the candidates filed their AOIs. Davis offers no explanation for his delay, leading this Court to the conclusion that Davis simply sat on his hands for months.

The Court further concludes that allowing the matter to proceed despite Davis's dilatory conduct would result in undue prejudice to defendant and staff, who would have to expend significant additional time and resources overseeing the revision of new ballots in one of Michigan's most populous counties. More specifically, the Secretary of State must inform the counties of which candidates will appear on the ballot by September 9, 2022, and must print absentee ballots by September 24, 2022. A ruling in Davis's favor would require the Secretary of State's office to alter its election planning at the eleventh hour or, frankly, given the realities of how long any reasonable appellate review would take, at the thirteenth hour. The Court similarly recognizes the prejudice to the candidates, who have expended significant time, energy, and resources on their campaigns. Lastly, the Court observes that the failure to state affirmatively that a judicial candidate is running without a partisan designation has little practical import to electors,

as a judicial candidate cannot—by operation of law—run as a partisan. All of these considerations weigh against any equitable relief for plaintiff.

Although this Court cannot, and will not, ignore the Legislature's clear directive in MCL 168.558(2), as evidenced by its earlier decision in *Belcoure*, the relief requested by Davis is an extraordinary one, and to be entitled to such relief, Davis needed to act with much more diligence than he did here. The Court will exercise its equitable authority and, under the doctrine of laches, it will decline to order a writ of mandamus or other similar relief to Davis.

Accordingly, the Court concludes that Davis's challenge to Fresard's, Gibson's, and Ramsey's AOIs is barred by the equitable doctrine of laches. Davis's challenges to Crespo's and Slavens's AOIs fail on their merits.

## IV. CONCLUSION

Accordingly, the Court orders as follows:

IT IS ORDERED that Fresard, Ramsey, and Gibson's motion to consolidate is GRANTED. Docket No. 22-000143-MZ is CONSOLIDATED with Docket Nos. 22-000141-MZ and 22-000125-MM. Fresard, Ramsey, and Gibson's motion for immediate consideration of their motion to consolidate is also GRANTED.

IT IS FURTHER ORDERED that Slavens's motion to participate as an amicus curiae in Docket No. 22-000125-MM is GRANTED, and his proposed amicus curiae brief is accepted as-filed.

IT IS FURTHER ORDERED that Fresard, Ramsey, and Gibson's motion to participate as amici curiae in Docket No. 22-000125-MM is GRANTED, and their proposed brief is accepted as-filed.

IT IS FURTHER ORDERED that Davis's requests for mandamus and declaratory relief in Docket No. 22-000125-MM are DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary disposition in Docket No. 22-000125-MM is GRANTED.

IT IS FURTHER ORDERED that Slavens's request for declaratory and injunctive relief in Docket No. 22-000141-MZ is GRANTED.

IT IS FURTHER ORDERED that Fresard's, Ramsey's, and Gibson's request for declaratory and injunctive relief in Docket No. 22-000143-MZ is GRANTED IN PART and DENIED IN PART. The relief is granted to the extent consistent with this opinion and order, i.e., that Davis has not met the high bar for mandamus or other relief against defendant Secretary of State, specifically in light of the application of laches; their requested relief is otherwise denied.

IT IS FURTHER ORDERED that the motion entitled "8/31/22 Non-party Third Judicial Circuit Court of Michigan's Motion to Intervene" is DENIED.

IT IS SO ORDERED. This is the final order and closes each of the three consolidated cases.

Date: September 2, 2022

Hon. Brock A. Swartzle
Judge, Court of Claims

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

---

**STATE OF MICHIGAN**

**COURT OF APPEALS**

---

ROBERT DAVIS,

Plaintiff-Appellant,

UNPUBLISHED
June 2, 2022

v

No. 361544
Wayne Circuit Court
LC No. 22-005386-AW

HIGHLAND PARK CITY CLERK and HIGHLAND PARK ELECTION COMMISSION,

Defendants-Appellees,

and

HIGHLAND PARK CITY COUNCIL,

Intervening Defendant-Appellee.

---

Before: MURRAY, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

This appeal involves plaintiff's challenge to the eligibility of Carlton Clyburn Jr. to be on the August 2022 primary ballot for Highland Park Mayor.[1] The circuit court's May 23rd, 2022 final order denied a writ of mandamus with respect to Clyburn's candidacy. Plaintiff, Robert

---

[1]The trial court also addressed the candidacy of Rodney Patrick, who was seeking an at-large position on city council. The court granted a writ of mandamus to defendants clerk and commission to not place Patrick on the November 2022 general election ballot because Patrick was not up-to-date on election related fines, contrary to what was represented in his affidavit. A cross-appeal was filed by intervenor Highland Park City Council on June 1, 2022, but that appeal was separated from this one and assigned Docket No. 361622. *Davis v Highland Park City Clerk*, unpublished order of the Court of Appeals, entered June 1, 2022 (Docket No. 361544).

Davis, appeals as of right.[2] For the reasons outlined below, we reverse the circuit court's order denying mandamus relief as to Clyburn, and remand for entry of an order granting that relief.[3]

## I. BACKGROUND

The background to this case is fairly straightforward. Clyburn is a Highland Park mayoral candidate for the upcoming August primary election. Through this lawsuit, plaintiff argued that Clyburn was disqualified from being placed on the ballot because he did not state on his Affidavit of Identity (AOI) that his "party affiliation" was "non-partisan." The record below is undisputed that Clyburn left blank the space on the AOI for designating party affiliation. It is also undisputed that Clyburn was seeking election to a non-partisan office.

The trial court ultimately denied mandamus as to Clyburn, concluding that Clyburn's AOI was not in violation of the governing statute.

## II. ANALYSIS

In *Barrow v Wayne County Election Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2022), slip op at 6, we set forth the standards of review applicable to a decision granting or denying a writ of mandamus:

> When reviewing a trial court's decision whether to issue a writ of mandamus, we review de novo the trial court's determination of the existence and extent of a duty. *Bay City v Bay Co Treasurer*, 292 Mich App 156, 164; 807 NW2d 892 (2011). But we review a trial court's ultimate decision for an abuse of discretion. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). An abuse of discretion occurs when the result is outside the range of reasonable and principled outcomes. *Bay City*, 292 Mich App at 164. Any underlying issue of statutory interpretation is a question of law subject to de novo review. *Id*. Likewise, we review de novo a trial court's decision on a motion concerning a request for declaratory judgment. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017) (citation omitted).

"To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result." *Berry*, 316 Mich App at 41 (quotation marks and citations omitted).

---

[2] We previously granted plaintiff's motion to expedite the appeal. *Davis v Highland Park City Clerk*, unpublished order of the Court of Appeals, entered May 26, 2022 (Docket No. 361544).

[3] Intervenor filed a cross-appeal regarding Patrick, which has since been assigned its own docket number and will proceed separately from this appeal, as explained in n. 1 of this opinion. Because the trial court *granted* the relief requested by plaintiff regarding Patrick, we have no reason to address here that aspect of the trial court's order.

In *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), this Court discussed the principles governing statutory interpretation, observing as follows:

> This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.
>
> Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

Plaintiff argues that the Highland Park City Clerk and Highland Park Election Commission have a clear legal duty to exclude Clyburn from the primary election ballot because his AOI failed to comply with the mandates of applicable election law. "To be included on the primary election ballot of any political party in this state, a candidate must 'have filed nominating petitions according to the provisions of' the Michigan Election Law, MCL 168.1 *et seq*., and complied with 'all other requirements' of the law. MCL 168.550. The filing of certain documents—including AOIs—is governed by MCL 168.558." *Reed-Pratt v Detroit City Clerk*, ___ Mich App ___, ___; ___ NW2d ___ (2021), slip op at 3, quoting *Nykoriak v Napoleon*, 334 Mich App 370, 376-377; 964 NW2d 895 (2020).

At issue is MCL 168.558(2), which provides in part:

> *An affidavit of identity must contain* the candidate's name and residential address; a statement that the candidate is a citizen of the United States; the title of the office sought including the jurisdiction, district, circuit, or ward; *the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation;* the term of office; the date of the election in which the candidate wishes to appear on the ballot; a statement that the candidate meets the constitutional and statutory qualifications for the office sought; other information that may be required to satisfy the officer as to the identity of the candidate; and the manner in which the candidate wishes to have his or her name appear on the ballot. [Emphasis added.]

The emphasized portion of the statute is what plaintiff argues was violated by Clyburn. Specifically, plaintiff argues that on his AOI, Clyburn failed to state that he had no party affiliation, which he was required to do since he was running for a non-partisan position.

The statutory requirement that the candidate running for a non-partisan office affirmatively state in the AOI that he has no party affiliation is mandatory, as the Legislature has said it "must"

be done. *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009) (use of the term "must" "indicates that something is mandatory."). Clyburn did not comply with that provision, and thus he is not eligible to be placed on the ballot. "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." *Stumbo v Roe*, 332 Mich App 479, 480; 957 NW2d 830 (2020); accord *Nykoriak*, 334 Mich App at 377.

Contrary to intervenor's argument, silence in the face of a statutory command to state something affirmatively does not suffice. *Moore v Genesee Co*, ___ Mich App ___, ___; ___ NW2d ___ (2021), slip op at 3 (explaining that, because MCL 168.558(2) requires an AOI to include a statement that the candidate is a citizen of the United States and meets constitutional and statutory qualifications for the office sought, the failure to include such a statement, even if it may be done by simply checking a box on the AOI, is a "critical error" that renders an AOI "facially invalid."). Just like the statutory requirements at issue in *Moore*, the statutory requirement at issue in this case cannot be deemed a trivial matter because it has been mandated by the Legislature. *Id*. The simple fact is Clyburn failed to adhere to the statutory requirement that he affirmatively state that he was seeking a nonpartisan office.

As a result, the trial court abused its discretion in not granting a writ of mandamus and ordering defendants City Clerk and Commission to not place Clyburn on the ballot for the August 2022 primary election for Mayor of Highland Park.

We reverse the trial court's order to the extent it denied mandamus relief as to Clyburn, and remand for entry of an order instructing the Highland Park City Clerk and Highland Park Election Commission to not place Clyburn on the ballot for the August 2022 primary election for Mayor of Highland Park. We do not retain jurisdiction. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2).

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

September 14, 2022

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

164564 & (46)(47)(49)(50)(51)
(53)(56)

ROBERT DAVIS,
Plaintiff-Appellee,

v

SC: 164564
COA: 361544
Wayne CC: 22-005386-AW

HIGHLAND PARK CITY CLERK and
HIGHLAND PARK ELECTION COMMISSION,
Defendants-Appellees,

and

HIGHLAND PARK CITY COUNCIL,
Intervening Defendant-Appellant.

_________________________________________/

On order of the Court, the motions for immediate consideration and to file briefs amicus curiae are GRANTED. The application for leave to appeal the June 2, 2022 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court. The motion to dismiss application and the motion to strike are DENIED.

VIVIANO, J. (*concurring*).

I agree with the denial order in this case because appellant Highland Park City Council lacks standing to appeal. I write, however, because the underlying legal issue has caused great confusion and resulted in numerous candidates being kept off the ballot. Statutory requirements for appearing on ballots must be followed, but those requirements should be clear and easy to understand. As shown by this case, the confusion caused by the recent amendment of MCL 168.558(2) threatened the democratic process by nearly depriving the city of Highland Park's legislative body of sufficient membership to govern. I strongly encourage the Legislature to correct this problem before the next election cycle.

Plaintiff Robert Davis brought the present case to challenge the eligibility of Carlton Clyburn, Jr., to be on the August 2022 primary ballot for Highland Park mayor. Like other local offices in Highland Park, the mayoral office is officially designated as nonpartisan. In seeking the office, Clyburn was required by MCL 168.558(2) to file an affidavit of identity (AOI). The AOI was required to contain, among other things, "the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation[.]" The party-affiliation requirement was put in place in 2021. See 2021 PA 158.[1] The AOI form provided by the Secretary of State's office, however, predated this amendment and has not been updated. In the relevant space, the form asked for the following information: "political party, if a partisan office. if running without party affiliation list 'No Party Affiliation.' " Clyburn, like many other candidates running for nonpartisan office—including numerous judicial candidates—left this space blank, apparently in the belief that it was inapplicable to him because he did not have the option of running with party affiliation for the office of mayor.

Davis sought mandamus relief against the Highland Park City Clerk and the Highland Park Election Commission to keep Clyburn off the ballot, claiming that his AOI was defective under MCL 168.558(2) because it did not contain any statement that Clyburn was running without party affiliation. The Highland Park City Council (the City Council) was allowed to intervene as a defendant over plaintiff's objection. The trial court disagreed with plaintiff on the merits and denied mandamus, but the Court of Appeals reversed in an unpublished opinion. *Davis v Highland Park City Clerk*, unpublished opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544). The Court of Appeals concluded that MCL 168.558(2) applied to candidates running for nonpartisan offices. Clyburn failed to comply with this provision because his silence on the form—i.e., his failure to state that he was running with no party affiliation—did not satisfy the statutory requirement that he "state something affirmatively . . . ." *Id*. at 4.

After the decision keeping him off the ballot, Clyburn attempted, for the first time, to intervene in this case—he had not been a party to the proceedings in either of the lower courts—and sought leave to appeal here. We denied this 11th-hour effort to intervene, as it came at a point when it seemed impossible to grant him the relief he sought, i.e., placement on the primary ballot, which the Secretary of State needed to certify by June 3. See MCL 168.552(14). We dismissed the application for leave to appeal, as no party to the case had, at that point, sought leave to appeal. About three weeks later, well after the date on which the Secretary of State was required to certify candidates for the August ballot, see MCL 168.552(14), the City Council filed the present application for leave to appeal, challenging the Court of Appeals' decision. In its application, the City Council notes that local officials kept numerous other candidates for the city's nonpartisan offices

[1] 2021 PA 158 also added a number of other requirements regarding what an AOI must contain, but only the party-affiliation requirement is relevant for purposes of this appeal.

(not parties to this case) from the ballot because those candidates—10 of the 14 candidates, in fact—had, like Clyburn, failed to write on the AOI that they were running without party affiliation.

I believe a denial of leave is appropriate in this case because the City Council lacks appellate standing. A party can appeal if it is aggrieved from a decision by a lower court; that is, it "must have suffered a concrete and particularized injury" based on the decision below. *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291 (2006). "A party who could not benefit from a change in the judgment has no appealable interest." *Id*. at 291 n 2 (quotation marks and citations omitted).

It is true, as Justice WELCH notes in dissent, that the City Council was allowed to intervene in this action below and took a position contrary to the conclusion reached by the Court of Appeals. But these facts do not supply an injury suffered by the City Council, and a judgment in this case reversing the Court of Appeals would not supply a benefit to the City Council. Because Clyburn is the only candidate plaintiff has challenged in this appeal, a decision from this Court could not now order the other candidates to be placed on the ballot. Those candidates are not parties here, nor do they appear to be in privity with the City Council—and it is not even clear whether they still desire to stand for office in the election. Cf. *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co,* ___ Mich ___, ___ (2022) (Docket Nos. 161628 and 161650); slip op at 6-12 (explaining the limited circumstances in which a nonparty can be bound by a judgment under the principles of res judicata or collateral estoppel). For that reason, no decision in this case would prevent there being vacancies on the City Council resulting from local officials' removal of candidates for the council. And even so, the Highland Park City Charter provides the council with the power to fill vacancies, including (in some circumstances) by calling a special election. Highland Park Charter, § 4-13. Even with reduced numbers after the upcoming election, it appears the City Council will have a quorum to conduct business. *Id*. at § 5-3. Thus, I cannot see how the Court of Appeals' decision to keep Clyburn off the ballot has caused a sufficient injury to the City Council to provide it standing to appeal.

But while the City Council lacks standing to pursue this relief, it has raised a significant issue that deserves prompt attention. As Justice WELCH explains in her dissenting statement, numerous candidates for judicial office—which is nonpartisan—had their AOIs challenged, and at least one has been kept off the ballot as a result. The confusion did not start with these candidates—in fact, it appears the source of the confusion preceded the enactment of the relevant statutory language in 2021. Before the language was passed, the Bureau of Elections in August 2021 proposed a rule for AOIs that suggested that it needed this information—but only for partisan candidates. The proposed rule that would have required the candidate to provide the following:

> (e) If the candidate seeks nomination or election to a partisan office, he or she must include the following:
>
> (i) The name of the political party with which the candidate is affiliated.
>
> (ii) If seeking nomination or election to a partisan office without being affiliated with a political party, the candidate must indicate "no party affiliation" using these or similar words or phrases. [Mich Admin Code, Proposed R 168.3(1).]

As is plain from the text, the rule would have applied only to partisan offices, not the nonpartisan offices like Clyburn and others were seeking.

After the amendment of MCL 168.558(2) was passed in late 2021, the Bureau of Elections decided to drop its proposed rule because it would have been "redundant" given the new statutory language. Further, as noted in a letter to the Secretary of State from an administrative director in March 2022, officials involved in the rulemaking process concluded that the language in the statute was "similar" to that in the proposed rule and that "the statute accomplishes the same purpose as the original proposed language." Thus, the proposed rule was scotched. Notably, the Secretary of State's office did not update its AOI form after the amendment.

Turning to the text of MCL 168.558(2) and other relevant statutes, there was good reason for the Bureau of Elections' apparent belief that the new language applied only to candidates for partisan office. On one hand, the Court of Appeals was correct that the literal scope of the key phrase—"the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation"—is broad enough to cover candidates for nonpartisan offices. Such candidates do run without being affiliated with a political party. On the other hand, the broader statutory framework suggests that the Legislature used the phrase "without political party affiliation" to refer only to candidates running for partisan office or for this Court. In order to be placed on the ballot, such candidates must file a "qualifying petition," which is defined as "a nominating petition required of and filed by a person to qualify to appear on an election ballot as a candidate for office without political party affiliation." MCL 168.590(1). Critically, only candidates for partisan office or for this Court may file a qualifying petition. See MCL 168.590(2) ("A person may file a qualifying petition for a partisan office or office of justice of the supreme court. A filing fee shall not be tendered instead of a qualifying petition."). Thus, to appear on the ballot as "a candidate for office without political party affiliation," a candidate must file a qualifying petition, but the candidate can file that petition only for partisan offices and for the office of justice on this Court. It seems to follow that a candidate for a nonpartisan office *cannot* take the steps

necessary to file as "a candidate for office without political party affiliation."[2]  Instead of a qualifying petition, the Legislature has provided for a different nominating petition and a different primary for nonpartisan offices.  MCL 168.544a.

In this manner, the Legislature appears to have distinguished between candidates for nonpartisan office and candidates for partisan office (or this Court) who are running without political party affiliation.  The manner in which candidates gain access to the ballot differs for these two groups.  Why, then, would MCL 168.558(2) nevertheless be read to require a candidate to list himself or herself as running "without political party affiliation"?  Such a requirement could only cause confusion, as it would indicate to the officer receiving the affidavit—which is filed with the qualifying petition, see MCL 168.558(1)—that the candidate was seeking access to the ballot by filing a qualifying petition, which candidates for nonpartisan office cannot do.  Moreover, the affidavit is part of the process for appearing on a ballot.  But on the ballot, "the names of the several nonpartisan offices to be voted for shall be placed on a separate portion of the ballot containing no party designation . . . ."  MCL 168.699.  In other words, simply by filing for a nonpartisan office, a candidate is placed on the nonpartisan portion of the ballot where—given the nature of the type of office being sought—no partisan designation is even possible.  Because the placement of a nonpartisan office is on an entirely separate section of the ballot where no party designation may appear, it makes little sense to require a candidate to designate on the affidavit that he or she is running without party designation.  Such a separate designation does, however, make sense for partisan offices appearing on the partisan ballot.  These offices will not be placed on the partisan primary ballot (which only involves candidates from the major political parties), but will need to be specially shown on the general-election ballot as running without political party affiliation.

Thus, read in light of the full statutory framework, a strong argument could be made that the reference in MCL 168.558(2) to a "candidate . . . running without political party affiliation" pertains only to candidates for partisan offices and for this Court.  A candidate running for a nonpartisan office is, by definition, incapable of running with political party affiliation for purposes related to placement on the ballot.  It would therefore be redundant, at best, to require candidates for nonpartisan offices to state in the affidavit that they are running without political party affiliation.  This conclusion finds support in the statutory context, which must be consulted when interpreting the scope of

---

[2] As explained below, the office of justice on the Michigan Supreme Court is nonpartisan.  This office was apparently nevertheless included in MCL 168.590 because candidates can be nominated by political parties.

MCL 168.558(2) so that we can "make sense rather than nonsense out of the *corpus juris*." *West Virginia Univ Hosps, Inc v Casey*, 499 US 83, 101 (1991).[3]

Finally, because I believe the Legislature should revisit and clarify this statute, it is worth noting another wrinkle that has become apparent with regard to candidates for this Court. This office is somewhat anomalous in that it is nonpartisan but candidates can receive nominations by political parties. See Const 1963, art 6, § 2; MCL 168.392. Incumbent justices are entitled to placement on the ballot if they file an affidavit of candidacy. Const 1963, art 6, § 2; MCL 168.392a. All candidates appear on the nonpartisan section "containing no party designation . . . ." MCL 168.393. In this context, particularly because of the party nominations, it is clear why the Legislature might have thought it advisable to treat unaffiliated candidates for this Court together with unaffiliated candidates for partisan offices. Both types of candidates need an alternative way to gain access to the ballot since they do have the option of gaining access to the ballot through either a partisan or nonpartisan primary. But, especially in light of the confusion surrounding MCL 168.558(2), this statutory framework raises

---

[3] Justice WELCH has offered other reasons for this conclusion concerning MCL 168.558(2), including additional ways the statutes distinguish between partisan and nonpartisan offices. See, e.g., MCL 168.540 (providing that nonpartisan primary elections will not be held "[i]f, upon the expiration of the time for filing petitions for any nonpartisan primary election, it shall appear that as to any office on any nonpartisan ticket there are not to exceed twice the number of candidates as there are persons to be elected"). I question, however, her interpretation of MCL 168.550. That provision states:

> No candidate shall have his name printed upon any official primary election ballot of any political party in any voting precinct in this state unless he shall have filed nominating petitions according to the provisions of this act, and all other requirements of this act have been complied with in his behalf, except in those counties qualifying candidates upon the payment of fees.

Justice WELCH has observed that this language indicates that candidates for *nonpartisan* office cannot be kept off the ballot by failing to comply with the AOI requirement at issue here. *Davis v Highland Park City Clerk*, ___ Mich ___, ___; 974 NW2d 550, 550 (2022). This conclusion may prove too much, as it might suggest that a nonpartisan candidate's failure to comply with any statutory requirement is not grounds for keeping him or her from the ballot. Moreover, MCL 168.558 includes its own provision on the consequences of noncompliance in Subsection (4), which appears to indicate that a noncomplying candidate cannot be certified for the ballot. See MCL 168.558(4) ("An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section . . . ."). In any event, I agree with Justice WELCH that the overall statutory framework is confusing and merits examination.

concerns about how candidates for this Court are to fill out their AOIs. These candidates seek a nonpartisan office, yet MCL 168.590 suggests that they must comply with the requirement in MCL 168.558(2) that they provide a statement that they are running without party affiliation. This would appear to be contrary to the Bureau of Elections' apparent position that the party-affiliation requirement only applies to candidates for partisan office.[4] If the requirements applicable to candidates for this office are to differ from the requirements applicable to all other candidates for nonpartisan offices, the Legislature should make that clearer in the statute.[5]

For these reasons, while I concur in the denial order here, there remains much work to be done in this area. And because the statute is unclear—perhaps verging on true ambiguity—the best course is for the Legislature to clarify its intent.

WELCH, J. (*dissenting*).

I write separately to express my continued dissatisfaction with how this case was resolved on the merits. I dissented from the Court's June 7, 2022, order denying Carlton

---

[4] Either way, it presents a conundrum for candidates for Supreme Court justice in light of the possible ways in which candidates for this Court may file and run for office. A statement of "no party affiliation" would be somewhat misleading, since such candidates may seek a partisan nomination and, at least to that extent, may be thought of as having some affiliation with a political party. But, if read as requiring a candidate to state a party affiliation in order to make clear that the candidate does not intend to file a qualifying petition, such a statement would also be somewhat misleading. After being nominated by a party, candidates for Supreme Court justice run without a party designation on the nonpartisan section of the ballot, and the judicial canons closely regulate the political conduct of judges and candidates for judicial office. See, e.g., Code of Judicial Conduct, Canon 7(A) (prohibiting judges or judicial candidates from holding any office in a political party or making speeches on behalf of or endorsing a nonjudicial candidate, but allowing them to attend political gatherings and contribute to a political party).

[5] Further, to the extent it suggests that all candidates for this office must file a qualifying petition, MCL 168.590 arguably runs afoul of Const 1963, art 6, § 2, which allows incumbent justices to be placed on the ballot by simply filing an affidavit of candidacy. The qualifying-petition process, by contrast, requires the collection of numerous signatures from across the state. MCL 168.590b. For incumbents, at least, it is hard to see how the qualifying-petition process squares with the Constitution. It seems, therefore, that the best reading of MCL 168.590 is that it applies to candidates for this office who are not incumbents and who were not nominated by a party.

Clyburn, Jr.'s[6] motion to intervene and to dismiss his application for leave to appeal in Docket No. 164490. *Davis v Highland Park City Clerk*, ___ Mich ___ (2022) (WELCH, J., dissenting). The concerns I raised in June remain unresolved. I continue to question whether mandamus relief was properly granted in this case, because it remains unclear to me that there was a clear legal mandate, as a matter of law, for the affected candidates to explicitly declare "no party affiliation" on the affidavit of identity (AOI) required by MCL 168.558 given that the candidates were not seeking partisan office and there was no partisan primary within the jurisdiction at issue. Compare MCL 168.558(2), (4) with MCL 168.550. In fact, the lack of clarity regarding how to properly fill out an AOI for nonpartisan candidates seems evident given the fact that at least six different judicial candidates seeking nonpartisan office also had their AOIs challenged or called into question on the basis that they had improperly filled out the document. See, e.g., *Belcoure v Benson*, unpublished order of the Court of Claims, entered August 19, 2022 (Case No. 22-000111-MB) (granting mandamus relief and ordering that judicial candidate Roney Haywood be removed from the ballot because he left the declaration-of-party-affiliation line on his AOI blank); *Davis v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000125-MM) (denying mandamus relief and holding that LaKena Crespo's statement of "N/A" satisfied the declaration-of-party-affiliation requirement in MCL 168.558(2)); *Slavens v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000141-MZ) (granting declaratory relief keeping incumbent Judge Slavens on the ballot because his AOI was filed before the amendment of MCL 168.558(2) requiring a declaration of party affiliation took effect and evidence showed that two copies had been filed with the Secretary of State); *Fresard v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000143-MZ) (applying laches as a basis not to order removal of three incumbent judicial candidates from the ballot despite their having left the declaration-of-party-affiliation line blank on their AOIs).

There are many ways in which the Michigan Election Law, MCL 168.1 *et seq*., treats elections for partisan offices differently from elections for nonpartisan offices, and it is unclear how MCL 168.558(2) and (4) interact with these other areas of the Election Law. For example, MCL 168.540 provides:

> If, upon the expiration of the timing for filing petitions for any nonpartisan primary election, it shall appear that as to any office on any nonpartisan ticket there are not to exceed twice the number of candidates as there are persons to be elected, then the officer with whom such petitions are filed shall certify to the proper board of election commissioners the

[6] Clyburn is one of several prospective candidates who were disqualified from appearing on the November 2022 election ballot in the city of Highland Park as a result of a lower court's decision in this case. Clyburn is currently a member of the Highland Park City Council who decided to run for mayor rather than seek reelection as a councilperson.

> names of such candidates whose petitions have been properly filed and such candidates shall be the nominees for such offices and shall be so certified. As to such offices, there shall be no primary election and such offices shall be omitted from the primary ballot.

Moreover, it is far from clear whether the requirement in MCL 168.558(2) that a candidate state "no party affiliation if the candidate is running without political party affiliation," such as running as an independent in an election for partisan office, is the same thing as a candidate who cannot run with a stated party affiliation as a matter of law, such as a candidate for a judgeship or another nonpartisan elected office. Accordingly, I continue to question whether there was a clear legal duty for the local clerk to disqualify Clyburn or other similarly situated candidates from the ballot for this election cycle and whether such a duty was ministerial in nature. See *Davis*, ___ Mich at ___ (WELCH, J., dissenting).

I also disagree with plaintiff's arguments that the Highland Park City Council (the Council) does not have standing to seek review the Court of Appeals' ruling. "In order to have appellate standing, the party filing an appeal must be 'aggrieved.' " *Manuel v Gill*, 481 Mich 637, 643 (2008). See also Const 1963, art 6, § 1.

> An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Manuel*, 481 Mich at 643-644, quoting *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292 (2006)].

"A party who could not benefit from a change in the judgment has no appealable interest." *Manuel*, 481 Mich at 644 (quotation marks and citations omitted). This suggests that a party who could benefit from a change does have an appealable interest. We have recognized that even a party that prevailed in the Court of Appeals can have an appealable interest if a change in the final judgment would benefit that party. *Id*. at 643-645. In *Manuel*, the Court of Appeals had affirmed dismissal of the plaintiffs' contract claim on different grounds, but the Court of Appeals further held that the dismissal would be without prejudice to the contract claim being filed anew in the Court of Claims in a new lawsuit. *Id*. at 644-645. We held that a change in the Court of Appeals judgment, such as reinstating dismissal with prejudice, could benefit the defendant, and thus the defendant had appellate standing. *Id*. at 645.

In this case, from a procedural standpoint, the Council was permitted to intervene in the trial court over plaintiff's objection, but plaintiff did not appeal that ruling. The trial court denied plaintiff's request for mandamus relief, and thus plaintiff was an

aggrieved party entitled to an appeal by right under MCR 7.203(A). The Council was the only party that participated in the proceedings before the Court of Appeals as an appellee defending the trial court's denial of mandamus relief; neither of the named defendants filed briefs in the Court of Appeals. The Court of Appeals reversed the trial court and granted plaintiff the mandamus relief he sought as to Clyburn. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544). The Court of Appeals, as a result, directed the trial court to instruct the Highland Park City Clerk and the Highland Park Election Commission "to not place Clyburn on the ballot for the August 2022 primary election for Mayor of Highland Park." *Id.* at 4. This occurred even though there was never going to be a primary election in the city because there were not more than twice the number of candidates as there were vacancies for the office of mayor. See Highland Park City Charter, § 12-5; MCL 168.540. Within a week of the Court of Appeals' decision, Clyburn filed a motion to intervene as an appellant before this Court and filed a proposed application for leave to appeal. The Court denied Clyburn's request to intervene and dismissed his application over my dissent. *Davis*, ___ Mich ___. The Council then filed a timely application for leave to appeal in this Court, but the Council did not request expedited review, nor did it request a decision by a specific date.

Following the Court of Appeals' ruling, several other candidates for nonpartisan offices within Highland Park were decertified from the ballot for having made the same alleged mistakes as Clyburn.[7] The Council has informed us that because of this, there will not be enough potential candidates on the ballot to fill the vacancies on the Council to a level that would provide the Council with the quorum necessary to conduct official business and that other offices within the city might go unfilled. While the Council was not the direct subject of the mandamus relief that was granted, the legal effect of the Court of Appeals' decision has led to an untenable situation in which the elected legislative body of the City may lack sufficient membership to form a quorum and conduct official city business. A timely reversal of the Court of Appeals' judgment could result in the previously disqualified candidates being reinstated before the ballots for the November election are printed. This, in turn, would ensure that the Council, as a governmental body, will have enough members to conduct official business following the November election. The Council does stand to benefit from a change in the Court of Appeals' judgment, and therefore, it is my belief that the Council has appellate standing to seek leave to appeal as an aggrieved party.

---

[7] While it is understandable for our courts to expect candidates whose candidacy is adversely affected by a legal determination to retain counsel and take legal action to defend their position on the ballot, this Court's previous denial of Clyburn's request to intervene in this case as an appellant, despite the Court of Appeals ordering that he be removed from the ballot, could have discouraged other nonpartisan Highland Park candidates who were disqualified from the ballot as a result of the Court of Appeals' decision from seeking relief through litigation.

For these reasons, I respectfully dissent from the Court's order.

BERNSTEIN, J., joins the statement of WELCH, J.




a0906

I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 14, 2022



Clerk

534031

# Write-In Candidate Declaration of Intent

**write-in candidate information 1**

Philip [middle] Cavanagh
first name / middle / last

5060 Lakeview Detroit 48213
residential address / city / zip

☒ I am registered and qualified to vote at this address.

**additional information 2**

(1)(a) [redacted]
phone number

(1)(a) [redacted]
date of birth

(1)(a) [redacted]
email address

campaign website

**office information 3**

Judge Wayne County 3rd Circuit
office name / jurisdiction / district/circuit/ward

No Party Affilation
political party, if a partisan office. If running without party affiliation list "No Party Affiliation."

term (check one): ☒ regular term ○ partial term expiring / / ○ recall

election (check one): ○ primary election / / ☒ general election 11/8/2022

judicial candidates only: ☒ incumbent position ○ non-incumbent position ○ new judgeship

RECEIVED/FILED MICHIGAN BUREAU OF ELECTIONS/GREAT SEAL 2022 OCT 20 PM 4:25

**statement 4**

By signing this affidavit, I swear the statements made above are true and do hearby declare my intent to seek the above elective office as a write-in candidate.

sign here [signature]

date here Oct. 10 2022

notary signature Violet Rose Edwards notary name Violet Rose Edwards

subscribed and sworn to me on the 10 day of 10 2022

notary public, state of Michigan, county of Wayne my commission expires 11/14/2027

acting in the county of Wayne

**for office use only**

received by / date of filing / 520531 campaign finance number

## how to file & complete the form

**when to file** - by 4 p.m. on the second Friday immediately preceding the election, except precinct delegates. Delegates can file by 4 p.m. on the first Friday immediately preceding the election or on Election Day at the precinct.

**where to file**

File with the Michigan Bureau of Elections for a federal or state district that includes more than one county (including statewide) and all judicial races except probate or municipal. File with the county clerk for a federal or state district in only one county, a county or probate judge race, and precinct delegates.

You may file in person or by mail.

File with the city or township clerk for all city or township offices.

Contact your county clerk to determine the appropriate filing official for village, school, or library district offices.

**campaign finance**

You may have additional filing obligations under Michigan's Campaign Finance Act. Ask your filing official.

**completing the form**

**1. write-in candidate information**

Print your information legibly. Fill in the circle to indicate you are registered to vote at the address lis[ted]

**2. additional information**

A phone number, date of birth, email address, or website is not required, but recommended.

**3. office information**

Print the office name, jurisdiction and any district/circuit/ward defining the office for which you are a candidate. If a delegate candidate, put precinct number.

**4. statements**

Read, sign, and date the attestation. The affidavit is not complete until signed and notarized.

**Melissa Wojnar-Raycraft**

**From:** Kevin Cox <kevincox1959@gmail.com>
**Sent:** Tuesday, November 15, 2022 7:29 PM
**To:** Michael Cox
**Subject:** Fwd: FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan
**Attachments:** 20221111 Opin and Ord.pdf

Hi brother. I spoke w Judge Fresard regarding the current state of affairs, and whether the Court was going to hire counsel to defend the Judges in a QW proceeding. She sent this recent Order from Judge Swartzle which touches on the issue in part. I am honing to forward a separate email Judge F also sent me regarding Davis intention to file a QW action against several judges including Kiefer. If possible, perhaps we can discuss tomorrow evening, thanks

---------- Forwarded message ---------
From: **Cox, Kevin** <Kevin.Cox@3rdcc.org>
Date: Tue, Nov 15, 2022 at 7:04 PM
Subject: FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan
To: Kevin Cox <kevincox1959@gmail.com>

Hon. Kevin J. Cox

Wayne County Circuit Court

Frank Murphy Hall of Justice, Courtroom 502

1441 St. Antoine, Detroit, MI 48226

(313) 224-2391

---

**From:** Fresard, Patricia
**Sent:** Tuesday, November 15, 2022 6:44 PM
**To:** Cox, Kevin
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

---

**From:** Lynch, Richard
**Sent:** Monday, November 14, 2022 2:12 PM
**To:** Kenny, Timothy; Fresard, Patricia; Sullivan, Brian
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

Good afternoon Judges,

Please find attached Judge Swartzle's opinion and order that dismisses the two Court of Claims cases. I am just studying it now and will offer updates as it goes forward.

Best regards,

Rich

---

**From:** James J. Hunter [mailto:James.Hunter@Ceflawyers.com]
**Sent:** Monday, November 14, 2022 1:47 PM
**To:** Lynch, Richard
**Subject:** FW: 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

4000 Town Center, 9th Floor
Southfield, MI 48075

**James J. Hunter**
Attorney at Law
Office: (248) 663-7716
Cell: (248) 798-8141
Fax: (248) 663-7717
James.Hunter@cefLawyers.com
www.ceflawyers.com | vCard | Bio

---

**From:** COC Clerks Office <CClerksOffice@courts.mi.gov>
**Sent:** Monday, November 14, 2022 1:39 PM
**To:** davisrobert854@gmail.com; Donald Campbell <Donald.Campbell@ceflawyers.com>; James J. Hunter <James.Hunter@Ceflawyers.com>; Beach, Bryan (AG) <beachb@michigan.gov>; meingasth@michigan.gov; grille@michigan.gov
**Subject:** 22-000121-MM Robert Davis v Third Judicial Circuit Court of Michigan

Good Afternoon,

Attached is a recently issued order issued in the above case.

Best Regards,

Court of Claims

This electronic message and all contents contain information from the law firm of Collins Einhorn Farrell PC which may be privileged, confidential or otherwise protected from disclosure. The information is intended to be for the addressee only. If you are not the addressee, any disclosure, copy, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately and destroy the original message and all copies.

**STATE OF MICHIGAN**

**COURT OF CLAIMS**

ROBERT DAVIS,

Plaintiff,

v

THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN, JUDGE TIMOTHY M. KENNY, in his official capacity as Chief Judge of the Third Judicial Circuit Court (Wayne County), STATE COURT ADMINISTRATIVE OFFICE (SCAO), and HON. THOMAS P. BOYD, in his official capacity as the duly appointed State Court Administrator,

Defendants.
____________________________/

**OPINION AND ORDER**

Case No. 22-000121-MM

Hon. Brock A. Swartzle

and

ROBERT DAVIS,

Plaintiff,

v

Case No. 22-000163-MM

MICHIGAN BOARD OF STATE CANVASSERS, JOCELYN BENSON, in her official capacity as the duly elected Secretary of State, THIRD JUDICIAL CIRCUIT COURT OF MICHIGAN, JUDGE TIMOTHY M. KENNY, in his official capacity as Chief Judge of the Third Judicial Circuit (Wayne County), and JUDGE BRIAN R. SULLIVAN, in his official capacity as an elected Judge of the Third Circuit Court (Wayne County),

Defendants.
____________________________/

Robert Davis's earlier Wayne County election case was dismissed by the Wayne Circuit Court for lack of jurisdiction, and the Court of Appeals affirmed the circuit court's decision. *Davis v Wayne Co Election Comm*, unpublished opinion per curiam of the Court of Appeals, issued June 2, 2022 (Docket No. 361546), p 4 ("Wayne County Election case"). Relatedly, this Court dismissed another complaint filed by Davis against several Wayne Circuit judicial candidates. *Davis v Benson*, unpublished opinion and order of the Court of Claims, issued September 2, 2022 (Docket No. 22-000125-MM), pp 10-11.

Davis now seeks declaratory judgment and writs of mandamus to bar the Board of State Canvassers from counting votes for certain judicial candidates on the November 2022 ballot and to hold 2022 PA 195 unconstitutional. All defendants have moved for summary disposition. The Court resolves these matters without a hearing. MCR 2.119(E)(3). As explained, Davis's claims are without merit and dismissal of all claims in both cases is appropriate.

## I. BACKGROUND

Davis has employed a complex, interwoven, and often times confusing litigation strategy with respect to several candidates for the Wayne Circuit Court. Briefly, Davis filed suit in the Wayne Circuit Court to remove Wayne Circuit judicial candidates Kiefer Cox and Nicholas John Bobak Hathaway from the November 2022 ballot based on what Davis alleges were improper affidavits of identity. Davis also sued defendants in Docket Nos. 22-000121-MM and 22-000163-MM concerning allegations and relief regarding this underlying Wayne County Election case. On this Court's own order it consolidated Docket Nos. 22-000121-MM and 22-000163-MM because the cases involve substantial and controlling common questions of law and fact. MCR 2.505(A)(2).

In 22-000121-MM, Davis seeks a declaratory judgment to enjoin the Wayne Circuit Court and Judge Timothy M. Kenny from allowing that court's general counsel to represent two judicial candidates, Patricia Susan Fresard and Kelly Ann Ramsey, in their individual capacities as candidates for judicial office. Davis also requests a writ of mandamus to compel the State Court Administrative Office ("SCAO") and its administrator, Judge (Ret.) Thomas P. Boyd, to assign a non-Wayne Circuit Court judge to preside over the Wayne County Election case.

In 22-000163-MM, Davis alleges that Judge Kenny, Judge Brian R. Sullivan, and the entire Wayne Circuit Court are in civil and criminal contempt for purportedly not following Judge Susan L. Hubbard's order that disqualified any judge on that court from hearing the Wayne County Election case. Additionally, plaintiff seeks a declaratory judgment to enjoin the Board of State Canvassers from counting votes cast for Fresard, Ramsey, and Sheila Ann Gibson under MCL 168.558 and 168.689. Plaintiff also moved for a writ of mandamus to enjoin the Board of State Canvassers from counting votes cast for Fresard, Ramsey, and Gibson under MCL 168.560, from counting votes cast for Hathaway under MCL 168.560b, and to compel the Secretary of State Jocelyn Benson to inform election officials not to count votes cast for Fresard, Ramsey, Gibson, or Hathaway. Lastly, Davis alleges that 2022 PA 195 is unconstitutional.

All defendants have moved for summary disposition under MCR 2.116(C)(4) and (8), and each argues that this Court does not have subject-matter jurisdiction over the action, the action is moot, and Davis failed to state a claim upon which relief could be granted. Additionally, the Board of State Canvassers and Secretary Benson moved for summary disposition under MCR 2.116(C)(7), arguing that Davis's claims were barred by this Court's prior judgment in Docket No. 22-000125-MM. Finally, Davis filed an emergency motion for declaratory judgment regarding the constitutionality of 2022 PA 195.

II. ANALYSIS

A writ of mandamus is the appropriate remedy for a party seeking to compel action by election officials. See, e.g., *Wolverine Golf Club v Hare*, 24 Mich App 711, 716; 180 NW2d 820 (1970), aff'd 384 Mich 461 (1971).

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [*Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (cleaned up).]

As for the requests for declaratory relief, MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

Defendants move for summary disposition on various grounds. Summary disposition under MCR 2.116(C)(4) is proper when the "court lacks jurisdiction of the subject matter." Summary disposition under MCR 2.116(C)(7) is proper when the "prior judgment…or other disposition of the claim" occurred before the commencement of the current action. Lastly, summary disposition under MCR 2.116(C)(8) is proper when the "opposing party has failed to state a claim on which relief can be granted."

As an initial matter, Davis replied to the motions for summary disposition to concur that Count II of his complaint in Docket No. 22-000121-MM, regarding his writ of mandamus to compel SCAO and Judge (Ret.) Boyd to assign a new judge to the underlying Wayne County

Election case, is moot. Therefore, this Court considers Davis to have abandoned this count, and the Court will not discuss the merits of the count.

A. SUBJECT-MATTER JURISDICTION

The Wayne Circuit Court, Judge Kenny, and Judge Sullivan argue that Davis's claims for contempt and declaratory judgment against them are moot because this Court does not have the inherent power akin to those powers of a constitutional court of general jurisdiction; based on this, they argue that there is not subject-matter jurisdiction for this Court over those claims. Similarly, Judge (Ret.) Boyd argues that Davis's claims against him are moot, and there is no actual controversy, because the ballots were already printed, and, thus, this Court does not have subject-matter jurisdiction over this claim. Lastly, the Board of State Canvassers and Secretary Benson argue that Davis's claims are not ripe because the Board will not receive the report regarding the election until November 28, 2022, and, thus, there is no actual controversy over which this Court has subject-matter jurisdiction.

"Subject-matter jurisdiction refers to a court's power to act and authority to hear and determine a case." *Usitalo v Landon*, 299 Mich App 222, 228; 829 NW2d 359 (2012). "Subject-matter jurisdiction describes the types of cases and claims that a court has authority to address." *Id*.

> Jurisdiction over the subject matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [*Id.*]

"The Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *O'Connell v Dir of Elections*, 316 Mich App 91, 101; 891 NW2d 240 (2016). The "Court of Claims Act," MCL 600.6401 et seq., provides in relevant part as follows:

> (1)…Except as otherwise provided in this section, the [Court of Claims] has the following power and jurisdiction:
>
> (a) To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or its officers notwithstanding another law that confers jurisdiction of the case in the circuit court.
>
> * * *
>
> (7) As used in this section, "the state or any of its departments or officers" means this state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties. [MCL 600.6419.]

As stated, each defendant argues that this Court does not have subject-matter jurisdiction over this case because Davis's claims are either moot or not ripe. Subject-matter jurisdiction, however, does not concern the specific matter before this Court and whether relief could be granted by this Court. Rather, subject-matter jurisdiction concerns whether this Court has the abstract power and authority to try a case of this character. *Usitalo*, 299 Mich App at 228. Under Michigan law, questions of mootness and ripeness go instead to a court's "constitutional jurisdiction," which looks to whether the court has the authority to decide a particular case. See *Broz v Plante & Moran, PLLC*, unpublished opinion per curiam of the Court of Appeals, issued May 17, 2016 (Docket No. 325884), p 3.

Each defendant to this case is a department or officer within the definition of MCL 600.6419(7). The Wayne Circuit Court is a judicial body of the state and, thus, this Court has subject-matter jurisdiction over claims involving that judicial body. Similarly, Davis's claims against Judge Kenny and Judge Sullivan involve the actions they took within the scope of their authority as employees of that judicial body and, thus, this Court has subject-matter jurisdiction over those claims. SCAO is an administrative agency of the state, and, thus, the claims involving Judge (Ret.) Boyd's actions within the scope of his authority as the administrator of that agency are within this Court's subject-matter jurisdiction. The Board of State Canvassers is an agency of the state and, thus, this Court has subject-matter over claims involving it. Lastly, Secretary Benson is the elected Secretary of State for this state and, thus, Davis's claims involving her authority to discharge the governmental duties with which she is vested are within the subject-matter jurisdiction of this Court.

Based on MCL 600.6419, this Court has subject-matter jurisdiction over these parties and claims of this character. Therefore, summary disposition under MCR 2.116(C)(4) is not proper.

B. MCL 691.1408

Davis's argument regarding his first count in Docket No. 22-000121-MM is as follows:

> It is apparent that in accordance with the clear and unambiguous language of MCL 691.1408(1) and (3) of the Governmental Immunity Act, as amended, it was unlawful and illegal for the Defendants Third Circuit Court and Judge Kenny to authorize and allow the Defendant Third Circuit Court's Associate General Counsel, Julie Dale, to appear and defend the two (2) incumbent judges in the Wayne County Election Lawsuit, in which the two (2) incumbent judges are being sued civilly in their "individual capacities as candidates" and NOT in their "official capacities" as judges of the Third Circuit Court.

This argument is misplaced. MCL 691.1408(1) and (3) do not preclude judges from being represented, in their individual capacities, by the trial court's general counsel. Instead, MCL

691.1408(1) and (3) confer the authority for the trial court to "pay for, engage, or furnish the services of an attorney to advise" the judges and to "appear for and represent" the judges when the claims involve the judges' actions "within the scope of his or her authority." On the basis of MCL 691.1408(1) and (3), there is no violation of law or related remedy when an attorney represents a judge in an individual capacity; rather, the statute provides the legal authority for a trial court to employ counsel to represent the court or judges in their official capacities.

To the extent that there is another source of law (e.g., constitution, common law, statute, or administrative rule) that would prohibit the trial court's counsel from representing a judge in the judge's individual capacity, Davis has not made that legal argument or cited that source of law. This Court does not sit as Davis's research attorney. *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) ("Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for resolution of their dispute.") In any event, Davis has not pointed this Court to anything in the law that would preclude counsel from representing the two judges, on a pro bono basis and on counsel's own time (rather than public time), in their individual capacities. Thus, Davis has not stated a meritorious claim for relief, and summary disposition is proper under MCR 2.116(C)(8).

C. CIVIL AND CRIMINAL CONTEMPT

Davis next claims that the Wayne Circuit Court, Judge Kenny, and Judge Sullivan should all be held in civil and criminal contempt for not following Judge Hubbard's order that disqualified the entire bench from hearing Davis's case. His claim, however, is misplaced because there is no authority for this Court to hold another court, or its judges, in contempt for actions that they take within the scope of their authority. Rather, the appropriate remedy for a trial court's or judge's noncompliance with a valid court order is superintending control. "Superintending control is the

proper method to challenge the general practices of an inferior court." *In re Credit Acceptance Corp*, 273 Mich App 594, 598; 733 NW2d 65 (2007) (cleaned up).

Nor does this Court have the authority to impose superintending control over a circuit court because this Court is not in a position of structural superiority over a circuit court. MCR 3.302(D)(1). Even if this Court did have such authority, this Court certainly does not have the authority to overrule the Court of Appeals, which has already denied Davis's complaint for a writ of superintending control that attempted to compel these defendants to comply with Judge Hubbard's order. *In re Robert T Davis*, unpublished order of the Court of Appeals, issued September 15, 2022 (Docket No. 362987), pp 1-2.

Therefore, Davis's claim for civil and criminal contempt against Wayne Circuit Court, Judge Kenny, and Judge Sullivan fails on several grounds, and summary disposition is appropriate under MCR 2.116(C)(8).

D. COUNTING VOTES FOR JUDICIAL CANDIDATES

Davis alleges that four candidates for judicial office—Hathaway, Fresard, Ramsey, and Gibson—should not have been on the November 2022 ballot. In support, he cites this Court's earlier conclusion that Secretary Benson "should not have certified [Fresard, Ramsey, and Gibson]" because their affidavits of identity were defective. *Davis*, slip op, p 8. Therefore, Davis argues that any votes cast for these four candidates should not now be counted.

This claim is also without merit. This Court permitted the names of Fresard, Ramsey, and Gibson to appear on the ballots based on the equitable doctrine of laches. The flaw that this Court identified in their affidavits of identity were technical in nature and, critically, did not go to their constitutional qualifications to sit as a circuit judge, if elected. These qualifications include being

licensed to practice law in this state; being admitted to the bar for at least five years; having not yet reached the age of seventy years; and being elected on a nonpartisan basis in the circuit where the person resides. See Const 1963 art VI, §§ 12, 19. There is nothing in Davis's complaints to suggest that either Hathaway, Fresard, Ramsey, or Gibson does not meet the constitutional qualifications to sit as a circuit judge.

MCL 168.841 states that the "board of state canvassers shall canvass the returns and determine the result of all elections for electors of…circuit judges…and other officers as required by law." In *McLeod v Kelly*, 304 Mich 120, 126; 7 NW2d 240 (1942), our Supreme Court considered an issue in which a writ of mandamus "was granted to compel the board to refrain from recounting the ballots in an election for circuit judge." In so doing, our Supreme Court stated that "[i]t is the clear legal duty of the board of State canvassers to certify the result of the election as shown by the returns." *Id*. at 127.

In essence, Davis conflates the statutory requirements for appearing on a ballot with the constitutional qualifications for taking and sitting in office. Accordingly, Davis's various requests for writs of mandamus with respect to these four judicial candidates are without merit. MCR 2.116(C)(8).

E. CONSTITUTIONALITY OF 2022 PA 195

Lastly, Davis claims that 2022 PA 195 is unconstitutional because its population requirement is not reasonably related to its purpose and the majority of electors did not approve the act as a local act. Specifically, Davis alleges that our Legislature created an unconstitutional scheme with subsection (6) of MCL 168.765, which states in relevant part:

> If the clerk of a city or township with a population of at least 10,000 provides written notice in compliance with this subsection to the secretary of state 20 days or more before election day, that city or township clerk, or the clerk's authorized designee, may between the hours of 7 a.m. and 8 p.m. on the Sunday and Monday before election day perform certain absent voter ballot pre-processing activities as described in this subsection. The written notice provided to the secretary of state must include the location and hours that the absent voter ballot return envelopes will be opened in that city or township. For the November 8, 2022 general election only, the secretary of state shall post any written notice received by the clerk of a city or township under this subsection on the department of state website not later than October 29, 2022.

As with the other claims, this one is likewise without merit. As our Supreme Court has clearly and repeatedly explained, "Such population-based statutes have been upheld against claims that they constitute local acts where it is possible that other municipalities or counties can qualify for inclusion if their population changes." *Michigan v Wayne Co Clerk*, 466 Mich 640, 642; 648 NW2d 202 (2002). Furthermore, the population requirement is reasonably related to the purpose of the statute to help those larger jurisdictions, with several thousands of votes to count, to process the votes in an efficient and effective manner.

Therefore, Davis's emergency motion for declaratory judgment to hold 2022 PA 195 unconstitutional is denied. This claim is dismissed as meritless under MCR 2.116(I).

## III. CONCLUSION

Accordingly, for the reasons set forth in this Opinion and Order, the Court orders as follows:

IT IS ORDERED that Count II of Davis's complaint in Docket No. 22-000121-MM has been abandoned and is therefore DISMISSED WITH PREJUDICE under MCR 2.116(I).

IT IS FURTHER ORDERED that, on all of Davis's remaining claims in both consolidated cases, defendants' various motions for summary disposition are GRANTED IN PART and

DENIED IN PART. Specifically, defendants' motions to dismiss plaintiff's claims under MCR 2.116(C)(4) are DENIED; defendants' motions to dismiss plaintiff's claims under MCR 2.116(C)(8) are GRANTED. Furthermore, given resolution of all of Davis's claims, the Court need not reach defendants' alternative arguments based on MCR 2.116(C)(7).

IT IS FURTHER ORDERED that Davis's October 31, 2022 emergency motion for declaratory judgment regarding the constitutionality of 2022 PA 195 is DENIED and his claim challenging the constitutionality of 2022 PA 195 is DISMISSED WITH PREJUDICE under MCR 2.116(I).

IT IS FURTHER ORDERED that Davis's complaints in both cases are DISMISSED WITH PREJUDICE consistent with this Opinion and Order.

This is a final order, resolves the last pending matter, and closes both consolidated cases.

Date: November 11, 2022

Hon. Brock A. Swartzle
Judge, Court of Claims

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Kevin Cox <kevincox1959@gmail.com> |
| **Sent:** | Tuesday, November 15, 2022 7:30 PM |
| **To:** | Michael Cox |
| **Subject:** | Fwd: FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates |

This is the email I referred to in the earlier email

---------- Forwarded message ---------
From: **Cox, Kevin** <Kevin.Cox@3rdcc.org>
Date: Tue, Nov 15, 2022 at 7:04 PM
Subject: FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates
To: Kevin Cox <kevincox1959@gmail.com>

Hon. Kevin J. Cox

Wayne County Circuit Court

Frank Murphy Hall of Justice, Courtroom 502

1441 St. Antoine, Detroit, MI 48226

(313) 224-2391

---

**From:** Fresard, Patricia
**Sent:** Tuesday, November 15, 2022 6:43 PM
**To:** Cox, Kevin
**Subject:** FW: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

---

**From:** Robert Davis [davisrobert854@gmail.com]
**Sent:** Monday, November 14, 2022 4:55 PM
**To:** Sallan, Vincent C.
**Cc:** Publiski, Ryan; Gerald Evelyn; Juan Mateo; Rebecca Camargo; Nkrumah Johnson-Wynn; Sullivan, Brian; Fresard, Patricia; donn.fresard@gmail.com; Hubbard, Susan; Ramsey, Kelly; Beach, Bryan (AG); Meingast, Heather (AG); James J. Hunter; Donald Campbell; Trebilcock, Christopher M.
**Subject:** Re: Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

Mr. Sallan:
You should enhance your reading comprehension skills and stop recycling your tired and frivolous arguments.

Robert Davis

On Mon, Nov 14, 2022, 4:48 PM Sallan, Vincent C. <vsallan@clarkhill.com> wrote:

We continue to object to Mr. Davis' continued abuse of the judicial system by pursuing these claims. As recognized in the attached Court of Claims opinion from this afternoon, there is no basis in law or fact for the relief that Mr. Davis seeks. The Court should sanction him accordingly.

**Vincent C. Sallan**

**Clark Hill**

500 Woodward Avenue, Suite 3500, Detroit, MI 48226

+1 313.965.8245 (office) | +1 248.224.2318 (cell) | +1 313.965.8252 (fax)

vsallan@clarkhill.com| www.clarkhill.com

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Monday, November 14, 2022 3:35 PM
**To:** Publiski, Ryan <Ryan.Publiski@3rdcc.org>
**Cc:** Gerald Evelyn <geraldevelyn@yahoo.com>; Juan Mateo <mateoja@aol.com>; Rebecca Camargo <rcamargo@waynecounty.com>; Nkrumah Johnson-Wynn <Njohnson3@waynecounty.com>; Sallan, Vincent C. ; brian.sullivan@3rdcc.org; Fresard, Patricia <patricia.fresard@3rdcc.org>; donn.fresard@gmail.com; Hubbard, Susan <Susan.Hubbard@3rdcc.org>; Ramsey, Kelly <kelly.ramsey@3rdcc.org>; Beach, Bryan (AG) <beachb@michigan.gov>; Meingast, Heather (AG) <meingasth@michigan.gov>; James J. Hunter <James.Hunter@ceflawyers.com>; Donald Campbell <Donald.Campbell@ceflawyers.com>
**Subject:** Quo Warranto Proceedings Pursuant to MCL 600.4545 to Void Judicial Elections of Certain Candidates

**[External Message]**

---

Mr. Publiski:

I am writing to inform the Court that **tomorrow**, in accordance with MCL 600.4545, I will be formally filing *quo warranto* proceedings to **void** the elections of Judges Patricia Fresard, Kelly Ann Ramsey, Sheila Ann Gibson, Brian R. Sullivan, and judicial candidates Kiefer Cox and Nicholas John Hathaway. Pursuant to MCL 600.4545(2) and MCR 3.306(B)(2), an emergency *ex parte* application for leave to file a complaint for writ of *quo warranto* w**ill be filed first** for the Court's consideration and review. See *Davis v Chatman*, 292 Mich.App. 603; 808 NW2d 555 (2011).

MCL 600.4545(1) provides:

(1) An action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof.

MCL 600.4545(2) further provides:

(2) Such action shall be brought within 30 days after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, **or by any citizen of the county by special leave of the court or a judge thereof. Such action shall be brought against the municipality wherein such fraud or error is alleged to have been committed. (emphasis supplied).**

It is clear from this Court's October 2022 opinion and the Court of Claims' September 2, 2022 opinion that a clear "error" was committed by the Wayne County Election Commission and the County of Wayne in the November 8, 2022 general election as a result of the foregoing incumbent judicial candidates being allowed to appear on the November 8th general election ballot as judicial candidates when in fact they were **NOT** properly certified by the Secretary of State. Thus, their subsequent elections shall be declared VOID. See Davis v Chatman, 292 Mich.App. 603; 808 NW2d 555 (2011).

Lastly, because the *quo warranto* proceedings arise out of the same transactions and occurrences as pled and alleged in the previous action, *Davis v Wayne County Election Commission, et.al.*, Case No. 22-008866-AW, the soon-to-be filed *quo warranto* action **shall be assigned to Judge Lillard as well**. See MCR 8.111(D)(1).

MCR 8.111(D)(1) provides:
(1) if one of two or more actions arising out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to that judge (emphasis supplied).

“Actions arise from the same transaction or occurrence only if each arises from the identical events leading to the other action.” *Nat'l Waterworks, Inc. v Intern. Fidelity & Surety, LTD.*, 275 Mich.App. 256, ___; 739 NW2d 121, 125 (2007); see also Kloian v Schwartz, 272 Mich App 232, 243; 725 NW2d 671 (2006); *Wayne Co Prosecutor v Parole Bd,* 210 Mich App 148, 156; 532 NW2d 899 (1995). Moreover, the Court of Appeals “has stated that an example of actions arising from the same transaction or occurrence would be ‘several actions separately brought by various passengers of a train which derailed.’” *Nat'l Waterworks, Inc*., 275 Mich.App. at ___; 739 NW2d at 125, quoting *Armco Steel Corp. v. Dep't of Treasury,* 111 Mich.App. 426, 437, 315 NW2d 158 (1981), aff'd 419 Mich. 582, 358 N.W.2d 839 (1984).

I will advise the Court once the *ex parte* application for leave to file a complaint for writ of quo warranto has been e-filed.

Respectfully submitted,

Robert Davis

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Michael Cox |
| **Sent:** | Sunday, November 27, 2022 3:03 PM |
| **To:** | davisrobert854@gmail.com |
| **Cc:** | Michael Cox |
| **Subject:** | Resolution of Robert Davis v WCEC, K. Cox, N Hathway |

Mr. Davis,

I am reaching out to see if you want to meet to resolve the fees issue with Nick Hathaway and my nephew Kiefer Cox. Chris Trebilcock and Vince are still representing them for the purposes of the litigation and subsequent appeals but I have been part of the case(s) since you filed them. I think – if you are interested – you and I could resolve the case this week. If you talk to Todd or Mick, they will tell you I won't waste your time.

Let me know if you are interested; in addition to this email, you can reach me at my office number below or my cell, 734-306-0958.

I am in and out of town between the 5th and 20th of December, but I am fairly open this week.

Mike Cox

Michael A. Cox
The Mike Cox Law Firm, PLLC
17430 Laurel Park Drive North, Suite 120 E
Livonia, MI 48154
mc@mikecoxlaw.com
Office: 734-591-4002
Facsimile: 734 591-4006

**Melissa Wojnar-Raycraft**

**From:** Michael Cox
**Sent:** Tuesday, November 29, 2022 4:22 PM
**To:** Robert Davis
**Subject:** Re: Thanks for these. Look forward to your idea(s)

Will check

Sent from my iPhone

> On Nov 29, 2022, at 4:20 PM, Robert Davis wrote:
>
> What other orders, garnishments or otherwise, has counsel for Kiefer Cox and Mr. Hathaway, have sought?
>
> Robert Davis
>
> On Tue, Nov 29, 2022 at 3:59 PM Michael Cox <mc@mikecoxlaw.com> wrote:
>
> > **From:** Robert Davis <davisrobert854@gmail.com>
> > **Sent:** Tuesday, November 29, 2022 12:45 PM
> > **To:** Michael Cox <mc@mikecoxlaw.com>
> > **Subject:** Re: Resolution of Robert Davis v WCEC, K. Cox, N Hathway
> >
> > Attorney General Cox:
> >
> > Per your request, attached are copies of the Michigan Judges Association's motion to file an amicus and their amicus brief filed in the Supreme Court case concerning the Highland Park candidates. As you may recall, the Highland Park case pertained to nonpartisan candidates as well failing to put certain required statements on their affidavits of identity. I have also attached a copy of the Michigan Supreme Court's September 14, 2022 order in the Highland Park case, which includes Justice Viviano's lengthy and enlightening concurring opinion. I will be sending you some potential counter offers to your initial proposal we spoke about yesterday within the next day or so.
> >
> > Robert Davis
> >
> > On Sun, Nov 27, 2022 at 3:59 PM Robert Davis <davisrobert854@gmail.com> wrote:
> >
> > > Attorney General Cox:
> > >
> > > It would be my honor to speak with you to try to bring a resolution to this matter. I will give your office a call tomorrow morning. Thanks for reaching out.

Robert Davis

On Sun, Nov 27, 2022, 3:02 PM Michael Cox <mc@mikecoxlaw.com> wrote:

Mr. Davis,

I am reaching out to see if you want to meet to resolve the fees issue with Nick Hathaway and my nephew Kiefer Cox. Chris Trebilcock and Vince are still representing them for the purposes of the litigation and subsequent appeals but I have been part of the case(s) since you filed them. I think – if you are interested – you and I could resolve the case this week. If you talk to Todd or Mick, they will tell you I won't waste your time.

Let me know if you are interested; in addition to this email, you can reach me at my office number below or my cell, 734-306-0958.

I am in and out of town between the 5th and 20th of December, but I am fairly open this week.

Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48154

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Michael Cox |
| **Sent:** | Tuesday, August 26, 2025 11:27 AM |
| **To:** | Melissa Wojnar-Raycraft |
| **Cc:** | Michael Cox |
| **Subject:** | FW: Resolution of Robert Davis v WCEC, K. Cox, N Hathway |
| **Attachments:** | FILED--Michigan Judges Association Motion for Leave to File amicus brief Supreme Court Davis v Highland Park City Clerk.pdf; FILED--Michigan Judges Association - Amicus Brief Supreme Court Davis v Highland Park City Clerk.pdf; September 14 2022 Order Supreme Court Denying Highland Park City Council application for leave to appeal June 2 2022 judgment opinion of Court of Appeals re Clyburn.pdf |

---

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Tuesday, November 29, 2022 12:45 PM
**To:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** Re: Resolution of Robert Davis v WCEC, K. Cox, N Hathway

Attorney General Cox:
Per your request, attached are copies of the Michigan Judges Association's motion to file an amicus and their amicus brief filed in the Supreme Court case concerning the Highland Park candidates. As you may recall, the Highland Park case pertained to nonpartisan candidates as well failing to put certain required statements on their affidavits of identity. I have also attached a copy of the Michigan Supreme Court's September 14, 2022 order in the Highland Park case, which includes Justice Viviano's lengthy and enlightening concurring opinion. I will be sending you some potential counter offers to your initial proposal we spoke about yesterday within the next day or so.

Robert Davis

On Sun, Nov 27, 2022 at 3:59 PM Robert Davis <davisrobert854@gmail.com> wrote:

> Attorney General Cox:
> It would be my honor to speak with you to try to bring a resolution to this matter. I will give your office a call tomorrow morning. Thanks for reaching out.
>
> Robert Davis
>
> On Sun, Nov 27, 2022, 3:02 PM Michael Cox <mc@mikecoxlaw.com wrote:
>
>> Mr. Davis,
>>
>> I am reaching out to see if you want to meet to resolve the fees issue with Nick Hathaway and my nephew Kiefer Cox. Chris Trebilcock and Vince are still representing them for the purposes of the litigation and subsequent appeals but I have been part of the case(s) since you filed them. I think – if

you are interested – you and I could resolve the case this week. If you talk to Todd or Mick, they will tell you I won't waste your time.

Let me know if you are interested; in addition to this email, you can reach me at my office number below or my cell, 734-306-0958.

I am in and out of town between the 5th and 20th of December, but I am fairly open this week.

Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48154

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006

RECEIVED by MSC 9/1/2022 2:12:12 PM

**STATE OF MICHIGAN**
**IN THE SUPREME COURT**

ROBERT DAVIS,

Plaintiff-Appellant,

v

HIGHLAND PARK CITY CLERK, and HIGHLAND PARK ELECTION COMMISSION

Defendants-Appellees,

and

HIGHLAND PARK CITY COUNCIL,

Intervening Defendant-Appellee.

Supreme Court Case No. 164564

Court of Appeals Case No. 361544

Robert Davis (self-represented)
180 Eason
Highland Park, MI 48203
(313) 523-7118
davisrobert854@gmail.com

Anthony K. Chubb (P72608)
GIARMARCO, MULLINS, & HORTON, P.C.
101 W. Big Beaver Rd., Suite 1000
Troy, MI 48084
(248) 457-7001
achubb@gmhlaw.com
*Attorneys for Defendants Highland Park City Clerk and Highland Park City Council*

Stephen Dunn (P68711)
BODMAN PLLC
201 W. Big Beaver Rd., Suite 500
(248) 734-6031
sdunn@bodmanlaw.com
*Attorneys for Intervening Defendant Highland Park City Council*

Steven C. Liedel (P58852)
W. Alan Wilk (P54059)
Hannah E. Buzolits (P84702)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9184
sliedel@dykema.com
*Attorneys for Proposed Friend of the Court Michigan Judges Association*

**MICHIGAN JUDGES ASSOCIATION'S MOTION FOR LEAVE TO FILE AMICUS BRIEF**

RECEIVED by MSC 9/1/2022 2:12:12 PM

1. Under MCR 7.312(H)(2), the Michigan Judges Association ("MJA") seeks leave of the Court to file an amicus curiae brief.

2. The MJA seeks leave of this Court pursuant to MCR 7.312(H) to file an amicus curiae brief urging this Court to reverse the Court of Appeals' June 2, 2022 decision finding that MCL 168.558(2) requires candidates seeking non-partisan office to affirmatively state "no party affiliation" on an affidavit of identity.

3. The MJA is a judicial organization for court of appeals and circuit court judges in Michigan. This matter directly affects the interests of the MJA's members—who are incumbent judges and non-partisan elected officials.

4. The issue pending before this Court goes to the heart of the interests of MJA and its members—the statutory requirements of individuals seeking judicial offices.

5. At least 8 judicial candidate seeking non-partisan office will be impacted by the Court's decision. The members of the MJA have interests that will be impacted by the outcome of this litigation and should be permitted to participate in this matter by filing an amicus curiae brief.

The Michigan Judges Association respectfully requests that this Court grant this motion for leave to file an amicus curiae brief.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

RECEIVED by MSC 9/1/2022 2:12:12 PM

Respectfully submitted,

Dated: September 1, 2022

By: */s/ Steven C. Liedel*

Steven C. Liedel (P58852)
W. Alan Wilk (P54059)
Hannah E. Buzolits (P84702)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9184
sliedel@dykema.com

*Attorneys for Proposed Friend of the Court Michigan Judges Association*

123622.000001 4866-4136-7856.2

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

RECEIVED by MSC 9/1/2022 2:12:12 PM

**STATE OF MICHIGAN**
**IN THE SUPREME COURT**

| | |
|---|---|
| ROBERT DAVIS,<br><br>Plaintiff-Appellant,<br><br>v<br><br>HIGHLAND PARK CITY CLERK, and HIGHLAND PARK ELECTION COMMISSION<br><br>Defendants-Appellees,<br><br>and<br><br>HIGHLAND PARK CITY COUNCIL,<br><br>Intervening Defendant-Appellee. | Supreme Court Case No. 164564<br><br>Court of Appeals Case No. 361544 |

Robert Davis (self-represented)
180 Eason
Highland Park, MI 48203
(313) 523-7118
davisrobert854@gmail.com

Anthony K. Chubb (P72608)
GIARMARCO, MULLINS, & HORTON, P.C.
101 W. Big Beaver Rd., Suite 1000
Troy, MI 48084
(248) 457-7001
achubb@gmhlaw.com
*Attorneys for Defendants Highland Park City Clerk and Highland Park City Council*

Stephen Dunn (P68711)
BODMAN PLLC
201 W. Big Beaver Rd., Suite 500
(248) 734-6031
sdunn@bodmanlaw.com
*Attorneys for Intervening Defendant Highland Park City Council*

Steven C. Liedel (P58852)
W. Alan Wilk (P54059)
Hannah E. Buzolits (P84702)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9184
sliedel@dykema.com
*Attorneys for Proposed Friend of the Court Michigan Judges Association*

**MICHIGAN JUDGES ASSOCIATION'S FRIEND OF THE COURT BRIEF**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

STATEMENT OF QUESTIONS PRESENTED ..... v

I. Did the Court of Appeals improperly grant mandamus relief to decertify an already certified candidate from appearing on the ballot? ..... v

II. Does a candidate to a non-partisan office's failure to specify a "party affiliation" on an Affidavit of Identity result in the drastic step of prohibiting that candidate from appearing on the ballot? ..... v

INTEREST OF AMICUS CURIAE ..... vi

STATEMENT OF JURISDICTION ..... vii

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

STANDARD OF REVIEW ..... 3

ARGUMENT ..... 4

I. The Court of Appeals Incorrectly Interpreted MCL 168.558(2) ..... 4

A. MCL 168.558(2) does not apply to candidates seeking non-partisan offices ..... 5

B. Even if a party affiliation statement is required of all candidates, a candidate seeking a non-partisan office complies with MCL 168.558(2) by leaving a blank ..... 7

II. Requiring an Affirmative Statement of "No Party" Affiliation Imposes an Additional Requirement on Candidates Running for Non-Partisan Seats ..... 9

CONCLUSION ..... 13

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Belcoure v Benson*,
Court of Claims Docket No 22-000117-MB ....................2

*Citizens Protecting Michigan's Constitution v Sec'y of State*,
482 Mich 960; 755 NW2d 157 (2008)....................4

*City of Grand Rapids City Clerk v Judge of Superior Court*,
366 Mich 335; 115 NW2d 112 (1962)....................4

*Coal for a Safer Detroit v Detroit City Clerk*,
295 Mich App 362; 820 NW2d 208 (2012)....................3

*Davis v Benson*,
Court of Claims Docket No 22-000125-MM....................2, 7, 10

*Davis v Highland Park City Clerk*,
__ Mich __; 974 NW2d 550 (Mich 2022) ....................3, 8

*Davis v Wayne County Elections Commission*,
Court of Appeals Docket No 22-8866-AW ....................2

*Durant v Dep't of Ed*,
186 Mich App 83; 463 NW2d 461 (1990)....................9

*Epps v 4 Quarters Restoration LLC*,
498 Mich 518; 872 NW2d 412 (2015)....................4

*Evans v Detroit Election Com*,
15 Mich App 260; 166 NW2d 467 (1968)....................8

*Haynes v Village of Beulah*,
308 Mich App 465; 865 NW2d 923 (2014)....................4

*League of Women Voters of Mich v Sec'y of State*,
333 Mich App 1; 959 NW2d 1 (2020) (*League I*) ....................3, 4

*League of Women Voters of Mich v Sec'y of State*,
508 Mich 520; 975 NW2d 840 (2022) (*League II*) ....................9, 11

*Moore v Genesee Cty*,
337 Mich App 723; __ NW2d __ (2021)....................8, 9, 11

*Nykoriak v Napoleon*,
334 Mich App 370; 964 NW2d 895 (2020)....................9, 11

*O'Connell v Dir of Elections*,
316 Mich App 91; 891 NW2d 240 (2016)....................4

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

*Paige v Sterling Hts*, 476 Mich 495; 720 NW2d 219 (2006) .......... 6

*People v Alexander*, 188 Mich App 96; 469 NW2d 10 (1991) .......... 7

*People v Pinkney*, 501 Mich 259; 912 NW2d 535 (2018) .......... 3

*Reed-Pratt v Benson*, Court of Claims Docket No 22-000060-MZ .......... 2

*Soutar v St Clair County Election Com*, 334 Mich 258; 54 NW2d 425 (1952) .......... 9

*State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142; 644 NW2d 715 (2002) .......... 5

*Stumbo v Roe*, 332 Mich App 479; 957 NW2d 830 (2020) .......... 8, 11

*Sullivan v. Sec'y of State*, 373 Mich 627, 630–31 (1964) .......... 8

*Wolverine Golf Club v Sec'y of State*, 384 Mich 461; 185 NW2d 392 (1971) .......... 9, 10

**RULES**

MCR 3.306 .......... 4

**CONSTITUTIONAL PROVISIONS**

Const 1963, art 6, § 8 .......... 9, 10

Const 1963, art 6, § 12 .......... 9, 10

Const 1963, art 6, § 16 .......... 9, 10

Const 1963, art 6, § 22 .......... 10, 11

Highland Park Charter, § 12-5 .......... 2, 9, 10

Highland Park Charter, § 12-7 .......... 1

Highland Park Charter, § 12-10 .......... 1

**STATUTES**

MCL 168.321(3) .......... 1

MCL 168.392a .......... 10

MCL 168.409b .......... 10

MCL 168.412 .......... 5

MCL 168.413a .......... 10

MCL 168.433a ... 10
MCL 168.467c ... 10
MCL 168.540 ... 5
MCL 168.550 ... 6
MCL 168.552 ... 2. 6
MCL 168.558 ... passim
MCL 168.559 ... 6
MCL 168.590 ... 6
MCL 168.590h ... 6
MCL 168.699 ... 5
MCL 169.201 ... 8, 11
MCL 600.4505 ... 4
MCL 600.4545 ... 4

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

**Nonparty Cox Document Production 078**

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## STATEMENT OF QUESTIONS PRESENTED[1]

**I. Did the Court of Appeals improperly grant mandamus relief to decertify an already - certified candidate from appearing on the ballot?**

| | |
|---|---|
| Plaintiff Argued and the Court of Appeals Held: | No |
| Defendants and Intervening Defendants Argue: | Yes |
| Michigan Judges Association Argues: | Yes |

**II. Does a candidate to a non-partisan office's failure to specify a "party affiliation" on an Affidavit of Identity result in the drastic step of prohibiting that candidate from appearing on the ballot?**

| | |
|---|---|
| Plaintiff Argued and the Court of Appeals Held: | Yes |
| Defendants and Intervening Defendant Argue: | No |
| Michigan Judges Association Argues: | No |

---

[1] Counsel for a party did not author this brief, in whole or in part, and no party made a monetary contribution intended to fund the preparation or submission of this brief.

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## INTEREST OF AMICUS CURIAE

The **Michigan Judges Association** ("MJA") is a judicial organization for Circuit Court and Court of Appeals judges in Michigan. This matter directly affects the interests of the MJA's members—who are non-partisan elected officials. Several candidates for non-partisan judicial seats in the November 2022 election will be impacted by this decision, including the following:

- Patricia P. Fresard, 3rd Circuit Court;
- Sheila Ann Gibson, 3rd Circuit Court;
- Roney L. Haywood, 3rd Circuit Court;
- Kelly A. Ramsey, 3rd Circuit Court;
- Mark T. Slavens, 3rd Circuit Court;
- Lakena T. Crespo, 3rd Circuit Court;
- William Burton Jr., 36th District Court; and
- Tenisha Yancey, 36th District Court.

RECEIVED by MSC 9/1/2022 2:12:12 PM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

**STATEMENT OF JURISDICTION**

The MJA does not dispute this Court's jurisdiction to consider this matter.

RECEIVED by MSC 9/1/2022 2:12:12 PM

## INTRODUCTION

The impact of this case is significant. The Court's decision in this case will determine the fate of at least nine candidates—all running for non-partisan positions at the November 2022 general election. It is undisputed that the candidates affected by this decision are running for seats that are, by operation of law, non-partisan. The only obstacle preventing these otherwise eligible candidates from appearing on the ballot is the Court of Appeals' incorrect ruling that those non-partisan candidates were required to specify "party affiliation" information on their AOI forms, and that their failure to do so prohibits them from appearing on the ballot.

Respectfully, the Court of Appeals' decision is erroneous. Read correctly, the Michigan Election Law's requirement that a candidate include their "political party or a statement indicating no party affiliation if the candidate is running without political party affiliation" applies only to those candidates who are running for a ***partisan*** office, either with or without a party affiliation. Candidates running for inherently non-partisan offices (like judicial candidates) need not make any statement about their lack of party affiliation, because such positions are not elected on a partisan basis. As such, leaving "party affiliation" blank complies with applicable law.

The MJA joins Defendants-Appellees, Highland Park City Clerk and Highland Park Election Commission, and Intervening Defendant-Appellee, Highland Park City Council, in asking this Court to reject Plaintiff Robert Davis' lawsuit to remove Carlton Clyburn, Jr. from the ballot as candidate for a non-partisan mayoral seat in Highland Park.

## STATEMENT OF FACTS

Candidates are required to submit an affidavit of identity ("AOI") to appear on the ballot for the primary election. MCL 168.558.[2] Local candidates running for office are certified for the ballot by approval in accordance with the city charter. MCL 168.321(3). In Highland Park, the city clerk ("City Clerk") is responsible for certifying the candidacy of city officials and submitting those certified candidates to the city election commission ("Election Commission"). Highland Park Charter, §§ 12-7, 12-10. In elections for state office, the secretary of state (the "Secretary") is responsible for reviewing the AOI in accordance with MCL 168.558(4) and certifying the names

[2] While not required, candidates generally use the form available through the Secretary to fulfill the requirements of MCL 168.558. (See Affidavit of Identity and Receipt of Filing Sample form, **App'x 1**).

RECEIVED by MSC 9/1/2022 2:12:12 PM

of eligible candidates. Similarly, the Board of State Canvassers is responsible for canvassing nominating petitions and making "[a]n official declaration of the sufficiency or insufficiency of a nominating petition[,]" and certifying a list of candidates who filed sufficient nominating petitions to the Secretary of State. MCL 168.552(8), 168.552(11).

In this case, Carlton Clyburn, Jr. ("Clyburn") announced his candidacy for mayor of Highland Park (a non-partisan office)[3] and submitted an AOI in support to the City Clerk. Of no surprise given that he was running for a non-partisan office, Clyburn—along with several others who were also not running for partisan offices—did not specify any "party affiliation" on the AOI and left the information blank. The City Clerk certified Clyburn's name to appear on the ballot for the August 2022 primary election despite the blank party affiliation line.

Like the City Clerk, in May 2022, the Secretary and the Board of State Canvassers conducted their respective responsibilities and issued decisions certifying candidates who timely submitted an AOI. The Secretary certified all candidates seeking non-partisan state office and who left the "party affiliation" space on the AOI form blank.

As a direct result of these certifications, a string of lawsuits[4] were filed by interested parties. These lawsuits alleged that the candidates failed to comply with the Michigan Election Law by failing to explicitly state "no party affiliation" on the AOI form. (**App'x 1, p 2**). At this time, at least nine candidates are at risk of being excluded from the ballot in the November 2022 general election, including at least eight judicial candidates.

---

[3] See Highland Park Charter, § 12-5 ("All City elections for the nomination and election of officers shall be nonpartisan.")

[4] See e.g., *Reed-Pratt v Benson*, Court of Claims Docket No 22-000060-MZ, issued June 1, 2022 (issuing a writ of mandamus disqualifying a judicial candidates William Burton Jr. and Tenisha Yancey for omitting "no party affiliation" statement) (**App'x 2, p 4**); *Belcoure v Benson*, Court of Claims Docket No 22-000117-MB, issued August 19, 2022 (issuing a writ of mandamus disqualifying a judicial candidate Roney L. Haywood for omitting "no party affiliation" statement) (**App'x 3, p 14**); *Davis v Benson*, Court of Claims Docket No 22-000125-MM (pending action challenging eligibility of Patricia Fresard, Kelly Ramsey, Sheila Gibson, Mark T. Slavens, and Lakena Crespo based on defective AOIs); and *Davis v Wayne County Elections Commission*, Court of Appeals Docket No 22-8866-AW (pending appeal challenging eligibility of Kelly Ramsey).

RECEIVED by MSC 9/1/2022 2:12:12 PM

**Procedural History**

The Court of Appeals reversed the denial by the trial court of Plaintiff's writ of mandamus and determined Defendants, the City Clerk and Election Commission, should be ordered to not place Clyburn on the ballot. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No 361544), p 7 (**App'x 4, p 18**). In reaching this decision, the Court of Appeals determined that leaving the party affiliation line blank, even where a candidate is running for a non-partisan position, does not comply with MCL 168.558. The court reasoned that "the Legislature has said it 'must'. . .," and therefore "the statutory requirement that the candidate running for a non-partisan office affirmatively state in the AOI that he has no party affiliation is mandatory." *Id* at 5. As such, it was decided that Clyburn did not conform to MCL 168.558 and is ineligible to be placed on the ballot.

After the decision of the Court of Appeals on June 2, 2022, the Court affirmed the denial of Clyburn's motion to intervene in this matter on June 7, 2022. In dissent, Justice Welch, joined by Justice Bernstein, disagreed with the Court's decision to deny the motion for intervention, and also questioned whether mandamus relief was appropriately granted. *Davis v Highland Park City Clerk*, __ Mich __; 974 NW2d 550, 550 (Mich 2022) (Welch, J dissenting) (**App'x 5, p 23**). Given that Clyburn left the party affiliation blank and he is running for a non-partisan mayoral office, Justice Welch reasoned "I question whether the Court of Appeals was correct to hold that silence as to party affiliation cannot satisfy the requirement of 'indicating no party affiliation' under MCL 168.558(2)." *Id*.

**STANDARD OF REVIEW**

Mandamus relief is an "extraordinary remedy." *League of Women Voters of Mich v Sec'y of State*, 333 Mich App 1, 9; 959 NW2d 1 (2020) (*League I*). This Court reviews a decision on a request for mandamus for an abuse of discretion and reviews questions of law *de novo*. *Coal for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367; 820 NW2d 208 (2012). Questions of statutory interpretation are reviewed *de novo*. *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018).

RECEIVED by MSC 9/1/2022 2:12:12 PM

## ARGUMENT

### I. The Court of Appeals Incorrectly Interpreted MCL 168.558(2).

The Court of Appeals' decision to grant mandamus hinges on the proper interpretation of MCL 168.558(2).[5] The primary goal of statutory interpretation "is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015) (citation omitted). If the language of a statute is unclear, "courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Haynes v Village of Beulah*, 308 Mich App 465, 468; 865 NW2d 923 (2014). Further, judicial interpretation must "construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature." *O'Connell v Dir of Elections*, 316 Mich App 91, 98-99; 891 NW2d 240 (2016) (citation omitted).

MCL 168.558(2) must be read to allow Clyburn to appear on the general election ballot because the party affiliation statement, or a statement of "no party affiliation," is only required of candidates who are running for a partisan office. Further, even if Clyburn was required to provide a party affiliation statement or to indicate "no party affiliation", leaving a blank complies with MCL 168.558(2) because he is seeking a non-partisan office.

---

[5] Even if this Court finds the lower court properly interpreted MCL 168.558(2), Plaintiff cannot establish the elements of mandamus relief and, as such, this Court should vacate the writ of mandamus. *League I*, 333 Mich App at 9. *First*, there is no mechanism under the Michigan Election Law to decertify candidates once they have been certified. Nor does Plaintiff cite to any such authority. MCL 168.558(4) provides only that "[a]n office shall *not certify* to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section. *See* MCL 168.558(4) (emphasis added). *Second*, Plaintiff has an adequate remedy to address his claims regarding Clyburn's eligibility for office: a writ for *quo warranto* if Clyburn is elected to office. Under MCR 3.306, a plaintiff can pursue an action against a state officer challenging the officer's right to hold office if elected. *See also* MCL 600.4505, 600.4545. This Court has previously recognized the availability of a *quo warranto* remedy following an election to be an adequate remedy. *Citizens Protecting Michigan's Constitution v Sec'y of State*, 482 Mich 960, 968 n 15; 755 NW2d 157 (2008); *City of Grand Rapids City Clerk v Judge of Superior Court*, 366 Mich 335, 340; 115 NW2d 112 (1962).

RECEIVED by MSC 9/1/2022 2:12:12 PM

**A. MCL 168.558(2) does not apply to candidates seeking non-partisan offices.**

The requirement of the AOI related to party affiliation only applies to candidates running for offices for which a party designation is permitted. Specifically, MCL 168.558(2) states the AOI must include "the candidate's political party or a statement indicating no party affiliation **if the candidate is running without political party affiliation**." MCL 168.558(2) (emphasis added). When that entire clause in MCL 168.558(2) is harmonized with the Election Law, a party affiliation designation is only necessary and required by MCL 168.558(2) when the candidate is running for a partisan office. If the office sought is partisan and the candidate is running without a party affiliation, then MCL 168.558(2) requires a candidate to state "no party affiliation". Giving effect to every word and provision of the Election law, this makes perfect and logical sense. *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) ("Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.").

The Election Law treats elections for partisan offices differently than elections for non-partisan offices in a variety of circumstances. For instance, non-partisan offices are given special treatment for primary elections because the inherent purpose of primary elections is tied to political parties:

> If, upon the expiration of the time for filing petitions **for any nonpartisan primary election**, it shall appear that as to any office on any **nonpartisan ticket** there are not to exceed twice the number of candidates as there are persons to be elected, then the officer with whom such petitions are filed shall certify to the proper board of election commissioners the names of such candidates whose petitions have been properly filed and such candidates shall be the nominees for such offices and shall be so certified. As to such offices, **there shall be no primary election and such offices shall be omitted from the primary ballot**. [MCL 168.540 (emphasis added).]

*See also*, MCL 168.699 ("At any regular election, the names of the several **nonpartisan offices to be voted for shall be placed on a separate portion of the ballot containing no party designation**.") (emphasis added); and MCL 168.412 ("A general **nonpartisan primary election** shall be held in every county of this state. . .prior to the general election at which judges of the circuit court are elected, at which time the qualified and registered electors may vote for **nonpartisan candidates for the office of judge of the circuit court**.") (emphasis added). The Election Law does not provide

RECEIVED by MSC 9/1/2022 2:12:12 PM

the same accommodation for elections to partisan office, indicating that whether an office is elected on a non-partisan basis is relevant.

Other, related sections of the Election Law further support the interpretation that the statement as to party affiliation is only relevant in partisan elections, and is intended to provide necessary information to the clerks in the process of certifying candidates to partisan ballots. For example, MCL 168.552(1) dictates that the city clerk "shall immediately certify to the proper board or boards of election commissioners . . . the name and post office address of each **party candidate** whose petitions meet the requirements of this act, together with the **name of the political party** and the office for which he or she is a candidate." *See* MCL 168.552(1) (emphasis added). Similarly, MCL 168.550 provides that "[n]o candidate shall have his name printed upon any **official primary election ballot of any political party** in any voting precinct in this state unless he shall have filed nominating petitions according to the provisions of this act . . . ." *See* MCL 168.550 (emphasis added). Meanwhile, MCL 168.559 instructs that it is the "duty of the board of election commissioners of each county in this state to prepare and furnish the necessary official primary election ballots, except for city offices, which may be required for use by the **electors of any political party** at the August primary." *See* MCL 168.559 (emphasis added). Clearly, the attestation as to party affiliation is for candidates who are running for partisan office and therefore are expected to have a political party affiliation.

Similarly, the term "non-partisan" is not synonymous with "without party affiliation." Nowhere within the Election Law is the term "without party affiliation" defined as involving non-partisan elections. Rather, the phrase "without party affiliation" is a term of art recognized in other provisions of the Election Law used to denote someone who is running for a partisan office without a party affiliation. Indeed, the Legislature has provided special meaning to the phrase "without party affiliation", and denotes certain requirements for candidates seeking partisan office without affiliation to appear on a ballot. *See* MCL 168.590-168.590h. Nowhere in the provisions does the Legislature indicate that state offices that are non-partisan by operation of law (like circuit court judges) are required to comply with the provisions applicable to candidates for a partisan office. The Election Law and MCL 168.558(2) must be construed and understood according to that meaning. *See Paige v Sterling Hts*, 476 Mich 495, 520; 720 NW2d 219 (2006) (indicating that "identical phrases in our statutes" should have identical meanings).

RECEIVED by MSC 9/1/2022 2:12:12 PM

The phrase "nonpartisan" is not synonymous with "without political party affiliation". Because the Legislature used the differing phrases of "non-partisan" and "without party affiliation" for different purposes, the Legislature obviously intended that the terms be given different meanings. When paired with the distinction between "partisan elections" and "non-partisan elections," this reveals that the intent of the Legislature in drafting MCL 168.558(2) is for a candidate to properly indicate a party affiliation or "no party affiliation" where the candidate's own party affiliation directly impacts how an election is conducted. For non-partisan elections, partisan affiliation is not relevant, and a candidate's own party affiliation has no impact.

Contrary to the Court of Appeals decision, a party affiliation statement simply is not required for candidates running for offices that are inherently non-partisan. The lower court concluded, incorrectly, MCL 168.558(2) requires a candidate to "affirmatively state he **was seeking a nonpartisan office**." *Davis*, unpub op at 3 (emphasis added) (**App'x 4, p 19**). This wrongly paraphrases clear statutory text. The requirement for a candidate to state "no party affiliation" is conditioned on whether a candidate's own party affiliation is relevant to the election. MCL 168.558(2), thus, does not require a candidate to *always* state "no party affiliation". Instead, MCL 168.558(2) only requires a candidate to state "no party affiliation" if the candidate (1) is running for a partisan office and (2) is doing so without a party affiliation because a party affiliation is material to the election of the office sought.

Because Clyburn and other similarly situated candidates are running for non-partisan offices, under a proper and correct reading of MCL 168.558(2), they are not required to make a statement about their lack of party affiliation on the AOI. Accordingly, the Court of Appeals' decision must be reversed.

**B. Even if a party affiliation statement is required of all candidates, a candidate seeking a non-partisan office complies with MCL 168.558(2) by leaving a blank.**

Even if the Court believes that a statement indicating no party affiliation is required of candidates running for office that are by their very nature non-partisan, a blank complies. A blank in such circumstances communicates that the candidate is running without a party affiliation. Indeed, Michigan law recognizes that, under appropriate circumstances, silence or a non-answer may be deemed a "statement." *See, e.g.*, *People v Alexander*, 188 Mich App 96, 103; 469 NW2d 10 (1991) ("[A] person's silence may constitute a statement.") Justice Welch, joined by Justice

RECEIVED by MSC 9/1/2022 2:12:12 PM

Bernstein, already has hinted that silence may be sufficient to comply with MCL 168.558. *See Davis*, 974 NW2d at 550 (Welch, J dissenting) ("I question whether the Court of Appeals was correct to hold that silence as to party affiliation cannot satisfy the requirement of 'indicating no party affiliation' under MCL 168.558(2).") (**App'x 5, p 23**). This is a fair reading of the statute as a whole.

Silence corresponds with the intent of MCL 168.558, which is to permit "full and complete identification of candidates for public office in order to provide the electorate with the information necessary to cast their ballots effectively for the candidates of their choice." *Evans v Detroit Election Com*, 15 Mich App 260, 263; 166 NW2d 467 (1968) (citing *Sullivan v. Sec'y of State*, 373 Mich 627, 630–31 (1964)). The purpose of the AOI is to assist the clerk and election commissions in preparing and furnishing election ballots that accurately identify candidates, and provide information to the electorate necessary to cast their votes. The AOI is also a statutory mechanism created to ensure that a candidate complies with the Michigan Campaign Finance Act, 1976 PA 388, MCL 169.201 *et seq.* MCL 168.558(4). None of these purposes are frustrated by a blank response from a candidate seeking a non-partisan office relating to party affiliation. The party affiliation, whether stating "no party affiliation" or leaving a blank, has no impact in elections for non-partisan offices. All ballots will be printed without a party affiliation, and all votes will be casts without regard for what the candidate's party affiliation is.

Finally, as Justices Welch and Bernstein have indicated, the lower court's reliance on *Moore v Genesee Cty*, 337 Mich App 723 (2021) is misplaced. *Moore*, in fact, does support a determination that a blank in the space for party affiliation is not a critical error for candidates seeking non-partisan offices. *Moore* distinguished between a "mere failure to fill in a blank provided by the Secretary of State with helpful but nonessential information" and a "critical error." *Id* at 730 (omitting the zip-code of a candidate's residential address is not a critical error). In essence, a key consideration in *Moore* in determining whether the challenged inconsistency or deficiency is an omission of "helpful but nonessential information" versus a "critical error" is whether the information is a requirement for qualification as a candidate for elected office. *Id.* In that case, the candidate had not checked a box indicating she was a United States citizen. Therefore, it was unclear if that candidate in fact met the "constitutional and statutory" requirement that candidates be citizens of the United States. *Cf Stumbo v Roe*, 332 Mich App 479, 489; 957 NW2d

RECEIVED by MSC 9/1/2022 2:12:12 PM

830 (2020) (holding a "discrepancy between the dates found in the attestation section of the AOI" does not render the AOI improper or invalid) *and Nykoriak v Napoleon*, 334 Mich App 370, 381-382; 964 NW2d 895 (2020) (holding that the location of a notary's signature in the "for office use only" section is not fatal).

If anything, a candidate seeking election to a non-partisan office that leaves a blank in the party affiliation line is merely opting not to provide "helpful but nonessential information." *Moore*, 337 Mich at 730. There is no question that the Highland Park mayor election and the election of all judicial officers in Michigan are non-partisan, candidates seeking those office do not have a party affiliation.[6] Omitting this statement does not change this fact. The omission has no effect on whether the candidate is otherwise qualified to appear on the ballot and no effect on how the ballot is prepared.

**II. Requiring an Affirmative Statement of "No Party" Affiliation Imposes an Additional Requirement on Candidates Running for Non-Partisan Seats.**

Failure to affirmatively state "no party affiliation" as held by the Court of Appeals imposes an additional requirement on candidates running for non-partisan offices because this designation is determined by law, not by the candidate running for a non-partisan seat. Forbidding a blank would, in effect, require a candidate to provide an additional statement that only reiterates requirements already determined by law. Mandating additional information should not stand.

"It is well settled that the legislature may not act to impose additional obligations on a self-executing constitutional provision." *Wolverine Golf Club v Sec'y of State*, 384 Mich 461, 466; 185 NW2d 392 (1971) (citation omitted); *League of Women Voters of Mich v Sec'y of State*, 508 Mich 520, 543-544; 975 NW2d 840 (2022) (*League II*); *Soutar v St Clair County Election Com*, 334 Mich 258, 265; 54 NW2d 425 (1952) (holding an incumbent, unopposed probate judge is not required to complete an AOI to qualify to appear on a ballot). A constitutional provision is self-executing if "it supplies a sufficient rule, by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced." *Durant v Dep't of Ed*, 186 Mich App 83, 97; 463 NW2d 461 (1990). "The only limitation, unless otherwise expressly indicated, on legislation

---

[6] See e.g., Highland City Charter, § 12-5; and Const 1963, art 6, §§ 8, 12, 16.

RECEIVED by MSC 9/1/2022 2:12:12 PM

supplementary to self-executing constitutional provisions is that the right guaranteed shall not be curtailed or any undue burdens placed thereon." *Wolverine*, 384 Mich at 466.

The AOI is statutorily created by MCL 168.558 and thus cannot be interpreted to mandate more of a candidate than what the Constitution requires. *Id.* In this context, the Constitution dictates that candidates running for judicial office are elected on a non-partisan basis. *See e.g.*, Const 1963, art 6, §§ 8, 12, 16. Such provisions are self-executing because they impose a duty on judicial candidates to run for office without a party affiliation. [7] Leaving a blank does nothing more than indicate what is already determined by operation of law and, for judicial candidates, the Constitution.

Similarly, under Const 1963, art 6, § 22 "[a]ny judge of the court of appeals, circuit court or probate court may become a candidate in the primary election for the office of which he is the incumbent by filing an **affidavit of candidacy** in the form and manner prescribed by law."[8] When applied to incumbent judges exercising their constitutional right to appear on the ballot by filing an affidavit of candidacy under Const 1963, art 6, § 22, the Legislature may not require more of a candidate, including an AOI or a requirement to indicate "no party affiliation" on that AOI. *Wolverine*, 384 Mich at 466. The Legislature may prescribe the form and manner of an affidavit of candidacy. The Legislature, however, may not curtail that right or impose additional burdens on that right by requiring an additional affidavit or additional information on an affidavit, including an AOI under MCL 168.558, when imposition of those additional requirements would restrict the constitutional right of an incumbent judge to appear on the ballot under Const 1963, art 6, § 22.

The Court of Appeals determined *how* these candidates running for non-partisan seats fulfill their constitutional obligation, effectively adding unnecessary, burdensome obligations. The lower court interpreted MCL 168.558(2) to require the candidate to go beyond the constitutional text and affirmatively write in that the candidate has "no party affiliation." *Davis*, unpub op at 4

---

[7] Other offices for local elections have similar mandates. For instance, Clyburn is running for a local non-partisan seat, which under the Highland Park City Charter, must be determine in a non-partisan election. Highland Park Charter, § 12-5.

[8] The affidavit of candidacy provided for in this constitutional provision is a different document, separate and distinct from an AOI. Affidavits of candidacy are provided for under MCL 168.392a, 168.409b, 168.413a, 168.433a, and 168.467c. The additional requirement to file an AOI with additional information is separately imposed by MCL 168.558.

RECEIVED by MSC 9/1/2022 2:12:12 PM

(**App'x 4, p 19-20**). Failing to do so, or leaving a blank, results in exclusion from the ballot. *Id*; *see also* MCL 168.558(4). In this way, a candidate running for a non-partisan seat must actively make that designation in order to properly fill out a form that has nothing to do with verifying their eligibility for candidacy.[9] This requirement does not merely fill in necessary details about a candidate to determine candidacy. Rather, it "adds a substantive obligation" *League II*, 508 Mich at 541, particularly upon incumbent judges accessing the ballot by affidavit of candidacy pursuant to Const 1963, art 6, § 22 And it is a substantive obligation that is not determined by the candidate and inconsistent with the Constitution for incumbents seeking reelection. Regardless of how a candidate fills in the party affiliation statement, that candidate is running on a non-partisan basis. Writing that on the party affiliation line does not change the duty imposed on them by operation of law. Further, imposing this additional duty on an incumbent judge that has accessed the ballot by filing an affidavit of candidacy is not constitutionally permitted.

While the Legislature may supplement constitutional provisions, it cannot add unnecessary requirements that in effect prohibit an eligible candidate because he or she failed to meet a requirement that eases the role of the clerk and election commissions in preparing and furnishing election ballots. Courts have already indicated that certain irregularities that do not directly impact the eligibility of a candidate do not result in a duty to not certify a candidate's name for the ballot. *See Stumbo*, 332 Mich App at 489 (holding a "discrepancy between the dates found in the attestation section of the AOI" does not render the AOI improper or invalid); *Nykoriak*, 334 Mich App at 381-382 (holding the location of a notary's signature in the "for office use only" section is not fatal); *Moore*, 337 Mich at 730.

The party affiliation statement on an AOI, whether left blank or indicating "no party affiliation," does not change the constitutional mandate that candidates running for judicial office are non-partisan. Even then, the sample AOI already allows for the candidate to properly attest to this fact through section 5 of the AOI. (**App'x 1, p 2**). Section 5 of the AOI ensures a candidate

---

[9] A candidate's eligibility for candidacy is determined by a nominating petition or an affidavit of candidacy; the affidavit of identity mainly serves the purpose of certifying a candidate's compliance with the Michigan Campaign Finance Act, 1976 PA 388, MCL 169.201 *et seq*. If the Legislature wanted to modify the form of an affidavit of candidacy to require this information, Const 1963, art 6, § 22 authorizes the Legislature to do so.

RECEIVED by MSC 9/1/2022 2:12:12 PM

attests to this obligation by requiring the candidate to check and sign that he or she meets the constitutional requirements for the office sought. (***Id***). In this way, the check and signature of the candidate is sufficient to indicate the candidate has "no party affiliation," because the position he or she is running for is elected on a non-partisan basis. How a judicial candidate fills in the "party affiliation" statement does not change this, nor does leaving a blank impact the truth of the Section 5 attestation. The Legislature has not required the information to be provided in any particular form or manner. It has not required require any specific words. The identification that a candidate is seeking an non-partisan office should be sufficient to satisfy the information required by the Legislature. The party affiliation statement simply reiterates the constitutional requirements that are affirmed by the candidate's signature.

Because the Election Law requires an officer to "not certify to the board of election commissions that name of a candidate who fails to comply with [MCL 168.558]," a defect to the party affiliation statement directly impacts a candidate's right to appear on the ballot. These defects cannot be taken lightly. Judicial officers, while required to complete an AOI, cannot be denied appearance on a ballot because of the imposition of a requirement that is explicitly determined by the Constitution. This is particularly true for incumbent judges exercising their constitutional right to appear on the ballot by filing an affidavit of candidacy. Accordingly, candidates for inherently non-partisan seats need not write in "no party affiliation," and requiring they do so imposes an unpermitted additional requirement.

This Court should avoid interpreting MCL 168.558 in a manner that imposes additional requirements subject to strict compliance in a way that effectuates a "gotcha" trap that could be used by unscrupulous litigants to harass or intimidate judges and other candidates for judicial office. There is no indication that this was the intent of the Legislature in the text of MCL 168.558 or elsewhere.

RECEIVED by MSC 9/1/2022 2:12:12 PM

## CONCLUSION

For the foregoing reasons, this Court should reverse and vacate the Court of Appeals grant of mandamus relief motion and enter an order (1) declaring that Clyburn's AOI complies with all aspects of the Michigan Election Law and (2) directing the Secretary of State and Director of Elections to certify Clyburn as a candidate for the November 8, 2022 General Election.

Respectfully submitted,

Dated: September 1, 2022

By: */s/ Steven C. Liedel*

Steven C. Liedel (P58852)
W. Alan Wilk (P54059)
Hannah E. Buzolits (P84702)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
(517) 374-9184
sliedel@dykema.com

*Attorneys for Proposed Friend of the Court Michigan Judges Association*

123622.000001 4873-6854-1488.2

RECEIVED by MSC 9/1/2022 2:12:12 PM

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation set forth in MCR 7.212(B) and MCR 7.312(A). I am relying on the word count of the word-processing system used to produce this document. This brief uses a 12-point proportional font (Times New Roman), and the word count for this brief is 6,249 words.

Dated: September 1, 2022

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: */s/ Steven C. Liedel*
Steven C. Liedel (P58852)
201 Townsend St., Suite 900
Lansing, MI 48933
(517) 374-9100
sliedel@dykema.com

*Attorneys for Proposed Friend of the Court Michigan Judges Association*

**Nonparty Cox Document Production 095**

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

September 14, 2022

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

164564 & (46)(47)(49)(50)(51)
(53)(56)

ROBERT DAVIS,
Plaintiff-Appellee,

v

SC: 164564
COA: 361544
Wayne CC: 22-005386-AW

HIGHLAND PARK CITY CLERK and
HIGHLAND PARK ELECTION COMMISSION,
Defendants-Appellees,

and

HIGHLAND PARK CITY COUNCIL,
Intervening Defendant-Appellant.

_____________________________________________/

On order of the Court, the motions for immediate consideration and to file briefs amicus curiae are GRANTED. The application for leave to appeal the June 2, 2022 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court. The motion to dismiss application and the motion to strike are DENIED.

VIVIANO, J. (*concurring*).

I agree with the denial order in this case because appellant Highland Park City Council lacks standing to appeal. I write, however, because the underlying legal issue has caused great confusion and resulted in numerous candidates being kept off the ballot. Statutory requirements for appearing on ballots must be followed, but those requirements should be clear and easy to understand. As shown by this case, the confusion caused by the recent amendment of MCL 168.558(2) threatened the democratic process by nearly depriving the city of Highland Park's legislative body of sufficient membership to govern. I strongly encourage the Legislature to correct this problem before the next election cycle.

Plaintiff Robert Davis brought the present case to challenge the eligibility of Carlton Clyburn, Jr., to be on the August 2022 primary ballot for Highland Park mayor. Like other local offices in Highland Park, the mayoral office is officially designated as nonpartisan. In seeking the office, Clyburn was required by MCL 168.558(2) to file an affidavit of identity (AOI). The AOI was required to contain, among other things, "the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation[.]" The party-affiliation requirement was put in place in 2021. See 2021 PA 158.[1] The AOI form provided by the Secretary of State's office, however, predated this amendment and has not been updated. In the relevant space, the form asked for the following information: "political party, if a partisan office. if running without party affiliation list 'No Party Affiliation.' " Clyburn, like many other candidates running for nonpartisan office—including numerous judicial candidates—left this space blank, apparently in the belief that it was inapplicable to him because he did not have the option of running with party affiliation for the office of mayor.

Davis sought mandamus relief against the Highland Park City Clerk and the Highland Park Election Commission to keep Clyburn off the ballot, claiming that his AOI was defective under MCL 168.558(2) because it did not contain any statement that Clyburn was running without party affiliation. The Highland Park City Council (the City Council) was allowed to intervene as a defendant over plaintiff's objection. The trial court disagreed with plaintiff on the merits and denied mandamus, but the Court of Appeals reversed in an unpublished opinion. *Davis v Highland Park City Clerk*, unpublished opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544). The Court of Appeals concluded that MCL 168.558(2) applied to candidates running for nonpartisan offices. Clyburn failed to comply with this provision because his silence on the form—i.e., his failure to state that he was running with no party affiliation—did not satisfy the statutory requirement that he "state something affirmatively . . . ." *Id*. at 4.

After the decision keeping him off the ballot, Clyburn attempted, for the first time, to intervene in this case—he had not been a party to the proceedings in either of the lower courts—and sought leave to appeal here. We denied this 11th-hour effort to intervene, as it came at a point when it seemed impossible to grant him the relief he sought, i.e., placement on the primary ballot, which the Secretary of State needed to certify by June 3. See MCL 168.552(14). We dismissed the application for leave to appeal, as no party to the case had, at that point, sought leave to appeal. About three weeks later, well after the date on which the Secretary of State was required to certify candidates for the August ballot, see MCL 168.552(14), the City Council filed the present application for leave to appeal, challenging the Court of Appeals' decision. In its application, the City Council notes that local officials kept numerous other candidates for the city's nonpartisan offices

[1] 2021 PA 158 also added a number of other requirements regarding what an AOI must contain, but only the party-affiliation requirement is relevant for purposes of this appeal.

(not parties to this case) from the ballot because those candidates—10 of the 14 candidates, in fact—had, like Clyburn, failed to write on the AOI that they were running without party affiliation.

I believe a denial of leave is appropriate in this case because the City Council lacks appellate standing. A party can appeal if it is aggrieved from a decision by a lower court; that is, it "must have suffered a concrete and particularized injury" based on the decision below. *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291 (2006). "A party who could not benefit from a change in the judgment has no appealable interest." *Id*. at 291 n 2 (quotation marks and citations omitted).

It is true, as Justice WELCH notes in dissent, that the City Council was allowed to intervene in this action below and took a position contrary to the conclusion reached by the Court of Appeals. But these facts do not supply an injury suffered by the City Council, and a judgment in this case reversing the Court of Appeals would not supply a benefit to the City Council. Because Clyburn is the only candidate plaintiff has challenged in this appeal, a decision from this Court could not now order the other candidates to be placed on the ballot. Those candidates are not parties here, nor do they appear to be in privity with the City Council—and it is not even clear whether they still desire to stand for office in the election. Cf. *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co,* ___ Mich ___, ___ (2022) (Docket Nos. 161628 and 161650); slip op at 6-12 (explaining the limited circumstances in which a nonparty can be bound by a judgment under the principles of res judicata or collateral estoppel). For that reason, no decision in this case would prevent there being vacancies on the City Council resulting from local officials' removal of candidates for the council. And even so, the Highland Park City Charter provides the council with the power to fill vacancies, including (in some circumstances) by calling a special election. Highland Park Charter, § 4-13. Even with reduced numbers after the upcoming election, it appears the City Council will have a quorum to conduct business. *Id*. at § 5-3. Thus, I cannot see how the Court of Appeals' decision to keep Clyburn off the ballot has caused a sufficient injury to the City Council to provide it standing to appeal.

But while the City Council lacks standing to pursue this relief, it has raised a significant issue that deserves prompt attention. As Justice WELCH explains in her dissenting statement, numerous candidates for judicial office—which is nonpartisan—had their AOIs challenged, and at least one has been kept off the ballot as a result. The confusion did not start with these candidates—in fact, it appears the source of the confusion preceded the enactment of the relevant statutory language in 2021. Before the language was passed, the Bureau of Elections in August 2021 proposed a rule for AOIs that suggested that it needed this information—but only for partisan candidates. The proposed rule that would have required the candidate to provide the following:

> (e) If the candidate seeks nomination or election to a partisan office, he or she must include the following:
>
> (i) The name of the political party with which the candidate is affiliated.
>
> (ii) If seeking nomination or election to a partisan office without being affiliated with a political party, the candidate must indicate "no party affiliation" using these or similar words or phrases. [Mich Admin Code, Proposed R 168.3(1).]

As is plain from the text, the rule would have applied only to partisan offices, not the nonpartisan offices like Clyburn and others were seeking.

After the amendment of MCL 168.558(2) was passed in late 2021, the Bureau of Elections decided to drop its proposed rule because it would have been "redundant" given the new statutory language. Further, as noted in a letter to the Secretary of State from an administrative director in March 2022, officials involved in the rulemaking process concluded that the language in the statute was "similar" to that in the proposed rule and that "the statute accomplishes the same purpose as the original proposed language." Thus, the proposed rule was scotched. Notably, the Secretary of State's office did not update its AOI form after the amendment.

Turning to the text of MCL 168.558(2) and other relevant statutes, there was good reason for the Bureau of Elections' apparent belief that the new language applied only to candidates for partisan office. On one hand, the Court of Appeals was correct that the literal scope of the key phrase—"the candidate's political party or a statement indicating no party affiliation if the candidate is running without political party affiliation"—is broad enough to cover candidates for nonpartisan offices. Such candidates do run without being affiliated with a political party. On the other hand, the broader statutory framework suggests that the Legislature used the phrase "without political party affiliation" to refer only to candidates running for partisan office or for this Court. In order to be placed on the ballot, such candidates must file a "qualifying petition," which is defined as "a nominating petition required of and filed by a person to qualify to appear on an election ballot as a candidate for office without political party affiliation." MCL 168.590(1). Critically, only candidates for partisan office or for this Court may file a qualifying petition. See MCL 168.590(2) ("A person may file a qualifying petition for a partisan office or office of justice of the supreme court. A filing fee shall not be tendered instead of a qualifying petition."). Thus, to appear on the ballot as "a candidate for office without political party affiliation," a candidate must file a qualifying petition, but the candidate can file that petition only for partisan offices and for the office of justice on this Court. It seems to follow that a candidate for a nonpartisan office *cannot* take the steps

necessary to file as "a candidate for office without political party affiliation."[2]  Instead of a qualifying petition, the Legislature has provided for a different nominating petition and a different primary for nonpartisan offices.  MCL 168.544a.

In this manner, the Legislature appears to have distinguished between candidates for nonpartisan office and candidates for partisan office (or this Court) who are running without political party affiliation.  The manner in which candidates gain access to the ballot differs for these two groups.  Why, then, would MCL 168.558(2) nevertheless be read to require a candidate to list himself or herself as running "without political party affiliation"?  Such a requirement could only cause confusion, as it would indicate to the officer receiving the affidavit—which is filed with the qualifying petition, see MCL 168.558(1)—that the candidate was seeking access to the ballot by filing a qualifying petition, which candidates for nonpartisan office cannot do.  Moreover, the affidavit is part of the process for appearing on a ballot.  But on the ballot, "the names of the several nonpartisan offices to be voted for shall be placed on a separate portion of the ballot containing no party designation . . . ."  MCL 168.699.  In other words, simply by filing for a nonpartisan office, a candidate is placed on the nonpartisan portion of the ballot where—given the nature of the type of office being sought—no partisan designation is even possible.  Because the placement of a nonpartisan office is on an entirely separate section of the ballot where no party designation may appear, it makes little sense to require a candidate to designate on the affidavit that he or she is running without party designation.  Such a separate designation does, however, make sense for partisan offices appearing on the partisan ballot.  These offices will not be placed on the partisan primary ballot (which only involves candidates from the major political parties), but will need to be specially shown on the general-election ballot as running without political party affiliation.

Thus, read in light of the full statutory framework, a strong argument could be made that the reference in MCL 168.558(2) to a "candidate . . . running without political party affiliation" pertains only to candidates for partisan offices and for this Court.  A candidate running for a nonpartisan office is, by definition, incapable of running with political party affiliation for purposes related to placement on the ballot.  It would therefore be redundant, at best, to require candidates for nonpartisan offices to state in the affidavit that they are running without political party affiliation.  This conclusion finds support in the statutory context, which must be consulted when interpreting the scope of

---

[2] As explained below, the office of justice on the Michigan Supreme Court is nonpartisan. This office was apparently nevertheless included in MCL 168.590 because candidates can be nominated by political parties.

MCL 168.558(2) so that we can "make sense rather than nonsense out of the *corpus juris*." *West Virginia Univ Hosps, Inc v Casey*, 499 US 83, 101 (1991).[3]

Finally, because I believe the Legislature should revisit and clarify this statute, it is worth noting another wrinkle that has become apparent with regard to candidates for this Court. This office is somewhat anomalous in that it is nonpartisan but candidates can receive nominations by political parties. See Const 1963, art 6, § 2; MCL 168.392. Incumbent justices are entitled to placement on the ballot if they file an affidavit of candidacy. Const 1963, art 6, § 2; MCL 168.392a. All candidates appear on the nonpartisan section "containing no party designation . . . ." MCL 168.393. In this context, particularly because of the party nominations, it is clear why the Legislature might have thought it advisable to treat unaffiliated candidates for this Court together with unaffiliated candidates for partisan offices. Both types of candidates need an alternative way to gain access to the ballot since they do have the option of gaining access to the ballot through either a partisan or nonpartisan primary. But, especially in light of the confusion surrounding MCL 168.558(2), this statutory framework raises

---

[3] Justice WELCH has offered other reasons for this conclusion concerning MCL 168.558(2), including additional ways the statutes distinguish between partisan and nonpartisan offices. See, e.g., MCL 168.540 (providing that nonpartisan primary elections will not be held "[i]f, upon the expiration of the time for filing petitions for any nonpartisan primary election, it shall appear that as to any office on any nonpartisan ticket there are not to exceed twice the number of candidates as there are persons to be elected"). I question, however, her interpretation of MCL 168.550. That provision states:

> No candidate shall have his name printed upon any official primary election ballot of any political party in any voting precinct in this state unless he shall have filed nominating petitions according to the provisions of this act, and all other requirements of this act have been complied with in his behalf, except in those counties qualifying candidates upon the payment of fees.

Justice WELCH has observed that this language indicates that candidates for *nonpartisan* office cannot be kept off the ballot by failing to comply with the AOI requirement at issue here. *Davis v Highland Park City Clerk*, ___ Mich ___, ___; 974 NW2d 550, 550 (2022). This conclusion may prove too much, as it might suggest that a nonpartisan candidate's failure to comply with any statutory requirement is not grounds for keeping him or her from the ballot. Moreover, MCL 168.558 includes its own provision on the consequences of noncompliance in Subsection (4), which appears to indicate that a noncomplying candidate cannot be certified for the ballot. See MCL 168.558(4) ("An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section . . . ."). In any event, I agree with Justice WELCH that the overall statutory framework is confusing and merits examination.

concerns about how candidates for this Court are to fill out their AOIs. These candidates seek a nonpartisan office, yet MCL 168.590 suggests that they must comply with the requirement in MCL 168.558(2) that they provide a statement that they are running without party affiliation. This would appear to be contrary to the Bureau of Elections' apparent position that the party-affiliation requirement only applies to candidates for partisan office.[4] If the requirements applicable to candidates for this office are to differ from the requirements applicable to all other candidates for nonpartisan offices, the Legislature should make that clearer in the statute.[5]

For these reasons, while I concur in the denial order here, there remains much work to be done in this area. And because the statute is unclear—perhaps verging on true ambiguity—the best course is for the Legislature to clarify its intent.

WELCH, J. (*dissenting*).

I write separately to express my continued dissatisfaction with how this case was resolved on the merits. I dissented from the Court's June 7, 2022, order denying Carlton

---

[4] Either way, it presents a conundrum for candidates for Supreme Court justice in light of the possible ways in which candidates for this Court may file and run for office. A statement of "no party affiliation" would be somewhat misleading, since such candidates may seek a partisan nomination and, at least to that extent, may be thought of as having some affiliation with a political party. But, if read as requiring a candidate to state a party affiliation in order to make clear that the candidate does not intend to file a qualifying petition, such a statement would also be somewhat misleading. After being nominated by a party, candidates for Supreme Court justice run without a party designation on the nonpartisan section of the ballot, and the judicial canons closely regulate the political conduct of judges and candidates for judicial office. See, e.g., Code of Judicial Conduct, Canon 7(A) (prohibiting judges or judicial candidates from holding any office in a political party or making speeches on behalf of or endorsing a nonjudicial candidate, but allowing them to attend political gatherings and contribute to a political party).

[5] Further, to the extent it suggests that all candidates for this office must file a qualifying petition, MCL 168.590 arguably runs afoul of Const 1963, art 6, § 2, which allows incumbent justices to be placed on the ballot by simply filing an affidavit of candidacy. The qualifying-petition process, by contrast, requires the collection of numerous signatures from across the state. MCL 168.590b. For incumbents, at least, it is hard to see how the qualifying-petition process squares with the Constitution. It seems, therefore, that the best reading of MCL 168.590 is that it applies to candidates for this office who are not incumbents and who were not nominated by a party.

Clyburn, Jr.'s[6] motion to intervene and to dismiss his application for leave to appeal in Docket No. 164490. *Davis v Highland Park City Clerk*, ___ Mich ___ (2022) (WELCH, J., dissenting). The concerns I raised in June remain unresolved. I continue to question whether mandamus relief was properly granted in this case, because it remains unclear to me that there was a clear legal mandate, as a matter of law, for the affected candidates to explicitly declare "no party affiliation" on the affidavit of identity (AOI) required by MCL 168.558 given that the candidates were not seeking partisan office and there was no partisan primary within the jurisdiction at issue. Compare MCL 168.558(2), (4) with MCL 168.550. In fact, the lack of clarity regarding how to properly fill out an AOI for nonpartisan candidates seems evident given the fact that at least six different judicial candidates seeking nonpartisan office also had their AOIs challenged or called into question on the basis that they had improperly filled out the document. See, e.g., *Belcoure v Benson*, unpublished order of the Court of Claims, entered August 19, 2022 (Case No. 22-000111-MB) (granting mandamus relief and ordering that judicial candidate Roney Haywood be removed from the ballot because he left the declaration-of-party-affiliation line on his AOI blank); *Davis v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000125-MM) (denying mandamus relief and holding that LaKena Crespo's statement of "N/A" satisfied the declaration-of-party-affiliation requirement in MCL 168.558(2)); *Slavens v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000141-MZ) (granting declaratory relief keeping incumbent Judge Slavens on the ballot because his AOI was filed before the amendment of MCL 168.558(2) requiring a declaration of party affiliation took effect and evidence showed that two copies had been filed with the Secretary of State); *Fresard v Benson*, unpublished order of the Court of Claims, entered September 2, 2022 (Case No. 22-000143-MZ) (applying laches as a basis not to order removal of three incumbent judicial candidates from the ballot despite their having left the declaration-of-party-affiliation line blank on their AOIs).

There are many ways in which the Michigan Election Law, MCL 168.1 *et seq.*, treats elections for partisan offices differently from elections for nonpartisan offices, and it is unclear how MCL 168.558(2) and (4) interact with these other areas of the Election Law. For example, MCL 168.540 provides:

> If, upon the expiration of the timing for filing petitions for any nonpartisan primary election, it shall appear that as to any office on any nonpartisan ticket there are not to exceed twice the number of candidates as there are persons to be elected, then the officer with whom such petitions are filed shall certify to the proper board of election commissioners the

[6] Clyburn is one of several prospective candidates who were disqualified from appearing on the November 2022 election ballot in the city of Highland Park as a result of a lower court's decision in this case. Clyburn is currently a member of the Highland Park City Council who decided to run for mayor rather than seek reelection as a councilperson.

> names of such candidates whose petitions have been properly filed and such candidates shall be the nominees for such offices and shall be so certified. As to such offices, there shall be no primary election and such offices shall be omitted from the primary ballot.

Moreover, it is far from clear whether the requirement in MCL 168.558(2) that a candidate state "no party affiliation if the candidate is running without political party affiliation," such as running as an independent in an election for partisan office, is the same thing as a candidate who cannot run with a stated party affiliation as a matter of law, such as a candidate for a judgeship or another nonpartisan elected office. Accordingly, I continue to question whether there was a clear legal duty for the local clerk to disqualify Clyburn or other similarly situated candidates from the ballot for this election cycle and whether such a duty was ministerial in nature. See *Davis*, ___ Mich at ___ (WELCH, J., dissenting).

I also disagree with plaintiff's arguments that the Highland Park City Council (the Council) does not have standing to seek review the Court of Appeals' ruling. "In order to have appellate standing, the party filing an appeal must be 'aggrieved.' " *Manuel v Gill*, 481 Mich 637, 643 (2008). See also Const 1963, art 6, § 1.

> An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Manuel*, 481 Mich at 643-644, quoting *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292 (2006)].

"A party who could not benefit from a change in the judgment has no appealable interest." *Manuel*, 481 Mich at 644 (quotation marks and citations omitted). This suggests that a party who could benefit from a change does have an appealable interest. We have recognized that even a party that prevailed in the Court of Appeals can have an appealable interest if a change in the final judgment would benefit that party. *Id*. at 643-645. In *Manuel*, the Court of Appeals had affirmed dismissal of the plaintiffs' contract claim on different grounds, but the Court of Appeals further held that the dismissal would be without prejudice to the contract claim being filed anew in the Court of Claims in a new lawsuit. *Id*. at 644-645. We held that a change in the Court of Appeals judgment, such as reinstating dismissal with prejudice, could benefit the defendant, and thus the defendant had appellate standing. *Id*. at 645.

In this case, from a procedural standpoint, the Council was permitted to intervene in the trial court over plaintiff's objection, but plaintiff did not appeal that ruling. The trial court denied plaintiff's request for mandamus relief, and thus plaintiff was an

aggrieved party entitled to an appeal by right under MCR 7.203(A). The Council was the only party that participated in the proceedings before the Court of Appeals as an appellee defending the trial court's denial of mandamus relief; neither of the named defendants filed briefs in the Court of Appeals. The Court of Appeals reversed the trial court and granted plaintiff the mandamus relief he sought as to Clyburn. *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544). The Court of Appeals, as a result, directed the trial court to instruct the Highland Park City Clerk and the Highland Park Election Commission "to not place Clyburn on the ballot for the August 2022 primary election for Mayor of Highland Park." *Id.* at 4. This occurred even though there was never going to be a primary election in the city because there were not more than twice the number of candidates as there were vacancies for the office of mayor. See Highland Park City Charter, § 12-5; MCL 168.540. Within a week of the Court of Appeals' decision, Clyburn filed a motion to intervene as an appellant before this Court and filed a proposed application for leave to appeal. The Court denied Clyburn's request to intervene and dismissed his application over my dissent. *Davis*, ___ Mich ___. The Council then filed a timely application for leave to appeal in this Court, but the Council did not request expedited review, nor did it request a decision by a specific date.

Following the Court of Appeals' ruling, several other candidates for nonpartisan offices within Highland Park were decertified from the ballot for having made the same alleged mistakes as Clyburn.[7] The Council has informed us that because of this, there will not be enough potential candidates on the ballot to fill the vacancies on the Council to a level that would provide the Council with the quorum necessary to conduct official business and that other offices within the city might go unfilled. While the Council was not the direct subject of the mandamus relief that was granted, the legal effect of the Court of Appeals' decision has led to an untenable situation in which the elected legislative body of the City may lack sufficient membership to form a quorum and conduct official city business. A timely reversal of the Court of Appeals' judgment could result in the previously disqualified candidates being reinstated before the ballots for the November election are printed. This, in turn, would ensure that the Council, as a governmental body, will have enough members to conduct official business following the November election. The Council does stand to benefit from a change in the Court of Appeals' judgment, and therefore, it is my belief that the Council has appellate standing to seek leave to appeal as an aggrieved party.

---

[7] While it is understandable for our courts to expect candidates whose candidacy is adversely affected by a legal determination to retain counsel and take legal action to defend their position on the ballot, this Court's previous denial of Clyburn's request to intervene in this case as an appellant, despite the Court of Appeals ordering that he be removed from the ballot, could have discouraged other nonpartisan Highland Park candidates who were disqualified from the ballot as a result of the Court of Appeals' decision from seeking relief through litigation.

For these reasons, I respectfully dissent from the Court's order.

BERNSTEIN, J., joins the statement of WELCH, J.

a0906

I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

September 14, 2022

Clerk

**Melissa Wojnar-Raycraft**

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 11:34 AM
**To:** Michael Cox
**Subject:** Re: What I understand
**Attachments:** image001.jpg

Understood. With that understanding, I will send you a proposed settlement later today. But you have to understand my concerns with respect to the garnishments and/or orders that are hanging out there. However, I believe what I will propose will satisfy EVERYONE'S concerns and will address their main issue in particular.

Robert Davis

On Wed, Nov 30, 2022, 11:29 AM Michael Cox <mc@mikecoxlaw.com> wrote:

> Robert:
>
> I don't believe they want your money. They want to be left alone in the future, ie, don't want you as an opponent in the future.
>
> Mike
>
> ---
>
> **From:** Robert Davis <davisrobert854@gmail.com>
> **Sent:** Wednesday, November 30, 2022 11:02 AM
> **To:** Michael Cox <mc@mikecoxlaw.com>
> **Subject:** Re: What I understand
>
> Attorney General Cox:
>
> Thanks for confirming, but as you should be aware, a number of these orders and/or attempted seizures and/or writs that were issued by the Court without notice to me are and/or were improper and/or illegal. Therefore, any potential settlement would include the release and/or quashing of any and all orders and/or writs their legal counsel obtained lawfully and/or unlawfully.
>
> Robert Davis
>
> On Wed, Nov 30, 2022 at 10:52 AM Michael Cox <mc@mikecoxlaw.com> wrote:
>
>> 1. Wage garnishments from Wayne County (entered by Court)
>>
>> 2. Order to seize real property, including Mercedes vehicle (entered by Court)
>>
>> 3. State income tax return garnishment (I believe entered by Court but not 100% sure, I know we had to wait until November 1, 2022 as that was first day this could be collected on)

4. Notice of judgement lein for any current and future property held in Wayne County (unknown if entered by Court yet)

5. Bank Accounts

Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48152

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006

**Melissa Wojnar-Raycraft**

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 3:46 PM
**To:** Michael Cox
**Subject:** Re: What time you thinking?
**Attachments:** image001.jpg

I thinking 630pm.

On Wed, Nov 30, 2022, 1:38 PM Michael Cox <mc@mikecoxlaw.com> wrote:

> **From:** Robert Davis <davisrobert854@gmail.com>
> **Sent:** Wednesday, November 30, 2022 12:14 PM
> **To:** Michael Cox <mc@mikecoxlaw.com>
> **Subject:** Re: What I understand
>
> Lastly, are you available to meet in person later this evening to discuss this matter further?
>
> Robert Davis
>
> On Wed, Nov 30, 2022 at 12:12 PM Michael Cox <mc@mikecoxlaw.com> wrote:
>
>> Once we have a settlement, I expect a stipulated order makes sense
>>
>> **From:** Robert Davis <davisrobert854@gmail.com>
>> **Sent:** Wednesday, November 30, 2022 12:09 PM
>> **To:** Michael Cox <mc@mikecoxlaw.com>
>> **Subject:** Re: What I understand
>>
>> Also, because they have a number of outstanding garnishments and/or orders of seizure, and we have a hearing pending for December 5th with respect to the objections to the writ of garnishment for wages, I believe entering a stipulated order quashing, voiding, setting aside, and/or releasing the outstanding writs of garnishments and/or orders of seizure is proper that will detail the the terms of the proposed settlement and/or incorporating by reference the terms of the settlement agreement. Your thoughts?
>>
>> Robert Davis
>>
>> On Wed, Nov 30, 2022 at 11:39 AM Michael Cox <mc@mikecoxlaw.com> wrote:
>>
>>> 
>>>
>>> Sent from my iPhone
>>>
>>> On Nov 30, 2022, at 11:34 AM, Robert Davis <davisrobert854@gmail.com> wrote:

Understood. With that understanding, I will send you a proposed settlement later today. But you have to understand my concerns with respect to the garnishments and/or orders that are hanging out there. However, I believe what I will propose will satisfy EVERYONE'S concerns and will address their main issue in particular.

Robert Davis

On Wed, Nov 30, 2022, 11:29 AM Michael Cox <mc@mikecoxlaw.com> wrote:

> Robert:
>
> I don't believe they want your money. They want to be left alone in the future, ie, don't want you as an opponent in the future.
>
> Mike
>
> ---
>
> **From:** Robert Davis <davisrobert854@gmail.com>
> **Sent:** Wednesday, November 30, 2022 11:02 AM
> **To:** Michael Cox <mc@mikecoxlaw.com>
> **Subject:** Re: What I understand
>
> Attorney General Cox:
>
> Thanks for confirming, but as you should be aware, a number of these orders and/or attempted seizures and/or writs that were issued by the Court without notice to me are and/or were improper and/or illegal. Therefore, any potential settlement would include the release and/or quashing of any and all orders and/or writs their legal counsel obtained lawfully and/or unlawfully.
>
> Robert Davis
>
> On Wed, Nov 30, 2022 at 10:52 AM Michael Cox <mc@mikecoxlaw.com> wrote:
>
>> 1. Wage garnishments from Wayne County (entered by Court)
>>
>> 2. Order to seize real property, including Mercedes vehicle (entered by Court)
>>
>> 3. State income tax return garnishment (I believe entered by Court but not 100% sure, I know we had to wait until November 1, 2022 as that was first day this could be collected on)
>>
>> 4. Notice of judgement lein for any current and future property held in Wayne County (unknown if entered by Court yet)
>>
>> 5. Bank Accounts
>>
>> Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48152

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006

3

Nonparty Cox Document Production 111

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Michael Cox |
| **Sent:** | Monday, December 5, 2022 2:45 PM |
| **To:** | Robert Davis |
| **Cc:** | Michael Cox |
| **Subject:** | Follow up on last week's Wednesday and Thursday calls |

Robert:

I never heard from you or received any proposals since we last talk.

So I will assume that you are not interested in any settlement.

But to avoid confusion, and to avoid assuming where I shouldn't, I will only act as if you don't want a negotiated settlement if I don't hear from you by Tuesday, December 6th at 5pm.

In any event, and whatever your decision, thanks for meeting last week.

Mike Cox

---

**From:** Michael Cox
**Sent:** Wednesday, November 30, 2022 1:38 PM
**To:** Robert Davis
**Cc:** Michael Cox
**Subject:** What time you thinking?

---

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 12:14 PM
**To:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** Re: What I understand

Lastly, are you available to meet in person later this evening to discuss this matter further?

Robert Davis

On Wed, Nov 30, 2022 at 12:12 PM Michael Cox <mc@mikecoxlaw.com> wrote:

> Once we have a settlement, I expect a stipulated order makes sense
>
> ---
>
> **From:** Robert Davis <davisrobert854@gmail.com>
> **Sent:** Wednesday, November 30, 2022 12:09 PM
> **To:** Michael Cox <mc@mikecoxlaw.com>
> **Subject:** Re: What I understand

Also, because they have a number of outstanding garnishments and/or orders of seizure, and we have a hearing pending for December 5th with respect to the objections to the writ of garnishment for wages, I believe entering a stipulated order quashing, voiding, setting aside, and/or releasing the outstanding writs of garnishments and/or orders of seizure is proper that will detail the the terms of the proposed settlement and/or incorporating by reference the terms of the settlement agreement. Your thoughts?

Robert Davis

On Wed, Nov 30, 2022 at 11:39 AM Michael Cox <mc@mikecoxlaw.com> wrote:

> 👌
>
> Sent from my iPhone
>
> On Nov 30, 2022, at 11:34 AM, Robert Davis <davisrobert854@gmail.com> wrote:
>
> Understood. With that understanding, I will send you a proposed settlement later today. But you have to understand my concerns with respect to the garnishments and/or orders that are hanging out there. However, I believe what I will propose will satisfy EVERYONE'S concerns and will address their main issue in particular.
>
> Robert Davis
>
> On Wed, Nov 30, 2022, 11:29 AM Michael Cox <mc@mikecoxlaw.com wrote:
>
>> Robert:
>>
>> I don't believe they want your money. They want to be left alone in the future, ie, don't want you as an opponent in the future.
>>
>> Mike

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 11:02 AM
**To:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** Re: What I understand

Attorney General Cox:

Thanks for confirming, but as you should be aware, a number of these orders and/or attempted seizures and/or writs that were issued by the Court without notice to me are and/or were improper and/or illegal. Therefore, any potential settlement would include the release and/or quashing of any and all orders and/or writs their legal counsel obtained lawfully and/or unlawfully.

Robert Davis

On Wed, Nov 30, 2022 at 10:52 AM Michael Cox <mc@mikecoxlaw.com> wrote:

1. Wage garnishments from Wayne County (entered by Court)

2. Order to seize real property, including Mercedes vehicle (entered by Court)

3. State income tax return garnishment (I believe entered by Court but not 100% sure, I know we had to wait until November 1, 2022 as that was first day this could be collected on)

4. Notice of judgement lein for any current and future property held in Wayne County (unknown if entered by Court yet)

5. Bank Accounts

Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48152

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006

**Melissa Wojnar-Raycraft**

| | |
|---|---|
| **From:** | Michael Cox |
| **Sent:** | Tuesday, December 6, 2022 5:49 PM |
| **To:** | Robert Davis |
| **Cc:** | Michael Cox |
| **Subject:** | I will tell them that you reject the proposal and want to let the COA decide for or against you |

Robert:

I will let them know you don't want to pursue their offer to forego collecting on the judgment and ultimately dismissing it in 2029 in exchange for no further legal actions against them or their future candidacies.

Thanks Mike

---

**From:** Robert Davis
**Sent:** Tuesday, December 6, 2022 2:09 PM
**To:** Michael Cox
**Subject:** Re: Follow up on last week's Wednesday and Thursday calls

Attorney General Cox:
I apologize for not getting back to you, but I have an unexpected family emergency that I have been addressing over the last week or so. Out of respect for you, I am interested in trying to resolve this matter, but if it includes requiring me to dismiss my pending appeal, which simply seeks to reverse Chief Judge Kenny's erroneous decision assessing sanctions, I cannot agree to dismiss this appeal. Let me know your thoughts.

Robert Davis

On Mon, Dec 5, 2022, 2:45 PM Michael Cox <mc@mikecoxlaw.com> wrote:

> Robert:
>
> I never heard from you or received any proposals since we last talk.
>
> So I will assume that you are not interested in any settlement.
>
> But to avoid confusion, and to avoid assuming where I shouldn't, I will only act as if you don't want a negotiated settlement if I don't hear from you by Tuesday, December 6th at 5pm.
>
> In any event, and whatever your decision, thanks for meeting last week.

Mike Cox

---

**From:** Michael Cox
**Sent:** Wednesday, November 30, 2022 1:38 PM
**To:** Robert Davis <davisrobert854@gmail.com>
**Cc:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** What time you thinking?

---

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 12:14 PM
**To:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** Re: What I understand

Lastly, are you available to meet in person later this evening to discuss this matter further?

Robert Davis

On Wed, Nov 30, 2022 at 12:12 PM Michael Cox <mc@mikecoxlaw.com> wrote:

> Once we have a settlement, I expect a stipulated order makes sense
>
> ---
>
> **From:** Robert Davis <davisrobert854@gmail.com>
> **Sent:** Wednesday, November 30, 2022 12:09 PM
> **To:** Michael Cox <mc@mikecoxlaw.com>
> **Subject:** Re: What I understand
>
> Also, because they have a number of outstanding garnishments and/or orders of seizure, and we have a hearing pending for December 5th with respect to the objections to the writ of garnishment for wages, I believe entering a stipulated order quashing, voiding, setting aside, and/or releasing the outstanding writs of garnishments and/or orders of seizure is proper that will detail the the terms of the proposed settlement and/or incorporating by reference the terms of the settlement agreement. Your thoughts?

Robert Davis

On Wed, Nov 30, 2022 at 11:39 AM Michael Cox <mc@mikecoxlaw.com> wrote:

👌

Sent from my iPhone

On Nov 30, 2022, at 11:34 AM, Robert Davis <davisrobert854@gmail.com> wrote:

Understood. With that understanding, I will send you a proposed settlement later today. But you have to understand my concerns with respect to the garnishments and/or orders that are hanging out there. However, I believe what I will propose will satisfy EVERYONE'S concerns and will address their main issue in particular.

Robert Davis

On Wed, Nov 30, 2022, 11:29 AM Michael Cox <mc@mikecoxlaw.com wrote:

Robert:

I don't believe they want your money. They want to be left alone in the future, ie, don't want you as an opponent in the future.

Mike

---

**From:** Robert Davis <davisrobert854@gmail.com>
**Sent:** Wednesday, November 30, 2022 11:02 AM
**To:** Michael Cox <mc@mikecoxlaw.com>
**Subject:** Re: What I understand

Attorney General Cox:

Thanks for confirming, but as you should be aware, a number of these orders and/or attempted seizures and/or writs that were issued by the Court without notice to me are and/or were improper and/or illegal. Therefore, any potential settlement would include the release and/or quashing of any and all orders and/or writs their legal counsel obtained lawfully and/or unlawfully.

Robert Davis

On Wed, Nov 30, 2022 at 10:52 AM Michael Cox <mc@mikecoxlaw.com> wrote:

1. Wage garnishments from Wayne County (entered by Court)

2. Order to seize real property, including Mercedes vehicle (entered by Court)

3. State income tax return garnishment (I believe entered by Court but not 100% sure, I know we had to wait until November 1, 2022 as that was first day this could be collected on)

4. Notice of judgement lein for any current and future property held in Wayne County (unknown if entered by Court yet)

5. Bank Accounts

Mike Cox

Michael A. Cox

The Mike Cox Law Firm, PLLC

17430 Laurel Park Drive North, Suite 120 E

Livonia, MI 48152

mc@mikecoxlaw.com

Office: 734-591-4002

Facsimile: 734 591-4006